Amish R. Doshi (AD5996)
**DAY PITNEY LLP**
7 Times Square
New York, New York 10036
Telephone: (212) 297-5800
Facsimile: (212) 916-2940
Email: adoshi@daypitney.com

*Attorneys for Oracle USA, Inc.*

| | |
|---|---|
| Sale Hearing Date: | February 23, 2010 |
| Sale Hearing Time: | 9:45 A.M. |
| Sale Objection Date: | February 16, 2010 |

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

In re:

**CHEMTURA CORPORATION, et al.,**

    Debtors.

**Case No. 09-11233 (REG)**

**(Jointly Administered)**

**Chapter 11**

**ORACLE'S USA, INC.'S OPPOSITION AND RIGHTS RESERVATION TO DEBTORS' MOTION FOR ENTRY OF (I) AN ORDER (A) APPROVING BIDDING PROCEDURES AND OVERBID PROTECTIONS IN CONNECTION WITH THE SALE OF CHEMTURA CORPORATION'S POLYVINYL CHLORIDE ADDITIVES BUSINESS AND RELATED ASSETS, (B) APPROVING THE FORM AND MANNER OF NOTICE OF SUCH SALE, (C) SCHEDULING AN AUCTION AND SALE HEARING AND (D) AUTHORIZING THE DEBTORS TO ENTER INTO ENHANCED SEVERANCE AGREEMENTS IN CONNECTION WITH THE SALE AND (II) AN ORDER (A) AUTHORIZING THE SALE OF CHEMTURA CORPORATION'S POLYVINYL CHLORIDE ADDITIVES BUSINESS AND RELATED ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS AND (B) GRANTING RELATED RELIEF ("OPPOSITION")**

    Oracle USA, Inc., successor in interest to Oracle Corporation and Hyperion Solutions, Inc. ("Oracle"), a creditor and contract counterparty in the above-captioned jointly administered Chapter 11 cases, hereby submits its Opposition to Debtors' Motion for Entry of (I) An Order (A) Approving Bidding Procedures and Overbid Protections in Connection with the Sale of Chemtura Corporation's Polyvinyl Chloride Additives Business and Related Assets, (B) Approving the Form and Manner of Notice of Such Sale, (C) Scheduling an Auction and Sale Hearing and (D) Authorizing the Debtors to Entry into Enhanced Severance Agreements in Connection with the Sale and (II) an Order (A) Authorizing the Sale of Chemtura Corporation's

Polyvinyl Chloride Additives Business and Related Assets Free and Clear of Liens, Claims, Encumbrances and Other Interests and (B) Granting Related Relief ("Sale Motion") and respectfully states as follows:

## I. INTRODUCTION

1. In connection with the Sale Motion, Chemtura Corporation and its jointly administered debtors (the "Debtors") filed an Affidavit of Service which identified those contract counterparties who were served with a Notice of Proposed Assumption and Assignment of Certain Executory Contracts and Unexpired Leases ("Cure Notice"). Oracle was not identified on this Cure Notice.

2. Based solely on those two documents, it does not appear that the Sale Motion impacts Oracle or any executory contract between Oracle and one or more of the Debtors.

3. However, the Asset Purchase Agreement entered into between the Debtors and SK Atlas, LLC ("APA"), which is the subject of the Sale Motion, identifies certain intellectual property, which includes "computer software," to be part of the asset sale to SK Atlas, LLC.

4. Section 2.1(b)(vi) of the APA, identifying Purchased Assets, includes "all Intellectual Property owned by the Seller and used exclusively by the Business, including the Intellectual Property set forth on Schedule 2.1(b)(vi) (collectively, the "Purchased Intellectual Property")…."

5. Because the Debtors did not attach Schedule 2.1(b)(vi) to the APA, Oracle is unable to determine with specificity whether the Debtors intend to seek to assign any Oracle software license or support contract as part of this sale.

6. If assumption and assignment is contemplated, all arrearages must be paid. At this time, Oracle is owed not less than $312,066.40 by the Debtors, and would not consent any assignment or transfer.

2

7. The APA also contemplates a Transition Services Agreement ("TSA") between the Debtors and SK Atlas, LLC ("SKA"). A copy of the TSA has yet to be provided, despite the fact that the TSA is identified as Exhibit F to the APA.

8. Oracle opposes, and reserves all rights regarding, the TSA.

9. Based on a brief description of the TSA set forth in the APA, it appears that Debtors seek to allow the ultimate purchaser and the Debtors to use simultaneously intellectual property licenses during the transitional period.

10. At the time the proposed APA was filed, the schedules to the TSA were being finalized. It is unclear whether those services described in the APA as "information technology platform" are meant to include Oracle's licensed software.

11. This "shared" use, if contemplated, exceeds the scope of the Oracle licenses' permitted uses, and would perhaps result in an unauthorized "splitting" of the licenses between the Debtors and any transitional user. Such "transitional" use, or "splitting" of use, is not authorized.

12. Oracle objects to the proposed transitional use of any Oracle software as violative of Oracle's license agreements.

13. There remains uncertainty regarding the Purchaser's identity. The stalking horse bidder is identified as SKA. However, the sale is subject to an auction, and an overbidder may emerge.

14. Therefore, at this time, Oracle cannot evaluate with certainty either the eventual purchaser, or whether the prerequisites of 11 U.S.C. § 365(b) have been met.

15. Oracle cannot now assess how its pecuniary and proprietary interests may be affected under the proposed sale, so it reserves its right to be heard on the matter once the purchaser is known.

83256777.2

16. As described below, the Debtors may not assume and assign any Oracle agreements without Oracle's consent, as such contracts involve the licensing of patented and/or copyrighted materials, and Oracle does not consent to their assumption and assignment at this time.

17. If Oracle agreements are being assumed and assigned, in order to ensure adequate assurance of future performance by the ultimate purchaser, Oracle requests that the Debtors, at a minimum, provide to Oracle the following information about SKA or the eventual successful bidder: (a) financial bona fides; (b) confirmation of status as a non-competitor of Oracle's; and (c) confirmation of its willingness to execute an Oracle Assignment Agreement and any related documentation.

18. Without this information, Oracle is unable to determine the buyer's creditworthiness or suitability/ability to adequately perform.

19. Oracle reserves all rights to object to the purchaser until this information is known with certainty.

20. For these reasons, Oracle requests that the Court deny, at this time, any contemplated assignment, or provision of access under the APA or the TSA, which could allow the unauthorized use and transfer of Oracle's software.

21. To the extent that the Debtors seek to assume and/or to assign any Oracle executory agreements, the Debtors also must pay the amounts due and owing and establish the Purchaser's ability to perform.

## II. ARGUMENT

### A. The Debtors May Not Assume And Assign or Transfer Any Oracle Agreement(s), As It Pertains To A License Of Intellectual Property And Oracle Does Not Consent To The Proposed Assignment At This Time.

22. Section 365(c)(1) of the Bankruptcy Code provides, in relevant part:

4

> The trustee may not assume or assign any executory contract ... of the debtor ... if (1)(A) applicable law excuses a party, other than the debtor, to such contract or lease from accepting performance from or rendering performance to an entity other than the debtor ..., whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties; and (B) such party does not consent to such assumption or assignment.

23. Federal law makes non-exclusive patent licenses non-assignable absent consent of the licensor. *In re Catapult Entertainment, Inc.,* 165 F.3d 747 (9th Cir. 1999), *cert. dismissed*, 528 U.S. 924 (1999). *See, In re Patient Educ. Media* 210 B.R. 237, 243 (Bankr. S.D.N.Y 1997); *See, In re Adelphia Communications Corp, et al.,* 359 B.R. 65 (Bankr. S.D.N.Y. 2007.

24. Oracle's license agreements involve the licensing of non-exclusive, patented software. At this time, Oracle does not consent to any proposed assignment as the license agreement(s) are non-assignable.

25. Accordingly, any intended assumption and assignment or transfer, even if "transitional," must be denied with respect to the Oracle agreement(s).

**B. The Sale Motion Should Be Denied With Respect To Any Oracle Agreement(s) Because It Fails To Confirm the Ultimate Buyer/Potential Assignee's Identity.**

26. Section 365(b) of the Bankruptcy Code sets forth specific prerequisites that must be met before a trustee/debtor can assume and assign an executory contract, including (a) curing (or providing adequate assurance of a prompt cure of) any defaults under the subject contracts, and (b) providing adequate assurance of future performance under the contract. Absent the foregoing, the executory contracts may not be assumed, or assumed and assigned.

27. Since the proposed sale is subject to the Debtors potentially receiving additional qualified bids, the identity of the ultimate purchaser/assignee remains unknown.

28. Therefore, at this time, Oracle cannot determine whether: (a) the ultimate purchaser/assignee is capable of providing adequate assurance of future performance; (b) the

5

proposed assignee is a competitor of Oracle; and (c) the purchaser is willing to enter into a standard form of Oracle Assignment Agreement, and related documentation, reflecting the terms, post-assignment, of the parties' relationship.

29. Until at least the information identified above is provided, Oracle is unable to determine whether the Debtors have complied, or will comply, with the protections of section 365(b)(1)(C).

**C. The Sale Motion Should Be Denied With Respect to the Oracle Agreement(s) Because It Fails to Provide for Payment of Appropriate Amounts Required Prior to Pursuit of Any Assignment, Including A "Transitional" One.**

30. Oracle's records reflect that it is owed not less than $312,066.40. The Debtors cannot assign and/or assign any license agreement(s) with Oracle until arrearages are cured.

31. Oracle does not consent to any proposed assignment.

32. At this time, Oracle does not have adequate assurance that the Debtors intend to pay any amounts owed, and for this reason also would withhold its consent to any assignment of the Oracle agreement(s). *See* 11 U.S.C. § 365(b)(1)(A).

33. Absent payment of the appropriate amounts to Oracle, the Oracle agreement(s) may not be assumed, assumed and assigned or otherwise transferred.

34. In addition, use of Oracle's licensed software, even on a "transitional" basis, by any entity other than an authorized user, is not permitted.

35. Oracle reserves its right to object to the cure until more certainty on the contract or contracts at issue is provided and the eventual purchaser is known.

**III. CONCLUSION**

36. The Debtors are prohibited from assuming and assigning or transferring any Oracle agreement(s) in the absence of obtaining Oracle's consent pursuant to section 365(c) and applicable case law.

proposed assignee is a competitor of Oracle; and (c) the purchaser is willing to enter into a standard form of Oracle Assignment Agreement, and related documentation, reflecting the terms, post-assignment, of the parties' relationship.

29. Until at least the information identified above is provided, Oracle is unable to determine whether the Debtors have complied, or will comply, with the protections of section 365(b)(1)(C).

**C. The Sale Motion Should Be Denied With Respect to the Oracle Agreement(s) Because It Fails to Provide for Payment of Appropriate Amounts Required Prior to Pursuit of Any Assignment, Including A "Transitional" One.**

30. Oracle's records reflect that it is owed not less than $312,066.40. The Debtors cannot assign and/or assign any license agreement(s) with Oracle until arrearages are cured.

31. Oracle does not consent to any proposed assignment.

32. At this time, Oracle does not have adequate assurance that the Debtors intend to pay any amounts owed, and for this reason also would withhold its consent to any assignment of the Oracle agreement(s). *See* 11 U.S.C. § 365(b)(1)(A).

33. Absent payment of the appropriate amounts to Oracle, the Oracle agreement(s) may not be assumed, assumed and assigned or otherwise transferred.

34. In addition, use of Oracle's licensed software, even on a "transitional" basis, by any entity other than an authorized user, is not permitted.

35. Oracle reserves its right to object to the cure until more certainty on the contract or contracts at issue is provided and the eventual purchaser is known.

**III. CONCLUSION**

36. The Debtors are prohibited from assuming and assigning or transferring any Oracle agreement(s) in the absence of obtaining Oracle's consent pursuant to section 365(c) and applicable case law.

37. The Debtors have failed to comply with the statutory prerequisites for assumption and assignment of any affected Oracle contracts by failing: (a) to identify the buyer with certainty so as to permit an evaluation of its ability to perform; (b) to identify the contracts at issue so as to permit an evaluation of the accuracy of the resultant cure payment; and (c) to provide adequate assurance of future performance.

38. For these reasons, and all those set forth above, Oracle respectfully requests that the Court deny, at this time, Debtors' Sale Motion to the extent it includes any effort to seek assumption and assignment of any Oracle agreement or to permit use of Oracle's software.

Dated: February 16, 2010  
      New York, New York

**DAY PITNEY LLP**

By  /s/ Amish R. Doshi\_\_\_\_\_  
Amish R. Doshi (AD5596)  
7 Times Square  
New York, NY 10036  
Telephone: (212) 297-5800  
Facsimile: (212) 916-2940  
E-mail: adoshi@daypitney.com

Shawn M. Christianson (CSB #114707)  
**BUCHALTER NEMER,**  
**A Professional Corporation**  
333 Market Street, 25th Floor  
San Francisco, CA 94105-2130  
Telephone: (415) 227-0900  
Facsimile: (415) 227-0770

Deborah Miller (CSB #95527)  
Jim Maroulis (CSB #208316)  
**ORACLE USA, INC.**  
500 Oracle Parkway  
Redwood City, California 94065  
Telephone:(650) 506-5200  
Facsimile: (650) 506-7114

*Attorneys for Oracle USA, Inc.*