**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re:<br><br>CHEMTURA CORPORATION, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 09-11233 (REG)<br><br>Jointly Administered |

### ORDER (A) AUTHORIZING THE SALE OF CHEMTURA CORPORATION'S POLYVINYL CHLORIDE ADDITIVES BUSINESS AND RELATED ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS AND (B) GRANTING RELATED RELIEF

Upon the motion (the **"Motion"** or the **"Sale Motion"**) [Docket No. 1643], of Chemtura Corporation (the **"Seller"**) and its affiliated debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the **"Debtors"**)**,** for entry of an order: (i) approving the Share and Asset Purchase Agreement, dated December 23, 2009 (the "**Purchase A**g**reement**")**,**[2] by and among Seller and SK Atlas, LLC and SK Capital Partners II, LP (SK Atlas, LLC and SK Capital Partners II, LP together, "**SK Capital**") or a higher and better offer submitted by competing bidder(s) to sell the Seller's ownership interests (the "**Sale**") in (a) all of the issued and outstanding capital stock ("**Shares**") of Chemtura Vinyl Additives GmbH, a non-Debtor company organized in accordance with the laws of the Federal Republic of Germany (the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal taxpayer-identification number, are: Chemtura Corporation (3153); A&M Cleaning Products, LLC (4712); Aqua Clear Industries, LLC (1394); ASCK, Inc. (4489); ASEPSIS, Inc. (6270); BioLab Company Store, LLC (0131); BioLab Franchise Company, LLC (6709); Bio-Lab, Inc. (8754); BioLab Textile Additives, LLC (4348); CNK Chemical Realty Corporation (5340); Crompton Colors Incorporated (3341); Crompton Holding Corporation (3342); Crompton Monochem, Inc. (3574); GLCC Laurel, LLC (5687); Great Lakes Chemical Corporation (5035); Great Lakes Chemical Global, Inc. (4486); GT Seed Treatment, Inc. (5292); HomeCare Labs, Inc. (5038); ISCI, Inc. (7696); Kem Manufacturing Corporation (0603); Laurel Industries Holdings, Inc. (3635); Monochem, Inc. (5612); Naugatuck Treatment Company (2035); Recreational Water Products, Inc. (8754); Uniroyal Chemical Company Limited (Delaware) (9910); Weber City Road LLC (4381); and WRL of Indiana, Inc. (9136).

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Purchase Agreement.

"**Acquired Company**") and (b) certain assets (the "**Purchased Assets**") relating to the design, manufacture, assembly, marketing, sale and distribution of polyvinyl chloride additives, as engaged in by the Seller at its Taft, Louisiana facility, and by the Acquired Company (all as further described in the Motion); (ii) authorizing the Sale of the Shares and the Purchased Assets to the Purchaser free and clear of all liens, claims, encumbrances and other interests (collectively, and as further described in the Artek/Aterian Purchase Agreement (defined below), the "**Claims**"), other than the Assumed Liabilities; (iii) authorizing the assumption and assignment of the Included Contracts to the Purchaser or other successful bidder at the Auction; and (iv) granting other related relief; and the determination, at the Auction, made by the Debtors in consultation with the advisors to the statutory committee of unsecured creditors appointed in these chapter 11 cases (the "**Creditors' Committee**") and the statutory committee of equity security holders appointed in these chapter 11 cases (the "**Equity Committee**," and, together with the Creditors' Committee, the "**Committees**"), that the highest and best bid for the Sale was, on a consolidated basis, made by Artek Aterian Holding Company, LCC and its sponsors Aterian Investment Partners Distressed Opportunities, LP and Artek Surfin Chemicals Ltd (collectively, "**Artek/Aterian**" or "**Purchaser**") by virtue of that certain Share and Asset Purchase Agreement by and among Artek/Aterian and Seller dated February 23, 2010 ("**Artek/Aterian Purchase Agreement**"), substantially in the form attached hereto as **Exhibit 1**, and having determined that the relief requested in the Motion is in the best interests of the Seller, the Debtors and their respective estates,

**THE COURT HEREBY FINDS THAT:**[3]

  A. The findings and conclusions set forth herein constitute the Bankruptcy Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

  B. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

  C. This Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a). Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), and to any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Rule 7054 of the Federal Rules of Bankruptcy Procedures (the "**Bankruptcy Rules**"), the Court expressly finds that there is no just reason for delay in the implementation of this Order.

  D. The predicates for the relief requested in the Sale Motion are sections 105(a), 363(b), (f), and (m), and 365 of title 11 of the United States Code (the "**Bankruptcy Code**") and Bankruptcy Rules 2002(a)(2), 6004(a), (b), (c), (e), (f) and (h), 6006(a), (c) and (d), 9007 and 9014.

  E. Actual written notice of the hearing to approve the sale transactions contemplated in the Purchase Agreement (the "**Sale Hearing**"), the Auction, the Sale Motion, the Sale and the

---

[3] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

assumption and assignment of the Included Contracts, and a reasonable opportunity to object or be heard with respect to the Sale Motion and the relief requested therein, has been afforded to all interested persons and entities, including, but not limited to: (i) the United States Trustee for the Southern District of New York ( **"U.S. Trustee"**)**;** (ii) counsel to the Committees**;** (iii) counsel to the agent for the Debtors' postpetition and prepetition secured lenders; (iv) the Internal Revenue Service; (v) the Environmental Protection Agency; (vi) the Louisiana Department of Environmental Quality; (vii) the Securities and Exchange Commission; (viii) counsel to the Purchaser; (ix) the counterparties to the Included Contracts; (x) all persons or entities known or reasonably believed to have asserted an interest in the Shares and/or the Purchased Assets; (xi) all persons or entities known or reasonably believed to have expressed an interest in acquiring the Shares and the Purchased Assets; (xii) counsel to SK Capital; and (xiii) all parties who have filed notices of appearance and requests for pleadings in these chapter 11 cases.

F. The Seller published notice of the Sale (the "**Publication Notice**"), the time and place of the proposed Auction, and the time and place of the Sale Hearing in the National Edition of *The Wall Street Journal* on January 25, 2010.

G. As evidenced by the affidavits of service previously filed with this Court, proper, timely, adequate and sufficient notice of the Sale Motion, the Auction, the Sale Hearing and the Sale has been provided in accordance with sections 102(1), 363 and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006 and 9014. The Seller also has complied with all obligations to provide notice of the Sale Motion, the Auction, the Sale Hearing, and the Bidding Procedures Order. The foregoing notice described in paragraphs D through F was good, sufficient and appropriate under the circumstances, and no other or further notice of the Sale

Motion, the Auction, the Sale Hearing, the Sale or the assumption and assignment of the Included Contracts is or was required.

H. The disclosures made by the Seller concerning the Purchase Agreement, the Sale, and the Sale Hearing were good, complete and adequate.

I. Purchaser is purchasing the Shares and the Purchased Assets in good faith and is a good faith buyer within the meaning of section 363(m) of the Bankruptcy Code, and is therefore entitled to the protection of that provision, and otherwise has proceeded in good faith in all respects in connection with this proceeding in that: (a) Purchaser recognized that the Seller was free to deal with any other party interested in acquiring the Shares and the Purchased Assets; (b) Purchaser complied with the provisions in the Bidding Procedures Order; (c) Purchaser agreed to subject its bid and did subject its bid to the competitive bidding procedures set forth in the Bidding Procedures Order; (d) all payments to be made by the Purchaser and other agreements or arrangements entered into by the Purchaser in connection with the Sale have been disclosed; (e) Purchaser has not violated section 363(n) of the Bankruptcy Code by any action or inaction; (f) no common identity of directors or controlling stockholders exists between the Purchaser and the Seller; and (g) the negotiation and execution of the Artek/Aterian Purchase Agreement and any other agreements or instruments related thereto were at arms'-length and in good faith.

J. The Seller conducted an Auction process in accordance with, and has otherwise complied in all respects with, the Bidding Procedures Order. The Auction process set forth in the Bidding Procedures Order afforded a full, fair and reasonable opportunity for any person or entity to make a higher or otherwise better offer to purchase the Shares and the Purchased Assets. The Auction was duly noticed and conducted in a noncollusive, fair and good faith

manner and a reasonable opportunity has been given to any interested party to make a higher and better offer for the Shares and the Purchased Assets.

K. The Artek/Aterian Purchase Agreement constitutes the highest and best offer for the Shares and the Purchased Assets, and will provide a greater recovery for the Seller's estate than would be provided by any other available alternative. The Seller's determination (in consultation with the Committees) that the Artek/Aterian Purchase Agreement constitutes the highest and best offer for the Shares and the Purchased Assets constitutes a valid and sound exercise of the Seller's business judgment.

L. The Purchase Agreement represents a fair and reasonable offer to purchase the Shares and the Purchased Assets under the circumstances of these chapter 11 cases. No other person or entity or group of entities has offered to purchase the Shares and the Purchased Assets for greater economic value to the Seller's estate than the Purchaser.

M. Approval of the Sale Motion and the Purchase Agreement and the consummation of the transactions contemplated thereby is in the best interests of the Seller, its creditors, its estate and other parties in interest.

N. The Seller has demonstrated compelling circumstances and a good, sufficient and sound business purpose and justification for the Sale prior to, and outside of, a plan of reorganization.

O. The consideration provided by the Purchaser pursuant to the Purchase Agreement for its purchase of the Shares and the Purchased Assets constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession or the District of Columbia.

P. The Seller has full corporate power and authority to execute and deliver the Artek/Aterian Purchase Agreement and all other documents contemplated thereby, and no further consents or approvals are required for the Seller to consummate the transactions contemplated by the Artek/Aterian Purchase Agreement, except as otherwise set forth in the Artek/Aterian Purchase Agreement.

Q. The transfer of each of the Shares and the Purchased Assets to the Purchaser will be as of the Closing Date a legal, valid and effective transfer of such assets, and vests or will, as of the Closing Date, vest the Purchaser with all right, title, and interest of the Seller to the Shares and the Purchased Assets free and clear of all Claims accruing, arising or relating to any time prior to the Closing Date (except for any Assumed Liabilities under the Artek/Aterian Purchase Agreement). The Purchaser would not enter into the Artek/Aterian Purchase Agreement to acquire the Shares and the Purchased Assets if the sale of the Shares and the Purchased Assets were not free and clear of all Claims except for the Assumed Liabilities. A sale of the Shares and the Purchased Assets, other than one free and clear of all Claims would adversely impact the Debtors' estates, and would yield substantially less value for the Debtors' estates with less certainty than the Sale. Therefore, the Sale contemplated by the Artek/Aterian Purchase Agreement is in the best interests of the Debtors, their estates and creditors, and all other parties in interest.

R. The Seller may sell the Shares and the Purchased Assets free and clear of all Liens (except for any Assumed Liabilities under the Artek/Aterian Purchase Agreement) because, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied. Those holders of Claims against the Seller, its estate or any of the Shares and the Purchased Assets who did not object, or who withdrew their objections, to

the Sale or the Sale Motion are deemed to have consented thereto pursuant to section 363(f)(2) of the Bankruptcy Code. Those holders of such Liens who did object (such holder, an "**Objecting Lienholder**") fall within one or more of the other subsections of section 363(f) and are adequately protected by having their Claims, if any, in each instance against the Seller, its estate or any of the Shares and the Purchased Assets, attach to the cash proceeds of the Sale ultimately attributable to the Shares and the Purchased Assets in which such creditor alleges an interest, in the same order of priority, with the same validity, force and effect that such creditor had prior to the Sale, subject to any claims and defenses the Seller and its estate may possess with respect thereto; provided, however, that any such interest in the cash proceeds from the Sale granted to an Objecting Lienholder shall be solely to the extent of such Objecting Lienholder's objection.

S. The assumption and assignment of the Included Contracts pursuant to the terms of this Order is integral to the Artek/Aterian Purchase Agreement, is in the best interests of the Seller and its estate, creditors and other parties in interest, and represents the reasonable exercise of sound and prudent business judgment by the Seller.

T. The Seller has cured all defaults existing before the Closing Date under any of the Included Contracts, within the meaning of section 365(b)(1)(A) of the Bankruptcy Code; and (ii) provided compensation to any party for actual pecuniary loss to such party resulting from a default prior to the Closing Date under the Included Contracts, within the meaning of section 365(b)(1)(B) of the Bankruptcy Code.

U. The Purchaser has provided adequate assurance of its future performance under the Included Contracts within the meaning of sections 365(b)(1)(C), 365(b)(3) (to the extent applicable) and 365(f)(2)(B) of the Bankruptcy Code.

V. To maximize the value of the Shares and the Purchased Assets it is essential that the Sale occur within the time constraints set forth in the Artek/Aterian Purchase Agreement. Time is of the essence in consummating the Sale.

W. Other than the Assumed Liabilities, as defined in the Artek/Aterian Purchase Agreement, the Purchaser shall have no obligations with respect to any liabilities of the Debtors, including, but not limited to, claims based under any theory of successor or transferee liability, de facto merger or continuity of interest.

X. The sale and assignment of the Shares and the Purchased Assets outside of a plan of reorganization pursuant to the Artek/Aterian Purchase Agreement neither impermissibly restructures the rights of the Debtors' creditors nor impermissibly dictates the terms of a liquidating plan of reorganization for the Debtors. The Sale does not constitute a *sub rosa* chapter 11 plan.

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

1. The relief requested in the Sale Motion, as modified herein to apply to the Artek/Aterian Purchase Agreement, is granted and approved, and the Sale contemplated thereby is approved as set forth in this Order.

2. All objections to the Sale Motion or the relief requested therein that have not been withdrawn, waived or settled as announced to the Court at the Sale Hearing or by stipulation, and all reservations of rights included therein, are, except as provided in other orders of the Court, hereby overruled on the merits or the interests of such objections have been otherwise satisfied or adequately provided for.

3. Notice of the Sale Hearing was fair and equitable under the circumstances and complied in all respects with section 102(1) of the Bankruptcy Code and Bankruptcy Rules 2002, 6004 and 6006, and the Sale Motion shall be deemed to provide sufficient notice as to the sale and assignment of the Shares and the Purchased Assets free and clear of all Claims (except for Assumed Liabilities) in accordance with Rule 6004-1 of the Local Bankruptcy Rules.

4. The Court's findings of fact and conclusions of law in the Bidding Procedures Order, including the record of the hearing to approve the Bidding Procedures Order, are incorporated herein by reference.

5. The Artek/Aterian Purchase Agreement and all other ancillary documents, and all of the terms and conditions thereof, are hereby approved.

6. Pursuant to section 363(b) of the Bankruptcy Code, the Seller is authorized and empowered to take any and all actions necessary or appropriate to (a) consummate the Sale of the Shares and each of the Purchased Assets to the Purchaser pursuant to and in accordance with the terms and conditions of the Artek/Aterian Purchase Agreement, (b) close the Sale as contemplated in the Artek/Aterian Purchase Agreement and this Order, and (c) execute and deliver, perform under, consummate, implement and close fully the Artek/Aterian Purchase Agreement, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Artek/Aterian Purchase Agreement and the Sale, including any other ancillary documents, or as may be reasonably necessary or appropriate to the performance of the obligations as contemplated by the Purchase Agreement and such other ancillary documents, *provided, however,* that the Seller and the Purchaser shall have no obligation to proceed with the Closing until all conditions precedent to their obligations to do so

(as expressly set forth in the Artek/Aterian Purchase Agreement) have been met, satisfied or waived with the consent of the Committees.

7. The terms and provisions of this Order shall inure to the benefit of the Purchaser, and the Seller, and their respective successors and assigns, including but not limited to any chapter 11 or chapter 7 trustee that may be appointed in the Debtors' cases and shall be binding in all respects upon the Purchaser and the Seller, any trustees thereof, their respective estates, all creditors and shareholders of the Seller, all interested parties and their respective successors and assigns, including, but not limited to, any creditor asserting a lien in the Purchased Assets and all non-debtor counter-parties to the Included Contracts.

8. Pursuant to sections 363(f) and 365 of the Bankruptcy Code, the Seller is authorized to transfer the Shares and the Purchased Assets on the Closing Date. Such Shares and the Purchased Assets shall be transferred to the Purchaser upon and as of the Closing Date notwithstanding any requirement for approval or consent by any person and vests the Purchaser with all right, title and interest of the Seller in and to the Shares and the Purchased Assets and such transfer shall constitute a legal, valid, binding and effective transfer of such Shares and the Purchased Assets and, upon the Seller's receipt of the Purchase Price, shall be free and clear of all Claims except any Assumed Liabilities under the Purchase Agreement, whether arising on, before or after the Petition Date, with all such Claims to attach to the net proceeds of the Sale with the same validity, priority, force and effect that they now have as against such Purchased Assets, subject to any claims and defenses the Seller and its estate may possess with respect thereto.

9. Except as expressly permitted or otherwise specifically provided by the Artek/Aterian Purchase Agreement or this Order, all persons and entities holding Claims or

interests in the Shares or the Purchased Assets (other than the Assumed Liabilities) arising under or out of, in connection with, or in any way relating to the Seller, the Shares, the Purchased Assets or the transfer of the Shares and the Purchased Assets to the Purchaser, hereby are forever barred, estopped and permanently enjoined from asserting against the Purchaser or its successors or assigns, their property or the Shares and the Purchased Assets, such persons' or entities' interests in and to the Shares or the Purchased Assets. On the Closing Date, each creditor is authorized to execute such documents and take all other actions as may be necessary to release Claims on the Shares or the Purchased Assets, if any, as provided for herein, as such Claims may have been recorded or may otherwise exist.

10. All persons and entities are hereby forever prohibited and enjoined from taking any action that would adversely affect or interfere with the ability of the Seller to sell and transfer the Shares and the Purchased Assets to the Purchaser in accordance with the terms of the Artek/Aterian Purchase Agreement and this Order.

11. All entities that are in possession of some or all of the Shares or the Purchased Assets on the Closing Date are directed to surrender possession of such Shares or the Purchased Assets to the Purchaser or its assignee at the Closing.

12. The provisions of this Order authorizing the sale and assignment of the Shares and the Purchased Assets free and clear of Claims shall be self-executing, and neither the Seller nor the Purchaser shall be required to execute or file releases, termination statements, assignments, consents, or other instruments in order to effectuate, consummate and implement the provisions of this Order. Notwithstanding the foregoing, a certified copy of this Order may be filed with the appropriate clerk and/or recorded with the recorder to act to cancel the Claims and other encumbrances of record.

13. If any person or entity which has filed statements or other documents or agreements evidencing Claims on, or interests in, the Shares or the Purchased Assets shall not have delivered to the Seller prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of liens and easements, and any other documents necessary for the purpose of documenting the release of all Claims which the person or entity has or may assert with respect to the Shares or the Purchased Assets, the Seller is hereby authorized and directed, and the Purchaser is hereby authorized, to execute and file such statements, instruments, releases and other documents on behalf of such person or entity with respect to the Shares or the Purchased Assets.

14. This Order is and shall be binding upon and govern the acts of all persons and entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease; and each of the foregoing persons and entities is hereby directed to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the Artek/Aterian Purchase Agreement.

15. Upon the Closing of the Sale, the Seller is authorized to assume and assign the Included Contracts to the Purchaser free and clear of all Claims (except for Assumed Liabilities). The payment of the applicable Cure Costs (as defined in the Purchase Agreement), if any, shall (a) effect a cure of all defaults existing thereunder as of the Closing Date, (b) compensate for any

actual pecuniary loss to such non-Debtor party resulting from such default, and (c) together with the assumption of the Included Contracts by the Purchaser, constitute adequate assurance of future performance thereof. The Purchaser shall then have assumed the Included Contracts and, pursuant to section 365(f) of the Bankruptcy Code, the assignment by the Seller of such contract shall not be a default thereunder. After the payment of the relevant Cure Costs, neither the Seller nor the Purchaser shall have any further liabilities to the non-Debtor parties to the Included Contracts other than the Purchaser's obligations under the Included Contracts that become due and payable on or after the Closing Date.

16. Any provisions in the Included Contracts that prohibit or condition the assignment of such contract or allow the party to such contract to terminate, recapture, impose any penalty, condition on renewal or extension or modify any term or condition upon the assignment of such contract, constitute unenforceable anti-assignment provisions that are void and of no force and effect. All other requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption by the Seller and assignment to the Purchaser of the Included Contracts have been satisfied. Upon the Closing, in accordance with sections 363 and 365 of the Bankruptcy Code, the Purchaser shall be fully and irrevocably vested with all rights, title and interest of the Seller under the Included Contracts.

17. The Included Contracts shall, as of the Closing Date, be valid and binding on the Purchaser and the other non-debtor counter-parties thereto, and in full force and effect and enforceable in accordance with their terms. Following such assignment, the Seller shall be relieved, pursuant to section 365(k) of the Bankruptcy Code, from any further liability under the Included Contracts.

18. There shall be no rent accelerations, assignment fees, increases (including advertising rates) or any other fees charged to Purchaser or the Seller as a result of the assumption and assignment of the Included Contracts.

19. Effective upon the Closing Date and except as otherwise provided by the Artek/Aterian Purchase Agreement or stipulations filed with or announced to the Court with respect to a specific matter, all persons and entities are forever prohibited and enjoined from commencing or continuing in any manner any action or other proceeding, whether in law or equity, in any judicial, administrative, arbitral or other proceeding against the Purchaser, its successors and assigns, or the Purchased Assets, with respect to any (a) Claim arising under, out of, in connection with or in any way relating to the Seller, the Purchaser, the Shares and the Purchased Assets prior to the Closing of the Sale, or (b) successor liability, including, without limitation, the following actions: (i) commencing or continuing in any manner any action or other proceeding against the Purchaser, its successors, assets or properties; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order against the Purchaser, its successors, assets or properties; (iii) creating, perfecting or enforcing any Claims or other encumbrance against the Purchaser, its successors, assets or properties; (iv) asserting any setoff, right of subrogation or recoupment of any kind against any obligation due the Purchaser or its successors; (v) commencing or continuing any action, in any manner or place, that does not comply or is inconsistent with the provisions of this Order or other orders of the Court, or the agreements or actions contemplated or taken in respect thereof; or (vi) revoking, terminating or failing or refusing to issue or renew any license, permit or authorization to operate any of the Shares or the Purchased Assets.

20. To the greatest extent available under applicable law, the Purchaser shall be authorized, as of the Closing Date (as defined in the Purchase Agreement), to operate under any license, permit, registration, and any other governmental authorization or approval of the Debtors with respect to the Shares and the Purchased Assets and the Included Contracts, and all such licenses, permits, registrations, and governmental authorizations and approvals are deemed to have been, and hereby are, directed to be transferred to the Purchaser as of the Closing Date.

21. All of the Debtors' interests in the Shares and the Purchased Assets to be acquired by the Purchaser under the Purchase Agreement shall be, as of the Closing Date and upon the occurrence of the Closing, transferred to and vested in the Purchaser. Upon the occurrence of the Closing, this Order shall be considered and constitute for any and all purposes a full and complete general assignment, conveyance and transfer of the Shares and the Purchased Assets acquired by the Purchaser under the Artek/Aterian Purchase Agreement and/or a bill of sale or assignment transferring indefeasible title and interest in the Shares and the Purchased Assets, including the Included Contracts, to the Purchaser.

22. The Purchaser shall not be deemed, as result of any action taken in connection with the Purchase Agreement, to: (a) be a legal successor, or otherwise be deemed a successor to the Debtors (other than with respect to any obligations arising under the Artek/Aterian Purchase Agreement from and after the Closing (as defined in the Artek/Aterian Purchase Agreement)); (b) have, de facto or otherwise, merged with or into the Debtors; or (c) be a mere continuation or substantial continuation of the Debtors or the enterprise of the Debtors. Without limiting the foregoing, other than the Assumed Liabilities, as defined in the Purchase Agreement, the Purchaser shall have no obligations with respect to any liabilities of the Debtors, including, but

not limited, claims based under any theory of successor or transferee liability, de facto merger or continuity of interest.

23. Except for the Assumed Liabilities or as otherwise expressly provided for in this Order or the Purchase Agreement, the Purchaser shall not have any liability or other obligation of the Seller arising under or related to the Shares or the Purchased Assets related to the period before the Closing. No bulk sales law, or similar law of any state or other jurisdiction, shall apply in any way to the Sale, the Motion and this Order.

24. The transactions contemplated by the Purchase Agreement are undertaken by the Purchaser without collusion and in good faith, as that term is defined in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the Sale (including the assumption and assignment of the Included Contracts), unless such authorization and consummation of such Sale are duly stayed pending such appeal. The Purchaser is a good faith buyer within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to the full protections of section 363(m) of the Bankruptcy Code. The Sale approved by this Order is not subject to avoidance under section 363(n) of the Bankruptcy Code. The Purchaser is not an "insider" as that term is defined in section 101(31) of the Bankruptcy Code.

25. Pursuant to Bankruptcy Rules 7062, 9014, 6004(h) and 6006(d), this Order shall be effective immediately upon entry and the Seller and the Purchaser are authorized to close the Sale immediately upon entry of this Order.

26. Nothing in this Order or the Artek/Aterian Purchase Agreement approves or provides for the transfer to Purchaser of any avoidance claims (whether under chapter 5 of the Bankruptcy Code or otherwise) of the Debtors' estates.

27. There are no brokers involved in consummating the Sale and no brokers' commissions are due.

28. The failure specifically to include any particular provision of the Artek/Aterian Purchase Agreement in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Purchase Agreement be authorized and approved in its entirety.

29. The Artek/Aterian Purchase Agreement and any related agreements, documents or other instruments may be modified, amended or supplemented by the parties thereto with the consent of the Committees and in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment or supplement does not have a material adverse effect on the Debtors' estates.

30. The automatic stay pursuant to section 362 of the Bankruptcy Code is hereby lifted with respect to the Debtors solely to the extent necessary to allow the Purchaser and the Debtors to deliver any notice provided for in the Purchase Agreement and allow the Purchaser and the Debtors to take any and all actions permitted under the Purchase Agreement in accordance with the terms and conditions thereof.

31. The Court shall retain jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Order and the Artek/Aterian Purchase Agreement, all amendments thereto and any waivers and consents thereunder and each of the agreements executed in connection therewith to which the Seller is a party or which has been assigned by the Seller to the Purchaser, and to adjudicate, if necessary, any and all disputes concerning or relating in any way to the Sale.

32. All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

33. Nothing in this Order or the Artek/Aterian Purchase Agreement: (a) releases, nullifies, precludes, or enjoins the enforcement of any liability to a governmental unit under police or regulatory statutes or regulations that any entity would be subject to as the owner or operator of property after the date of entry of this Order; or (b) authorizes the transfer to the Purchaser of any license, permit, registration, or governmental authorization or approval without the Purchaser's compliance with all applicable legal requirements under non-bankruptcy law governing such transfers.

34. The requirement set forth in Local Rule 9013-1(b) that any motion or other request for relief be accompanied by a memorandum of law is hereby deemed satisfied by the contents of the Sale Motion or otherwise waived.

35. To the extent that this Order is inconsistent with any prior order or pleading with respect to the Sale Motion in these chapter 11 cases, the terms of this Order shall govern.

36. To the extent there are any inconsistencies between the terms of this Order and the Purchase Agreement (including all ancillary documents executed in connection therewith), the terms of this Order shall control.


New York, New York                          *s/ Robert E. Gerber*
Date: ***February 23, 2010***               Honorable Robert E. Gerber
                                                           United States Bankruptcy Judge

# Exhibit 1

**Artek/Aterian Purchase Agreement**