**THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| CHEMTURA CORPORATION, *et al.*,[1] | ) | Case No. 09 11233 (REG) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

## ORDER ESTABLISHING PROCEDURES
## FOR ESTIMATION OF DIACETYL CLAIMS

Upon the motion (the "**Motion**") of Chemtura Corporation and its affiliated debtors and debtors in possession in the above captioned chapter 11 cases (collectively, the "**Debtors**") for entry of an order (a) establishing procedures for estimation (the "**Estimation Procedures**") of non-duplicative diacetyl-related claims that were filed on or before the bar date (the "**Diacetyl Claims**"); (b) approving and entering the case management order (the "**CMO**"); (c) approving the production of supplemental information to the proofs of claim and the law firm subpoenas; (d) entering the proposed Protective Order; and (e) scheduling a hearing (the "**Estimation Hearing**") on August 11, 2010 to estimate the Diacetyl Claims pursuant to section 105(a) of title 11 of the United States Code (the "**Bankruptcy Code**"); and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334; and consideration of the Motion and the relief requested therein being a core proceeding pursuant to

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal taxpayer-identification number, are: Chemtura Corporation (3153); A&M Cleaning Products, LLC (4712); Aqua Clear Industries, LLC (1394); ASCK, Inc. (4489); ASEPSIS, Inc. (6270); BioLab Company Store, LLC (0131); BioLab Franchise Company, LLC (6709); Bio-Lab, Inc. (8754); BioLab Textile Additives, LLC (4348); CNK Chemical Realty Corporation (5340); Crompton Colors Incorporated (3341); Crompton Holding Corporation (3342); Crompton Monochem, Inc. (3574); GLCC Laurel, LLC (5687); Great Lakes Chemical Corporation (5035); Great Lakes Chemical Global, Inc. (4486); GT Seed Treatment, Inc. (5292); HomeCare Labs, Inc. (5038); ISCI, Inc. (7696); Kem Manufacturing Corporation (0603); Laurel Industries Holdings, Inc. (3635); Monochem, Inc. (5612); Naugatuck Treatment Company (2035); Recreational Water Products, Inc. (8754); Uniroyal Chemical Company Limited (Delaware) (9910); Weber City Road LLC (4381); and WRL of Indiana, Inc. (9136).

28 U.S.C. § 157(b); and venue being proper before this court pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that the relief requested in the Motion will benefit the Debtors' estates, their creditors and all other parties in interest; and due and proper notice of the Motion having been provided, and it appearing that no other or further notice need be provided; and upon the arguments and testimony presented at the hearing before the Court, and any objections to the Motion having been withdrawn, resolved or overruled on the merits; and after due deliberation and sufficient cause appearing therefore, it is **ORDERED** that:

1.     The Motion is granted, subject to the terms and conditions set forth in this Order. The estimation proceedings shall estimate the aggregate value of the Debtors' Diacetyl Claims solely for the purpose of the Debtors seeking confirmation of a plan of reorganization (the "**Diacetyl Claims Estimation Proceedings**"), which purpose shall include, if ordered by the Court, the establishment of a maximum cap on distributions to holders of Diacetyl Claims, subject to the reservation of rights in paragraph 2.  Although the Diacetyl Claims Estimation Proceedings will address both the insured and uninsured portion of the Debtors' diacetyl-related liability, the purpose of the Diacetyl Claims Estimation Proceedings shall not be to determine (i) the existence and/or scope of any insurance coverage under any insurance policies or related agreements issued or allegedly issued to one or more of the Debtors or under which the Debtors claim entitlement to benefits (the "**Debtors' Policies**"), or (ii) the  insurers' rights, claims, defenses, exclusions, and/or obligations under the Debtors' Policies, or any insurance policies or related agreements or otherwise regarding the Diacetyl Claims.

2.     Notwithstanding anything to the contrary in this Order, the Court reserves the following issues for subsequent decision (which decision may be considered by the Court in conjunction with the Estimation Hearing to the extent requested by a party in interest), and the

rights of all parties with respect to such issues are hereby reserved: (i) whether estimation of the Diacetyl Claims in the Diacetyl Claims Estimation Proceedings may be used to establish a maximum cap on distributions to holders of Diacetyl Claims; (ii) whether estimation of the Diacetyl Claims for purposes of establishing a maximum cap on distributions to holders of Diacetyl Claims is a core proceeding under 28 U.S.C. § 157(b)(2); and (iii) whether estimation of the Diacetyl Claims for purposes of establishing a maximum cap on distributions to holders of Diacetyl Claims infringes on any rights to a trial by jury that a holder of a Diacetyl Claim may have under 28 U.S.C. § 1411(a). Nothing in this Order or the CMO shall constitute or be construed as a waiver of any right to a trial by jury.

3. Notwithstanding anything to the contrary in this Order, the Diacetyl Claims Estimation Proceedings, or any related documents, any findings, conclusions, opinions, or orders entered in these Diacetyl Claims Estimation Proceedings, shall not be binding upon, have any preclusive or collateral estoppel effect upon, be offered into evidence, cited, or argued to a jury or other trier of fact, and shall not be used in any manner by, any person or entity (including, without limitation, the Debtors, any insurers, any party participating in these estimation proceedings or any other party in interest) in any litigation, action, arbitration, dispute, or other proceeding concerning (i) the determination of the validity or amount of individual Diacetyl Claims or the aggregate value of the Diacetyl Claims, (ii) the existence and/or scope of any insurance coverage under the Debtors' Policies, or (iii) insurers' rights, claims, defenses, exclusions and/or obligations under the Debtors' Policies; *provided, however*, that, for the avoidance of doubt and subject to the provisions of paragraphs 1 and 2 above, nothing in this Order shall prevent or preclude a party from using any findings, conclusions, opinions, or orders entered in these Diacetyl Claims Estimation Proceedings at the Estimation Hearing or in

connection with the filing and approval of any Disclosure Statement, the filing and seeking of confirmation of a proposed plan of reorganization, or seeking the establishment of a maximum cap on distributions to holders of Diacetyl Claims under a plan of reorganization in these chapter 11 cases.

4.     Because the Diacetyl Claims Estimation Proceedings will not be binding on, or admissible or useable against, any Debtor, its insurers, or any other party in interest for any purpose concerning insurance coverage under the Debtors' Policies, the Debtors' insurers shall not participate in the Diacetyl Claims Estimation Proceedings.  The fact that the Debtors' insurers do not participate in the Diacetyl Claims Estimation Proceeding shall not be held against or in favor of any person or entity in any subsequent or other litigation, action, arbitration, dispute or other proceeding concerning (i) the existence and/or scope of any insurance coverage under the Debtors' Policies, or (ii) insurers' rights, claims, defenses, exclusions and/or obligations under the Debtors' Policies.

5.     For the purposes of any litigation, action, arbitration,  dispute or other proceeding concerning (i) the existence and/or scope of any insurance coverage under the Debtors' Policies or any insurance policies or related agreements issued or allegedly issued to the Debtors, or (ii) insurers' rights, claims, defenses, exclusions and/or obligations under the Debtors' Policies, or any insurance policies or related agreements or otherwise regarding Diacetyl Claims, the findings, conclusions, opinions or orders entered in the Diacetyl Claims Estimation Proceeding or otherwise in connection with  estimation of Diacetyl Claims (whether contained or referenced in any decision, order, finding, conclusion or judgment of this Court) shall not constitute a "judgment," "adjudication," "final order," "settlement," or "findings of liability" binding on, or admissible or useable against, any Debtor, its insurers, or any other party in interest for any

purpose concerning insurance coverage under the Debtors' Policies or any insurance policies or related agreements issued or allegedly issued to the Debtors. The Court's findings, conclusions, orders, judgments and other rulings in connection with the Diacetyl Claims Estimation Motion or otherwise with respect to the estimation of Diacetyl Claims shall apply only to plan of reorganization confirmation issues and not to issues of insurance coverage.

6.      The CMO, which contains the Estimations Procedures described in the Motion, attached hereto as <u>Exhibit 1</u> is hereby approved.

7.      The Protective Order attached hereto as <u>Exhibit 2</u> is entered.

8.      The Estimation Hearing shall be held on August 11, 2010, at 9:45 a.m. EDT.

9.      Nothing in this Order or the Motion shall constitute an admission of the validity, nature, amount, or priority of any claim against the Debtors, and the Debtors and each of the statutory committees appointed in these chapter 11 cases reserve their respective rights to dispute the validity, nature, amount, or priority of any claim asserted.

10.      Approval of the Estimation Procedures by this Order is without prejudice to the rights of the Debtors or any party in interest to seek an order of the Court approving additional or different procedures with respect to specific claims or categories of claims, or to modify the Estimation Procedures.

11.      The Debtors are authorized to take all actions necessary or appropriate to effectuate the relief granted pursuant to this Order in accordance with the Motion.

12.      The terms and conditions of this Order shall be immediately effective and enforceable upon entry of the Order.

13.      This Order incorporates by reference the Court's ruling on the Motion, which was stated on the record at the hearing on April 7, 2010. To the extent that this Order or the CMO

attached hereto as Exhibit 1 may be inconsistent with that ruling, the Court's statements at the April 7, 2010 hearing shall control.

14.    The Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

New York, New York                          **_s/Robert E. Gerber_**
Date: **_April 27, 2010_**                   Honorable Robert E. Gerber
                                            United States Bankruptcy Judge

<u>**Exhibit 1**</u>

**Case Management Order**

**THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| CHEMTURA CORPORATION, *et al.,*[1] | ) | Case No. 09 11233 (REG) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

## PROPOSED CASE MANAGEMENT ORDER

Upon the motion by the above-captioned debtors and debtors in possession (collectively,

the "**Debtors**" or "**Chemtura**") for an order approving procedures for estimating certain diacetyl

claims (the "**Estimation Motion**"); and it appearing that this Court has jurisdiction over this

matter pursuant to 28 U.S.C. §§ 157 and 1334; and it appearing that this proceeding is a core

proceeding pursuant to 28 U.S.C. § 157(b)(2); and it appearing that venue of this proceeding and

the Estimation Motion is proper in this District pursuant to 28 U.S.C. §§1408 and 1409; and

adequate notice of the Estimation Motion having been given; and it appearing that no other

notice need be given; and after due deliberation and sufficient cause appearing therefore, it is

hereby **ORDERED** that:

1.     The CMO is approved as set forth herein.   The CMO may be modified by
subsequent Order of the Court upon cause shown or agreement of the parties, provided the
hearing date of August 11, 2010 shall only be changed by the Court.

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal
taxpayer-identification number, are:  Chemtura Corporation (3153); A&M Cleaning Products, LLC (4712);
Aqua Clear Industries, LLC (1394); ASCK, Inc. (4489); ASEPSIS, Inc. (6270); BioLab Company Store, LLC
(0131); BioLab Franchise Company, LLC (6709); Bio-Lab, Inc. (8754); BioLab Textile Additives, LLC (4348);
CNK Chemical Realty Corporation (5340); Crompton Colors Incorporated (3341); Crompton Holding
Corporation (3342); Crompton Monochem, Inc. (3574); GLCC Laurel, LLC (5687); Great Lakes Chemical
Corporation (5035); Great Lakes Chemical Global, Inc. (4486); GT Seed Treatment, Inc. (5292); HomeCare
Labs, Inc. (5038); ISCI, Inc. (7696); Kem Manufacturing Corporation (0603); Laurel Industries Holdings, Inc.
(3635); Monochem, Inc. (5612); Naugatuck Treatment Company (2035); Recreational Water Products, Inc.
(8754); Uniroyal Chemical Company Limited (Delaware) (9910); Weber City Road LLC (4381); and WRL of
Indiana, Inc. (9136).

2.     The Debtors, the Statutory Committee of Unsecured Creditors (the "**Creditors' Committee**"), the Statutory Committee of Equity Security Holders (the "**Equity Committee**"), the Debtors' postpetition and prepetition secured lenders (the "**Lenders**"), and the Diacetyl Claimants (as such term is defined below) are parties to this proceeding (collectively, the "**Parties**") and shall be entitled to participate in the following discovery and estimation proceedings.

3.     The schedule of critical events for the evidentiary hearing on the Estimation Motion shall be as follows:

## A.     FACT DISCOVERY SCHEDULE

4.     The claimants who filed diacetyl- and/ or acetoin-related proofs of claim  on or before the bar date (the "**Diacetyl Claimants**") are directed to produce Diacetyl Claimant Information and Third-Party Claimant Information, as outlined in paragraphs 18 and 20 to the Estimation Motion.

5.     The Debtors are authorized to pursue discovery from the Diacetyl Claimants or their attorneys with respect to past settlement information concerning diacetyl claims consistent with the protocol that the Court has ordered in relation to the Humphrey Farrington 2004 Application.

6.     The Protective Order attached to the Order Granting the Estimation Motion as Exhibit 2 governing the confidentiality of information produced by the Diacetyl Claimants and law firms in this proceeding is approved.

7.     In addition to the discovery listed above, any Party is permitted to serve discovery requests (including document requests, interrogatories, requests to admit, and third-party subpoenas) on any other Party and/or third party, provided that such discovery requests are within the limits provided by the Federal Rules of Civil Procedure, the Federal Rules of Bankruptcy Procedure, and the Local Rules of this Court, and are reasonable and narrowly tailored to request only evidence, now in existence, relevant to determining the aggregate value of the Debtors' Diacetyl Claims for the purposes of preparing and confirming a plan of reorganization (the "**Diacetyl Claims Estimation Proceedings**") and not the merits of individual Diacetyl Claims (the "**Discovery Requests**").  The Parties agree to serve joint Discovery Requests, if possible, in an effort to avoid duplicative discovery, minimize expenses, and promote the efficiency of these proceedings.  Any such joint Discovery Requests shall not be deemed to be an agreement and/or admission that such evidence is relevant to and/or admissible in the Diacetyl Claims Estimation Proceedings.

8.     The Parties may serve Discovery Requests upon entry of the CMO through and including April 30, 2010, at 5:00 p.m. EDT.

9.     May 28, 2010, at 5:00 p.m. EDT (the "**Return Date**") shall be the last date and time by which the Parties or any third parties must produce the documents responsive to the discovery requests.

10.     All discovery, including medical records and diacetyl-related settlement information, requested from any Party or third party shall be produced by the Return Date.

11.     Documents produced by any Party shall be simultaneously delivered (either through email or by disc) to all other Parties.

12.     Documents received by any Party in response to a discovery request and/or subpoena to a third party shall be delivered by that Party (either through email or by disc) to all other Parties within two business days of receipt.

## B.     EXPERT DISCOVERY AND BRIEFING SCHEDULE

13.     The Parties shall identify their testifying experts by no later than May 21, 2010.

14.     On or before June 11, 2010 the Debtors shall serve their expert report(s), which shall estimate the Debtors' liability for the Diacetyl Claims, and all of the materials that their expert(s) considered or relied upon in creating their report(s), except for draft reports and communications as set forth in paragraph 19 below.  Service by email shall constitute valid service.

15.     On or before June 25, 2010, the Creditors' Committee, the Equity Committee, and/or the Lenders shall serve their expert report(s), which shall estimate the Debtors' liability for the Diacetyl Claims, and all of the materials that their expert(s) considered or relied upon in creating their report(s), except for draft reports and communications as set forth in paragraph 19 below.  Service by email shall constitute valid service.

16.     On or before July 9, 2010, the Diacetyl Claimants shall serve their expert report(s), which shall estimate the Debtors' liability for the Diacetyl Claims, and all of the materials that their expert(s) considered or relied upon in creating their report(s), except for draft reports and communications as set forth in paragraph 19 below.  Service by email shall constitute valid service.

17.     No Party shall serve rebuttal expert reports, unless agreed by all Parties with Court approval.

18.     During the period from June 11, 2010 through July 23, 2010, the Parties shall be entitled to depose each other's experts. Each Party's expert(s) will be deposed only once, for no longer than one day of seven hours, in accordance with the Federal Rules of Civil Procedure, unless agreed by all Parties with Court approval.  Unless otherwise agreed to by the Parties in writing or waived by counsel for the Diacetyl Claimants on the deposition record, at least four (4) of the seven hours that are available at any deposition of the testifying experts of the Debtors, the Creditors' Committee, the Equity Committee, and the Lenders shall be given to the Diacetyl Claimants to depose such experts.  All interested Parties may attend and cross-examine the expert witness(es).

19.     Draft expert reports and communications between expert(s) and counsel are not discoverable.  Nothing in this Order limits or is intended to limit material (other than draft expert

reports or communications between experts and counsel) that may be used to cross-examine expert witnesses at the evidentiary hearing.

20.     All Parties shall simultaneously submit estimation briefs on or before July 30, 2010.  The Parties shall not submit reply estimation briefs.

## C.     EVIDENTIARY HEARING

21.     The parties shall exchange declarations of expert witnesses sought to be introduced at the evidentiary hearing, designations of deposition testimony, and trial exhibits (including demonstratives), with copies to Chambers, no later than August 4, 2010.

***22.     An expert's declaration shall not contain or include any testimony or materials that were not set forth in the expert's report, except for such testimony that merely restates, without material addition, analysis set forth in the expert report or is reasonably necessary to explain differences between the experts' opinions and reports, PROVIDED, however, that if a party having tendered an expert feels that it will be prejudiced by such limitations and wishes to offer more expansive testimony, it shall immediately arrange for a telephonic on the record conference with the Court, at which the Court will determine whether it will permit such more expansive testimony and any conditions (e.g. requiring rebuttal reports and/or supplemental depositions) it will impose.***

23.     On August 11, 2010, at 9:45 a.m. EDT, the Court shall hold an estimation hearing.  The estimation hearing will last for ~~one day only~~ ***no more than 1-1/2 days, except as the Court may order for cause shown, which cause may include the failure of the Debtors, Creditors Committee and Equity Committee to coordinate and/or avoid duplicative or cumulative testimony.***.  Testimony at the hearing shall be limited to cross-examination and re-direct of previously disclosed estimation experts.

This Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Order.

SO ORDERED.

Dated: _____, 2010
        New York, New York

                                        _____
                                        Honorable Robert E. Gerber
                                        United States Bankruptcy Judge

4

# Exhibit 2

## Protective Order

**THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | ) | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CHEMTURA CORPORATION, *et al.*,[1] | ) | Case No. 09 11233 (REG) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

## <u>PROPOSED ORDER REGARDING CONFIDENTIALITY OF DISCOVERY</u>

Chemtura Corporation and its affiliated debtors and debtors in possession ("**Chemtura**" or the "**Debtors**") seek the disclosure of information regarding: (i) diacetyl-related claims (the "**Diacetyl Claims**") filed against the Debtors; and (ii) past settlements of claims alleging injury from exposure to diacetyl. Recognizing that this information may contain personal medical information and financial data and that the settlement information requires a higher level of protection, in order to expedite the exchange of discovery materials, to facilitate the prompt resolution of disputes over confidentiality, and to protect discovery material entitled to be kept confidential, the Court hereby **ORDERS** as follows:

1. The Debtors, the Committee of Unsecured Creditors (the "**Creditors' Committee**"), the Committee of Equity Security Holders (the "**Equity Committee**"), the Debtors' postpetition and prepetition secured lenders (the "**Lenders**"), and the holders of

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal taxpayer-identification number, are: Chemtura Corporation (3153); A&M Cleaning Products, LLC (4712); Aqua Clear Industries, LLC (1394); ASCK, Inc. (4489); ASEPSIS, Inc. (6270); BioLab Company Store, LLC (0131); BioLab Franchise Company, LLC (6709); Bio-Lab, Inc. (8754); BioLab Textile Additives, LLC (4348); CNK Chemical Realty Corporation (5340); Crompton Colors Incorporated (3341); Crompton Holding Corporation (3342); Crompton Monochem, Inc. (3574); GLCC Laurel, LLC (5687); Great Lakes Chemical Corporation (5035); Great Lakes Chemical Global, Inc. (4486); GT Seed Treatment, Inc. (5292); HomeCare Labs, Inc. (5038); ISCI, Inc. (7696); Kem Manufacturing Corporation (0603); Laurel Industries Holdings, Inc. (3635); Monochem, Inc. (5612); Naugatuck Treatment Company (2035); Recreational Water Products, Inc. (8754); Uniroyal Chemical Company Limited (Delaware) (9910); Weber City Road LLC (4381); and WRL of Indiana, Inc. (9136).

diacetyl-related claims (the "**Claimants**") are parties (collectively, the "**Parties**") to a proceeding to estimate the value of certain diacetyl-related claims (the "**Estimation Hearing**").

2.      In connection with the Estimation Hearing, the Parties have sought or may seek certain discovery from one another, and from third parties (the "**Non-Parties**"), including through service of document requests, interrogatories, depositions, subpoenas, and otherwise as provided by the Federal Rules of Civil Procedure, the Federal Rules of Bankruptcy Procedure, and the Local Rules of this Court (the "**Discovery Requests**").

3.      This Order applies to all information, documents and things subject to discovery in this action produced either by a Party or a Non-Party (each a "**Producing Person**") in response to or in connection with any discovery conducted related to the Estimation Hearing, including without limitation, deposition testimony (whether based upon oral examination or written questions), answers to interrogatories, requests for admission, responses to requests for admission, documents and things produced (including documents and things produced to the receiving Party for inspection and documents and things provided to the receiving Party, whether in the form of originals or copies) as well as any and all copies, abstracts, digests, notes, summaries, and excerpts thereof (collectively referred to as the "**Discovery Material**").

## A.    Confidential Discovery Material

4.      A Producing Person may designate Discovery Material as "Confidential" if such Producing Person believes in good faith that such Discovery Material constitutes or includes information that has not been made public and that the Producing Person would not make public in the ordinary course of its activities, including but not limited to technical, business, financial, personal or other information, including information that is protected by PL 104-191, the Health Insurance Portability and Accountability Act (the "**Confidential Material**").

5.     Any Confidential Material may be designated by the Producing Person as such by marking the first page with the word "Confidential."

6.     Confidential Material and the substantive information contained within shall be given, shown, made available to or communicated only to the following:

  (a)     the Parties and their professionals;

  (b)     testifying and consulting experts retained by the Parties (the "**Expert**s");

  (c)     any person who is identified as a witness at a deposition or hearing in connection with the Estimation Hearing (a "**Witness**"), provided that such Witness may not maintain any Confidential Material in his or her possession;

  (d)     the Court, its officers, and clerical staff;

  (e)     outside photocopying, graphic production services, or litigation support services;

  (f)     court reporters, stenographers, or videographers who record deposition or other testimony in the litigation; and

  (g)     any other person or entity to whom the Producing Person may consent in writing.

7.     Before any Expert is given access to Confidential Material or Confidential Settlement Material (as defined below), such person shall be given a copy of this Order and sign the acknowledgement attached hereto as Exhibit A, acknowledging that he or she read the Order and agrees to be bound by the terms thereof.

8.     The Parties shall attempt in good faith to maintain the confidentiality of Confidential Material by filing the same under seal, pursuant to the applicable rules and procedures of the United States Bankruptcy Court for the Southern District of New York, the United States District Court for the Southern District of New York, and the United States Court of Appeals for the Second Circuit.

9. To the extent that any Party wishes to use Confidential Material at a court hearing in the above-captioned proceedings, the Party who intends to use such Confidential Material shall provide the Producing Person with sufficient advance notice to afford the producer a reasonable opportunity to object to the use of such information. For purposes of using such documents or information at trial, the inclusion of a document containing Confidential Material on a Party's pre-trial exhibit list shall satisfy this notice requirement.

10. In the case of depositions, if counsel for a Party believes that a portion or all of the testimony given at a deposition constitutes Confidential Material of such Party or Non-Party, counsel shall so state on the record and shall request that the entire transcript or the relevant portion of testimony be sealed. In addition, any Party may designate the transcript or videotape of a deposition as Confidential within seven (7) calendar days of the Party's receipt of the transcript from the court reporter. Such designation and notice shall be made in writing to the court reporter, with copies to all other counsel, identifying the portion(s) of the transcript that constitute items designated as Confidential Material.

11. If any receiving Party objects to the designation of any Discovery Material as "Confidential," the receiving Party shall first raise the objection with the Party responsible for such designation, and seek to confer in good faith by telephone or in person to attempt to resolve any dispute respecting the terms or operation of this Order. If such dispute cannot be resolved within seven (7) calendar days, the objecting Party may then move the Bankruptcy Court for appropriate relief.

### B. Designation of Discovery Material As Attorneys' Eyes Only

12. A Producing Person may designate Discovery Material as "CHEMTURA BANKRUPTCY ACTION ATTORNEYS' EYES ONLY" if such Producing Person believes in

good faith that such Discovery Material discloses the material terms of individual settlement agreements relating to settlements of personal injury claims involving exposure to diacetyl and/or acetoin ("**Confidential Settlement Information**").

13.     The Producing Person shall redact from the Confidential Settlement Information the names and identifying information of the settling parties.

14.     The Confidential Settlement Information and any documents containing the Confidential Settlement Information shall be identified and labeled "CHEMTURA BANKRUPTCY ACTION ATTORNEYS' EYES ONLY" in addition to being deemed "CONFIDENTIAL" pursuant to the above provisions.

15.     Confidential Settlement Information and documents designated as "CHEMTURA BANKRUPTCY ACTION ATTORNEYS' EYES ONLY" shall be disclosed only to the persons identified below, shall be used only in strict accordance with this Order, and shall only be used for prosecuting or defending this bankruptcy action:

(a)     professionals representing Chemtura in these chapter 11 proceedings;

(b)     professionals representing the Creditors' Committee, the Equity Committee, and the Lenders;

(c)     professionals representing the Claimants in these chapter 11 proceedings;

(d)     the Experts; and

(e)     the Court, its officers, and clerical staff.

The above-identified professionals shall represent to the Producing Person that the professionals at their respective firms with access to the Confirmation Settlement Information are not presently involved in any litigation concerning diacetyl and/or acetoin.

16.     Confidential Settlement Information and documents designated "CHEMTURA BANKRUPTCY ACTION ATTORNEYS' EYES ONLY" shall NOT be shown to, produced, or

used in any way that would allow it to become known to persons not identified in paragraph 15 above, any other parties in this bankruptcy action, or any counsel representing the Claimants, Chemtura, or any other defendant in the underlying tort or indemnification and contribution litigation, any non-parties, or the general public.

17. If Confidential Settlement Information and/or documents designated "CHEMTURA BANKRUPTCY ACTION ATTORNEYS' EYES ONLY" are filed with the Court, the sealed envelope or other sealed container shall also contain a statement in substantially the following form:

CHEMTURA BANKRUPTCY ACTION ATTORNEYS' EYES ONLY
**HIGHLY CONFIDENTIAL**
SUBJECT TO ATTORNEYS' EYES ONLY PROTECTIVE ORDER
ENTERED [DATE OF ENTRY] IN NO. 09-11233
UNITED STATES BANKRUPTCY COURT- S.D.N.Y.

18. Any service copies of documents filed pursuant to paragraphs 8 and 17 above shall have all Confidential Material and Confidential Settlement Information redacted from the document prior to service.

19. No reference shall be made to any Confidential Settlement Information and documents designated as "CHEMTURA BANKRUPTCY ACTION ATTORNEYS' EYES ONLY" in open court by any party or witness in this bankruptcy action. To the extent that any Confidential Settlement Information or documents marked as "CHEMTURA BANKRUPTCY ACTION ATTORNEYS' EYES ONLY" must be discussed at the Estimation Hearing, the Party wishing to introduce such evidence shall inform the Court and the Court, at its discretion, may hear such discussions *in camera* in the presence of only Court staff and those persons identified in paragraph 15. However, nothing in this Order shall prevent the Debtors, the Creditors' Committee, the Equity Committee, the Lenders, or the Claimants from publicly disclosing aggregate values or estimates of the Debtors' potential liability for the Diacetyl Claims,

including in or in connection with a Disclosure Statement, Plan of Reorganization, or related documents.

### C. Additional Provisions Regarding The Use Of Confidential Material And Confidential Settlement Material

20. The Confidential Material and Confidential Settlement Information may only be used in connection with the Estimation Hearing and for no other purpose.

21. The limitations on disclosure contained in this Order shall not apply to documents or information that (i) were already in the possession of the receiving Party, without an obligation of confidentiality to another person, including a Party, prior to their disclosure in this case; (ii) are received on a non-confidential basis from a person that does not owe an obligation of confidentiality to any other person, including a Party, with respect thereto; or (iii) are published or become publicly available in a manner that is not in violation of this Order or of any obligation of confidentiality to any other person, including a Party.

22. This Order, and the narrowly limited attorneys'-eyes-only use of Confidential Settlement Information and/or documents designated as "CHEMTURA BANKRUPTCY ACTION ATTORNEYS' EYES ONLY" for the purpose described herein, shall not be deemed any waiver of the confidentiality provisions contained in the Diacetyl Claimants' and underlying tort defendants' settlement agreements.

23. Within 60 days of the conclusion of all proceedings, and any appeal, in connection with the plan confirmation, all Confidential Material, Confidential Settlement Information, and documents designated as "CHEMTURA BANKRUPTCY ACTION ATTORNEYS' EYES ONLY" shall be returned to counsel for the respective Producing Parties, or destroyed. If a person in possession of Confidential Material, Confidential Settlement Information, and documents designated as "CHEMTURA BANKRUPTCY ACTION

ATTORNEYS' EYES ONLY" chooses to destroy documents after the conclusion of these proceedings, that person shall certify such destruction in writing to counsel for the Producing Person, International Flavors & Fragrances, Inc., Bush Boake Allen, Inc., Polarome International, Inc., Givaudan Flavors Corporation, Berje Incorporated, and Firmenich Incorporated. Notwithstanding anything in this paragraph, to the extent that the information in the Confidential Material, Confidential Settlement Information, and documents designated as "CHEMTURA BANKRUPTCY ACTION ATTORNEYS' EYES ONLY" remains confidential, the terms of this Order shall remain binding.

24.     This Order applies to all Non-Parties that are served with subpoenas in connection with the Motion or who otherwise produce documents or are noticed for deposition in connection with the Motion, and all such Non-Parties are entitled to the protection afforded hereby upon signing a copy of this Order and agreeing to be bound by its terms.

25.     Any person or Party subject to this Order that may be subject to a motion or other form of legal process seeking the disclosure of another Party's or Non-Party's information designated under one of the categories of confidentiality pursuant to this Order:  (i) shall promptly notify that Party or Non-Party so that it may have an opportunity to appear and be heard on whether that information should be disclosed, and (ii) shall not provide such materials unless required by law or with the consent of the Producing Person.

26.     If information subject to a claim of attorney-client privilege, work product immunity, or other privilege is inadvertently or mistakenly produced, such production will in no way prejudice or otherwise constitute a waiver of, or estoppel as to, any claim of privilege or work-product immunity for such information.

27.     This Order shall remain in effect after the conclusion of this case and this Court shall retain concurrent jurisdiction to enforce the terms of this protective order.

**SO ORDERED:**

_____     _____
HONORABLE ROBERT E. GERBER          DATE
UNITED STATES BANKRUPTCY JUDGE,
SOUTHERN DISTRICT OF NEW YORK

<u>EXHIBIT A</u>

**Undertaking To Be Bound By Protective Order**

I, _____, have been retained on behalf of _____, with respect to the estimation and/or resolution of all diacetyl-related actions and/or claims against Chemtura in the chapter 11 cases captioned as *In re Chemtura Corporation*, Case No. 09-11233 (REG) (Jointly Administered), currently pending in the United States Bankruptcy Court for the Southern District of New York (the "**Chapter 11 Cases**"). I have reviewed the terms of the Protective Order (the "**Order**"); I have been advised of the requirements contained therein for, *inter alia*, maintaining the confidentiality of Confidential Material and/or Confidential Settlement Information; and I agree without reservation to abide by all of the Order's terms and requirements.

_____

[INSERT SIGNATURE]