**Hearing Date and Time: June 17, 2010 at 9:45 a.m. (prevailing Eastern time)**
**Response Deadline: June 10, 2010 at 4:00 p.m. (prevailing Eastern time)**

Richard M. Cieri
M. Natasha Labovitz
Craig A. Bruens
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022-4611
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

David J. Zott, P.C.
Brian T. Stansbury
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

Counsel to the Debtors and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| | ) Case No. 09-11233 (REG) |
| CHEMTURA CORPORATION, *et al.*,[1] | ) |
| | ) Jointly Administered |
| Debtors. | ) |
| | ) |

**MEMORANDUM OF LAW IN SUPPORT OF THE DEBTORS'**
**OBJECTIONS TO CERTAIN CREDITORS' PROOFS OF CLAIM**
**PURSUANT TO SECTION 502(E)(1)(B) OF THE BANKRUPTCY CODE**

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal taxpayer-identification number, are: Chemtura Corporation (3153); A&M Cleaning Products, LLC (4712); Aqua Clear Industries, LLC (1394); ASCK, Inc. (4489); ASEPSIS, Inc. (6270); BioLab Company Store, LLC (0131); BioLab Franchise Company, LLC (6709); Bio-Lab, Inc. (8754); BioLab Textile Additives, LLC (4348); CNK Chemical Realty Corporation (5340); Crompton Colors Incorporated (3341); Crompton Holding Corporation (3342); Crompton Monochem, Inc. (3574); GLCC Laurel, LLC (5687); Great Lakes Chemical Corporation (5035); Great Lakes Chemical Global, Inc. (4486); GT Seed Treatment, Inc. (5292); HomeCare Labs, Inc. (5038); ISCI, Inc. (7696); Kem Manufacturing Corporation (0603); Laurel Industries Holdings, Inc. (3635); Monochem, Inc. (5612); Naugatuck Treatment Company (2035); Recreational Water Products, Inc. (8754); Uniroyal Chemical Company Limited (Delaware) (9910); Weber City Road LLC (4381); and WRL of Indiana, Inc. (9136).

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................1

JURISDICTION ...................................................................................................................2

BACKGROUND ...................................................................................................................2

ARGUMENT .......................................................................................................................7

    I.     The Contribution Claims Should Be Disallowed Under Section
        502(e)(1)(B) ...........................................................................................................7

        A.     Element No. 1 – Claim For Reimbursement Or Contribution. ...................8

              (1)    Claims Under Sections 107 or 113 of CERCLA Meet the
                    "Reimbursement or Contribution" Element of 502(e)(1)(B)...........9

              (2)    Section 502(e)(1)(B) Also Applies Outside of CERCLA
                    Where the Private Party Claim Seeks Reimbursement or
                    Contribution of Contingent Liabilities...........................................11

              (3)    Actions for Contractual Indemnification of Contingent
                    Liabilities Also Meet the "Contribution or Reimbursement"
                    Element of Section 502(e)(1)(B). ..................................................13

        B.     Element No. 2 – Claimant Is Liable With The Debtor On The
               Primary Claim. .............................................................................................13

        C.     Element No. 3 – Claim Is Contingent. .....................................................16

    II.    Objections To Specific Claims Based On Section 502(e)(1)(B) ..........................18

        A.     CERCLA Orders. ........................................................................................18

        B.     PRP Groups Co-Liable to Government. ....................................................19

        C.     Individual Claimants Co-Liable to PRP Groups, and Contractual
               Indemnification. ..........................................................................................19

CONCLUSION.....................................................................................................................20

# TABLE OF AUTHORITIES

## Cases

*Aetna Cas. & Sur. Co. v. Ga. Tubing Corp. (In re Georgia Tubing Corp.)*,
  No. 93-3659, 1995 WL 429018 (S.D.N.Y. July 20, 1995),
  *aff'd*, 93 F.3d 56 (2d Cir. 1996) ........................................................................................ 7, 8, 12

*Al Tech Specialty Steel Corp. v. Allegheny Int'l, Inc. (In re Allegheny Int'l, Inc.)*,
  126 B.R. 919 (W.D. Pa.),
  *aff'd*, 950 F.2d 721 (3d Cir. 1991) .......................................................................................... 11

*Cooper Indus., Inc. v. Avial Servs. Inc.*,
  543 U.S. 157 (2004) ..................................................................................................................... 9

*Fine Organics Corp. v. Hexcel Corp. (In re Hexcel Corp.)*,
  174 B.R. 807 (Bankr. N.D. Cal. 1994) ........................................................................... 11, 13, 14

*Highland Holdings and Zito I, L.P. v. Century/ML Cable Venture*,
  06 Civ.181 (GBD),
  2007 WL 2405689 (S.D.N.Y. Aug. 24, 2007) ........................................................................... 16

*In re Alper Holdings, USA*,
  No. 07-12148 (BRL),
  2008 WL 4186333 (Bankr. S.D.N.Y. Sept. 10, 2008) ..................................................... 8, 13, 16

*In re APCO Liquidating Trust*,
  370 B.R. 625 (Bankr. D. Del. 2007) .................................................................................... 9, 16

*In re Baldwin-United Corp.*,
  55 B.R. 885 (Bankr. S.D. Ohio 1985) ....................................................................................... 16

*In re Cottonwood Canyon Land Co.*,
  146 B.R. 992 (D. Colo. 1992) ............................................................................................ 10, 11

*In re Drexel Burnham Lambert Group, Inc. ("Drexel II")*,
  148 B.R. 982 (Bankr. S.D.N.Y. 1992) ..................................................................... 8, 13, 16

*In re Eagle-Picher Indus., Inc.*,
  164 B.R. 265 (S.D. Ohio 1994) ........................................................................................ 9, 10

*In re Eagle-Picher Indus., Inc.*,
  197 B.R. 260 (Bankr. S.D. Ohio 1996) ....................................................................................... 9

*In re GCO Servs., LLC*,
  324 B.R. 459 (Bankr. S.D.N.Y. 2005) ............................................................. 7, 8, 13, 15, 16

*In re Pacor, Inc.*,
   110 B.R. 686 (E.D. Pa. 1990)..................................................................15

*In re Pettibone Corp.*,
   162 B.R. 791 (Bankr. N.D. Ill. 1994)........................................................15

*In re Regal Cinemas, Inc.*,
   393 F.3d 647 (6th Cir. 2004)....................................................................16

*In re Wedtech Corp.*,
   85 B.R. 285 (Bankr. S.D.N.Y. 1988) ...........................................7, 13, 15

*Juniper Dev. Group v. Kahn (In re Hemingway Transport, Inc.)*,
   993 F.2d 915 (1st Cir. 1993) .........................................................8, 13, 14

*Mazzeo v. United States (In re Mazzeo)*,
   131 F.3d 295 (2d Cir. 1997)......................................................................16

*New York v. Shore Realty Corp.*,
   759 F.2d 1032 (2d Cir. 1985) .....................................................................4

*Norpak v. Eagle-Picher Ind., Inc.*
   *(In re Eagle-Picher Indus., Inc.)*,
   131 F.3d 1185 (6th Cir. 1997)......................................................13, 14, 15

*Olin Corp. v. Riverwood Int'l Corp. (In re Manville Forest Prods. Corp.)*,
   209 F.3d 125 (2d Cir. 2000).......................................................................17

*Pearl-Phil GMT (Far East) Ltd. v. Caldor Corp.*,
   266 B.R. 575 (S.D.N.Y. 2001)...................................................................16

*Syntex Corp. v. Charter Co. et al. (In re Charter Co.)*,
   862 F.2d 1500 (11th Cir. 1989)...............................................................7, 8

*United States v. Atlantic Research*,
   551 U.S. 128 (2007)..............................................................................5, 9

*United States v. LTV Corp. (In re Chateaugay Corp.)*,
   944 F.2d 997 (2d Cir. 1991).......................................................................17

**Statutes**

11 U.S.C. § 502(e)(1)(B) ......................................1, 8, 9, 10, 11, 12, 13, 14, 15, 16, 18, 22, 23, 24

28 U.S.C. § 1334............................................................................................2

28 U.S.C. § 1408............................................................................................2

iii

28 U.S.C. § 157(b) ................................................................................................ 2

28 U.S.C. §1409 .................................................................................................... 2

42 U.S.C. §  9604(a)(1) ......................................................................................... 5

42 U.S.C. § 9601 ................................................................................................... 3

42 U.S.C. § 9604 ................................................................................................... 4

42 U.S.C. § 9606(a) .............................................................................................. 5

42 U.S.C. § 9607(a) .............................................................................................. 4

42 U.S.C. § 9613 ................................................................................................. 10

42 U.S.C. § 9613(f) ........................................................................................... 4, 5

42 U.S.C. § 9613(f)(1) .......................................................................................... 5

42 U.S.C. § 9613(f)(3)(B) ..................................................................................... 5

42 U.S.C. § 9613(g)(2) .......................................................................................... 5

42 U.S.C. § 9622 ................................................................................................... 5

42 U.S.C. § 9622(e) ............................................................................................... 6

CERCLA § 104 ...................................................................................................... 4

CERCLA § 104(a)(1) ............................................................................................. 5

CERCLA § 106(a) ................................................................................................. 5

CERCLA § 107 ........................................................................................... 4, 10, 12

CERCLA § 107(a) ............................................................................................ 4, 22

CERCLA § 113 ......................................................................................... 10, 11, 12, 13

CERCLA § 113(f)(1) ................................................................................... 5, 11, 12, 22

CERCLA § 113(f)(3)(B) ............................................................................... 5, 22

CERCLA § 113(g)(2) ............................................................................................. 5

CERCLA § 122 ...................................................................................................... 5

CERCLA § 122(e) .................................................................................................. 6

iv

CERCLA §106.................................................................................................................... 4

N.J.S.A. 58:10-23.11(a)(2) ............................................................................................... 22

## Other Authorities

H.R. Rep. 1016, 96th Cong., reprinted in 1980 U.S. Code Cong. & Admin. News 6119.............. 4

H.R. Rep. No. 95- 595, 95th Cong., 1st Sess. 354 (1977) ............................................................. 7

USEPA,
  Memorandum on Transmittal of Notice Letter Guidance (Oct. 19, 1987) ................................. 5

## <u>INTRODUCTION</u>

Chemtura Corporation and its affiliated debtors and debtors in possession (collectively, the "**Debtors**") file this Memorandum of Law in support of their section 502(e)(1)(B) objections to the proofs of claim filed by numerous private parties asserting contingent unsecured claims for contribution or reimbursement for future environmental remediation costs and expenses (collectively, the "**Contribution Claims**"), which costs and expenses are also asserted in the proofs of claim filed by the United States Environmental Protection Agency ("**EPA**") and other federal and state environmental agencies in these chapter 11 cases.  The Contribution Claims are therefore duplicative of the proofs of claim filed by the federal and state agencies, and pursuant to the Bankruptcy Code should be disallowed, as set forth below.

The Contribution Claims should be disallowed under section 502(e)(1)(B) of the Bankruptcy Code because they meet the three criteria for disallowance under that statute:

(1)   the claims are for reimbursement or contribution,

(2)   the private party creditors are co-liable with one or more of the Debtors to a federal or state environmental agency (or in some cases to another non-governmental creditor), and

(3)   the claims are contingent.

Disallowance of the Contribution Claims is essential for two reasons.  First, the limited assets of the bankruptcy estates in these cases should not be exhausted by double-dipping payments to both environmental agencies and to private claimants.  Second, expeditious resolution of this issue should facilitate timely approval of a plan of reorganization.  The Debtors believe that resolution of these section 502(e)(1)(B) objections in accordance with the relief requested will fully or partially dispose of 55 claims asserting hundreds of millions of dollars of

1

alleged liability, which would be extremely valuable in structuring a plan of reorganization and obtaining approval of the plan.

The Contribution Claims that are the subject of this Memorandum are listed in <u>Exhibit 1</u>. The Debtors have also attached, as <u>Exhibit 2</u>, a table, organized by site, which matches the Contribution Claims with the corresponding claim by the EPA or state environmental agency. The Debtors have separately filed an Appendix to this Memorandum with claim-specific discussions identifying the reasons that each Contribution Claim should be disallowed. This Memorandum addresses the legal basis for the disallowance of each Contribution Claim, which is common for all such claims.

Each of the claims subject to this objection was filed by the October 30, 2009 bar date in these cases.

In support of this Memorandum, the Debtors state as follows:

## JURISDICTION

1.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

2.      The Debtors consist of several long-standing global specialty chemical companies. An inevitable consequence of this structure and history is that numerous claims have been filed by governmental and private creditors in these chapter 11 cases asserting liabilities for environmental cleanups, many pursuant to the federal Comprehensive Environmental Response, Compensation, and Liability Act ("**CERCLA,**" the "**Superfund Law**"), 42 U.S.C. §§ 9601 *et seq.* or related state laws. Approximately 235 claims for environmental liability have been filed,

2

alleging billions of dollars in potential environmental liability. Some of these claims are duplicative or otherwise may be disallowed on grounds not stated in this Memorandum.[2] The Objections and this Memorandum are directed at contingent environmental claims asserted by parties that are co-liable with a Debtor on debts allegedly owed to another primary creditor (in most cases government agencies). Based on the Contribution Claims themselves, the Debtors seek disallowance of claims asserting hundreds of millions of dollars of environmental liability.

3.      A significant portion of the Debtors' environmental liability exposure arises under CERCLA or related or similar state laws. CERCLA imposes liability for environmental cleanup costs, natural resource damages and certain other categories of recovery on four types of potentially responsible parties ("**PRPs**"):

(a)      the current "owner or operator" of a site contaminated with hazardous substances (present owner/operator liability);

(b)      any person who previously owned or operated a contaminated site (past owner/operator liability);

(c)      any person who arranged for disposal of any hazardous substances at a contaminated site (generator liability); and

(d)      any person who transported any hazardous substances to a contaminated site (transporter liability).

See CERCLA § 107(a), 42 U.S.C. § 9607(a). PRPs can be liable to federal or state governmental entities, as well as to private parties for cost recovery and contribution claims. Id. §§ 9607(a), 9613(f).

---

[2]      By filing the Objections and this Memorandum, the Debtors do not waive, and hereby expressly preserve, their rights to supplement or amend the Objections, or to file further objections to the claims that are the subject of these Objections on any other grounds, including the grounds that the claim was filed against a Debtor entity that is not liable to claimant. Further, the Debtors do not waive the right to file objections to other claims not subject to the Objections on any grounds, including those set forth in the Objections.

4.      Congress enacted CERCLA to address the consequences of uncontrolled and unregulated historic hazardous waste disposal practices.  Consequently, the statute creates a cleanup and liability regime for historic conduct dating back decades or even longer.  *See, e.g.*, *New York v. Shore Realty Corp.*, 759 F.2d 1032, 1040 (2d Cir. 1985) (CERCLA applies "primarily to the cleanup of leaking inactive or abandoned sites and to emergency responses to spills.") (internal quotation omitted); H.R. Rep. 1016, 96th Cong., 2nd Sess., pt. 1, at 22, reprinted in 1980 U.S. Code Cong. & Admin. News 6119, 6125 (Legislative history indicating that the purpose of CERCLA was to "initiate and establish a comprehensive response and financing mechanism to abate and control the vast problems associated with abandoned and inactive hazardous waste disposal sites.")

5.      Under CERCLA, the EPA can issue an administrative order directing a PRP or group of PRPs to take appropriate actions; EPA can request the Department of Justice to institute a civil action to obtain a judicial order against the PRP(s); and EPA can arrange to take cleanup actions itself, drawing on monies from the federal Superfund, and can sue the liable PRP or PRPs for reimbursement of its cleanup costs.  CERCLA §§ 104, 106, 107, 42 U.S.C. §§ 9604, 9606, 9607.  CERCLA also permits private parties (both PRPs and so-called "innocent" parties) to voluntarily take cleanup actions.  CERCLA §§ 106(a), 104(a)(1), 42 U.S.C. §§ 9606(a), 9604(a)(1), 9606.[3]

6.      CERCLA, and EPA implementing regulations and policies, contain extensive mechanisms designed to encourage PRPs to settle their liability through judicial consent decrees, administrative settlements issued by EPA, and similar mechanisms.  *See generally*, CERCLA

---

[3]    A complex process is followed to investigate physical conditions at a contaminated site, characterize the risks to humans, and develop and implement a cleanup plan.  A civil action for recovery of removal costs can be commenced "after completion of the removal action" and for remedial costs "after initiation of physical on-site construction of the remedial action . . . ."  *Id.* at § 113(g)(2); 42 U.S.C. § 9613(g)(2).

4

§ 122, 42 U.S.C. § 9622; Interim CERCLA Settlement Policy (Dec. 5, 1984). CERCLA expressly authorizes parties that have settled their liability to the government to sue other parties for contribution, and provides such settling parties with contribution protection. *Id.* § 9613(f).

7.      PRPs that fund response actions can seek CERCLA section 113(f) contribution from other PRPs "during or following any civil action" that had been instituted under CERCLA sections 106 or 107 (*see* CERCLA § 113(f)(1)), as well as PRPs that settle their liability to EPA or a state in an administrative or judicially approved settlement (*see* CERCLA § 113(f)(3)(B)). 42 U.S.C. §§ 9613(f)(1), 9613(f)(3)(B). Based on a recent Supreme Court opinion, PRPs also have a direct right of action under Section 107(a) for cleanup costs even when there is not a corresponding suit filed by the EPA or a state. *United States v. Atlantic Research*, 551 U.S. 128, 132 (2007).

8.      Following site discovery, EPA initiates a preliminary search for PRPs. For the short term, EPA may order PRPs to conduct a removal action. EPA may send General Notice Letters to PRPs notifying them of their status as PRPs, the status of site investigations, and as appropriate, may request information about the site. *See* USEPA, Memorandum on Transmittal of Notice Letter Guidance (Oct. 19, 1987) and attached Interim Guidance on Notice Letters, Negotiations, and Information Exchange. Pursuant to CERCLA section 122(e), 42 U.S.C. § 9622(e), EPA may also distribute Special Notice Letters to PRPs to facilitate settlement negotiations with PRPs by providing to them factual information to assess the extent of their and other PRPs' liabilities and to impose an enforcement moratorium.

9.      When EPA identifies multiple PRPs, the practical effect is often that most, but not necessarily all, of the PRPs form "PRP Groups" to negotiate with EPA for the form and cost of a remedial action and to enter an administrative settlement. PRP Groups may assess their

members over time for costs incurred and paid out either to private contractors that are performing the remediation, or to EPA. PRPs that do not join such groups will have conflicting interests and may eventually be sued by the PRP Groups for cost reimbursement and contribution. Iyer Declaration at ¶ 8 (attached as <u>Exhibit 3</u>).

10.    The Debtors over the years have been active settling members at scores of CERCLA sites around the United States. However, as a result of these chapter 11 cases, the Debtors have stopped paying into and otherwise participating in PRP Groups for sites that they do not own or lease. As a consequence, PRPs and PRP Groups have filed CERCLA cost reimbursement and Contribution Claims against the Debtors for the same cleanup liability for which EPA and state environmental agencies have filed claims. Iyer Declaration at ¶ 9. <u>Exhibit 2</u> lists, alphabetically by site, the primary EPA or state environmental agency claim and the corresponding Contribution Claims.

11.    The Debtors are actively engaged in negotiations with the United States government and state governments in an effort to settle all environmental claims asserted on behalf of EPA and state environmental agencies. The Debtors intend to attempt to resolve — either consensually or through claims objection and, if necessary, estimation proceedings before this Court — the EPA's claim and the various state claims in advance of confirmation of a plan of reorganization. The Debtors believe that it is important to resolve both the governmental claims and the section 502(e)(1)(B) objection relating to the 55 Contribution Claims that are subject to the Objections in the near term, in order to avoid potential delays in confirming or consummating a plan or making distributions pursuant to that plan.

## ARGUMENT

I.      **The Contribution Claims Should Be Disallowed Under Section 502(e)(1)(B)**

Section 502(e)(1)(B) of the Bankruptcy Code provides:

> [T]he court shall disallow any claim for reimbursement or contribution of an entity that is liable with the debtor on or has secured the claim of a creditor, to the extent that –
>
> (B) such claim for reimbursement or contribution is contingent as of the time of allowance or disallowance of such claim for reimbursement or contribution . . . .

11 U.S.C. § 502(e)(1)(B).  Congress enacted this provision for two principal reasons.  *Aetna Cas. & Sur. Co. v. Ga. Tubing Corp. (In re Georgia Tubing Corp.)*, No. 93-3659, 1995 WL 429018 (S.D.N.Y. July 20, 1995), *aff'd*, 93 F.3d 56 (2d Cir. 1996).  First, Congress sought to prevent competition between a primary and a secondary creditor for the "limited proceeds in the estate." *In re Wedtech Corp.*, 85 B.R. 285, 289 n.4 (Bankr. S.D.N.Y. 1988) (*quoting* H.R. Rep. No. 95 595, 95th Cong., 1st Sess. 354 (1977)).  Second, Congress sought "to prevent contingent, unresolved indemnification or contribution claims from delaying the consummation of a plan of reorganization or a final distribution in a liquidating case." *In re GCO Servs., LLC*, 324 B.R. 459, 466-67 (Bankr. S.D.N.Y. 2005); *accord Syntex Corp. v. Charter Co. et al. (In re Charter Co.)*, 862 F.2d 1500, 1502 (11th Cir. 1989) ("debtor should be expeditiously rehabilitated and reorganized").  Without these protections, debtors such as the Debtors in these cases would not be able to conserve the assets required to reorganize or emerge expeditiously from bankruptcy protection, without having to create massive reserves for contingent claims that may take years to resolve in litigation.  This problem is especially acute in multi-party environmental disputes where private claimants assert claims for the same cleanup liabilities that governmental agencies

assert, and where layer upon layer of contingency is created by uncertainties of what cleanup remedies will be required of whom, to what extent, on what timetable, and for how long.

12.     Courts have recognized that another benefit of section 502(e)(1)(B) is that the threat of disallowing contingent private claims for environmental remediation costs furthers the purposes of CERCLA by providing an incentive for parties to conduct prompt cleanups.  A private claimant has an incentive to incur cleanup expenses (thus removing the "contingent" feature of its claim) and thereby avoid disallowance of its claim before the bankruptcy proceedings progress to the allowance / disallowance stage.  *See In re Charter Corp.*, 862 F.2d at 1503; *see also Juniper Dev. Group v. Kahn (In re Hemingway Transport, Inc.)*, 993 F.2d 915, 927 (1st Cir. 1993) (section 502(e)(1)(B) threat of disallowance encourages "targeted PRPs to initiate cleanup efforts as expeditiously as practicable in the expectation that their contingent claims may become 'fixed' in time for allowance against the debtor estate").

13.     Courts have applied a three-part test to determine disallowance under section 502(e)(1)(B):  (1) "the claim must be for reimbursement or contribution;" (2) "the party asserting the claim must be 'liable with the debtor' on the claim;" and (3) "the claim must be contingent at the time of its allowance or disallowance."  *In re Alper Holdings, USA*, No. 07-12148 (BRL), 2008 WL 4186333, at *5 (Bankr. S.D.N.Y. Sept. 10, 2008) (quoting *In re GCO Servs., LLC.*, 324 B.R. at 465 and *In re Drexel Burnham Lambert Group, Inc. ("Drexel II")*, 148 B.R. 982, 985 (Bankr. S.D.N.Y. 1992)).  The Debtors address each of these three elements in greater detail below.

**A.     Element No. 1 – Claim For Reimbursement Or Contribution.**

14.     "Reimbursement or contribution" is a broad term intended to sweep in any contingently duplicative claim that would result in double payment by the bankruptcy estate if

the claim is not disallowed. *See In re Georgia Tubing Corp.*, 1995 WL 429018, at \*3. ("Regardless of what Aetna chooses to call its claim, Aetna's claim clearly falls within the ambit of § 502(e)(1)(B).").

> **(1)     Claims Under Sections 107 or 113 of CERCLA Meet the
> "Reimbursement or Contribution" Element of 502(e)(1)(B).**

15.     CERCLA claims for statutory cost reimbursement or contribution brought by PRPs that are or were themselves subject to CERCLA civil actions for remediation cost recovery, or that have entered judicial or administrative settlements either for cost recovery or agreeing to perform response actions, meet the reimbursement or contribution element of section 502(e)(1)(B). This is the case irrespective of whether those claims are styled as "cost recovery" claims under Section 107 or "contribution" claims under CERCLA section 113. 42 U.S.C. §§ 9607, 9613. *See, e.g.*, *In re Eagle-Picher Indus., Inc.*, 164 B.R. 265 (S.D. Ohio 1994) (holding that CERCLA section 113 contribution claims satisfied the reimbursement or contribution element of section 502(e)(1)(B)); *In re Eagle-Picher Indus., Inc.*, 197 B.R. 260, 274-75 (Bankr. S.D. Ohio 1996) (holding that contingent private party claims under Section 107 of CERCLA are in essence contribution claims and disallowed). Claims for future cost recovery for claimants' liabilities under consent decrees cannot be styled as CERCLA section 107 claims in order to avoid identifying them as contribution claims subject to disallowance under section 502(e)(1)(B). *Id.*; *cf. In re APCO Liquidating Trust*, 370 B.R. 625 (Bankr. D. Del. 2007) (claim for payment on judgment that had been entered on CERCLA section 113 contribution action meets "contribution" element for section 502(e)(1)(B), despite recent Supreme Court ruling barring section 113 actions by PRPs that had not themselves been sued by EPA).

16.     Although not directly implicated in these section 502(e)(1)(B) claims objections, the Debtors note that there have been developments at the Supreme Court level concerning

differences between CERCLA section 107 actions for cost recovery and CERCLA section 113(f)(1) contribution actions for cost recovery. *See United States v. Atlantic Research*, 551 U.S. 128, 132 (2007); *Cooper Indus., Inc. v. Avial Servs. Inc.*, 543 U.S. 157, 161 (2004). Combined, these rulings provide that a CERCLA PRP that has remediated a site and has not itself been subject to a civil action for CERCLA cost recovery (i.e., a "voluntary" cleanup by a PRP to avoid anticipated government or private civil action) cannot bring a CERCLA section 113(f)(1) contribution action against another PRP, but can bring a CERCLA section 107 action against another PRP for cost recovery. This distinction is important outside of the context of section 502(e)(1)(B) of the Bankruptcy Code because, inter alia, different statutory statutes of limitations apply to actions under the two different sections, and CERCLA section 113 actions involve potential apportionment of liabilities while section 107 actions are for strict, joint and several liability.

17. However, the distinctions between section 107 and section 113 claims should be meaningless in the context of section 502(e)(1)(B) where duplicate claims by EPA or state agencies and a PRP exist for remediating the same site. *See In re Cottonwood Canyon Land Co.*, 146 B.R. 992, 996 (D. Colo. 1992). The claim at issue for section 502(e)(1)(B) in *Cottonwood* was asserted as a § 107 direct claim, and the claimant argued that it was not a claim for contribution. Nevertheless, the court ruled that the claim met the "reimbursement or contribution" element because the claim essentially was "to recover costs incurred by reason of [the claimant's] liability for cleanup as the 'owner' of the site, which is the same liability [the debtor] has for cleanup as the party which deposited the hazardous substances . . . ." *Id.* The reasoning in *Cottonwood* comports with the purposes of section 502(e)(1)(B), since regardless of

10

whether contribution is involved, even a voluntary cleanup is performed only because the PRP is

convinced of its liability and is seeking reimbursement from the debtor.

18.     The *Cottonwood* court, as well as one of the Eagle Picher courts, *In re Eagle-

Picher Indus., Inc.*, 164 B.R. 265, 271 (S.D. Ohio 1994), criticized as erroneous an opposite

result in *Al Tech Specialty Steel Corp. v. Allegheny Int'l, Inc.* (*In re Allegheny Int'l, Inc.*), 126

B.R. 919 (W.D. Pa.), *aff'd*, 950 F.2d 721 (3d Cir. 1991) (unpublished table decision). Allegheny

had ruled that a claim for voluntary response costs under CERCLA section 107 for costs to be

incurred by claimant Al Tech would be based on direct liability, not contribution per CERCLA

section 113, and therefore denied a section 502(e)(1)(B) objection based on a lack of co-liability.

The Allegheny debtor had argued the possibility that Al Tech might never be required to expend

any funds if EPA were subsequently to order the debtor to perform the remediation.  The court

reasoned that double liability could be avoided by paying Al Tech's claim into a remediation

trust.  The *Cottonwood* court stated that Allegheny's error was belied by the very need for a trust,

which despite the fact that it was based on CERCLA section 107 established that "the clear

character of the claim" was that "debtor was not being asked to satisfy a [direct] claim for injury

to the claimant's property" but rather that both debtor and the claimant shared the same

contingent liability to EPA.  *In re Cottonwood Canyon Co*., 146 BR at 996.

    **(2)**    **Section 502(e)(1)(B) Also Applies Outside of CERCLA Where the
Private Party Claim Seeks Reimbursement or Contribution of
Contingent Liabilities.**

19.     The first element for section 502(e)(1)(B) is met not just in the CERCLA context

as discussed above, but in any situation in which contingent liabilities under any federal or state

environmental laws expose the debtor's estate to duplicative claims.  *See Fine Organics Corp. v.

Hexcel Corp. (In re Hexcel Corp.)*, 174 B.R. 807 (Bankr. N.D. Cal. 1994) (applying section

502(e)(1)(B) to environmental claims arising under New Jersey law).  In *Hexcel*, Fine Organics purchased contaminated property in New Jersey from the future debtor, Hexcel.  New Jersey law requires that before contaminated property is transferred the seller must either remediate it or enter a binding agreement with the state to ensure that it will be remediated.  Hexcel therefore entered into an Administrative Consent Order ("**ACO**") with the State of New Jersey acknowledging its obligation to fund remediation of the property.  Fine Organics did not join in the ACO, but the asset purchase agreement between Hexcel and Fine Organics required Hexcel to perform on the ACO.  During Hexcel's bankruptcy proceedings, Fine Organics alleged that Hexcel had failed to perform its remediation obligations and sought damages.  The court agreed that no contribution claim existed because Fine Organics was not jointly liable with Hexcel for remediation under the ACO.  Nevertheless, the court held that Fine Organics' claim was for reimbursement because Fine Organics might at some future time be required to fund the remediation as the current property owner re-selling to yet another buyer, and disallowed the contingent part of Fine Organic's claim pursuant to section 502(e)(1)(B).

20.    The *Aetna* case (*supra*, page 8) is also instructive in this regard.  Aetna was surety for hazardous waste storage bonds for the future debtor, Georgia Tubing, in favor of the State of Georgia.  During the bankruptcy, Aetna filed a protective proof of claim on behalf of the State. In an attempt to side-step section 502(e)(1)(B), Aetna also filed its own proof of claim on the basis that Aetna would be subrogated to the State.  The court noted that Aetna's assertion of subrogation was a "creative" attempt to avoid the undeniable fact that Aetna was contingently liable to the State for the same obligation as was Georgia Tubing and that Aetna was in reality seeking reimbursement for a possible payment that it anticipated making to the State. *Aetna*, 1995 WL 429018, at *3 (affirming disallowance).

12

**(3)     Actions for Contractual Indemnification of Contingent Liabilities Also Meet the "Contribution or Reimbursement" Element of Section 502(e)(1)(B).**

21.     A number of the private Claims assert that they are based on contractual indemnification rights against the Debtors for environmental liabilities such as CERCLA response costs. Indemnification claims arising from agreements in contracts constitute claims for reimbursement or contribution within the meaning of section 502(e)(1)(B). *See In re Alper Holdings*, 2008 WL 4186333, at *5 (disallowing contractual indemnification claims pursuant to 502(e)(1)(B)); *see also In re Wedtech Corp*, 85 B.R. at 289; (noting that "the concept of reimbursement includes indemnity"); *In re GCO Servs., LLC*, 324 B.R. at 465 ("Because 'the concept of reimbursement includes indemnity,' any claims for indemnification also fall within the scope of the first prong of 502(e)(1)(B)"); *In re Drexel II*, 148 B.R. at 985 (section 502(e)(1)(B) "applies to claims other than contractual claims, and clearly applies to contractual claims for indemnification").

**B.     Element No. 2 – Claimant Is Liable With The Debtor On The Primary Claim.**

22.     Co-liability for purposes of section 502(e)(1)(B) exists if by paying the primary creditor, the debtor would be eliminating a contingent requirement for the secondary claimant to make the same payment.  This is a broad principle and does not require that the secondary claimant and the debtor are both subject to a common civil proceeding or agency enforcement action.  *See Fine Organics Corp. v. Hexcel Corp. (In re Hexcel Corp.)*, 174 B.R. 807 (Bankr. N.D. Cal. 1994), discussed supra at pages 13-14; *see also In re Hemingway Transport, Inc.*, 126 B.R. 656; *Norpak v. Eagle-Picher Ind., Inc. (In re Eagle-Picher Indus., Inc.)*, 131 F.3d 1185 (6th Cir. 1997).  In *Hexcel*, the court held that the co-liability element of section 502(e)(1)(B) existed

13

because at some future date Fine Organics might re-sell the property and therefore itself become

subject to the State of New Jersey's requirement for remediation upon a property transfer.  The

court stated:

> While Fine Organics' liability is subject to a few more
> contingencies than a typical guarantor's claim, the purpose of the
> statute is equally served by disallowance of Fine Organics' claims.
> If Fine Organics' claim were allowed to stand, it would compete
> with and duplicate the claim of the NJDEPE. <u>Both claims are
> directed to the same need to remediate the Real Property</u>.

*In re Hexcel Corp*., 174 B.R. at 812 (emphasis added).

23.    It is not necessary for the debtor to be party to the administrative or civil

remediation order that is the basis for the claimant's co-liability.  *See In re Hemingway*

*Transport, Inc.*, 993 F.2d at 925-28.  In *Hemingway*, the claimant had been issued an EPA

administrative order to perform a CERCLA removal action, while the debtor had only received a

pre-petition PRP notice letter notifying it of its potential liability. EPA did not file a claim for

CERCLA liability in the bankruptcy proceedings, opting to first proceed against the claimant.

Nevertheless, the Court of Appeals ruled that the debtor and claimant would be co-liable on a

debt to EPA if a surrogate claim were to be filed on behalf of EPA in order to ensure a single —

but not double — payment from the debtor's estate.  *See id.* at 925-28 (remanding for

opportunity to file surrogate claim).  Co-liability can be based on two entirely different grounds

for liability, as long as the underlying debt is the same. *See In re Eagle-Picher Indus., Inc.*, 131

F.3d at 1190.  The claimant in *Eagle-Picher (1997)* believed that at some future time,

contamination at a property that it had purchased decades before from the debtor would cause

problems, and that was the basis for filing its claim.  The court stated:

> Whether under CERCLA or the Spill Act or some other law,
> Norpak's claims are for environmental cleanup costs associated
> with the Blanchard Street property, the very same costs for which

14

> Eagle-Picher may turn out to be co-liable. This is precisely the kind of contingent co-liability envisioned by § 502(e)(1)(B). If Norpak and Eagle- Picher are co-liable, then it is irrelevant that Norpak can also concoct an alternative theory on which to premise its claim against Eagle-Picher such as diminution of value of the property due to Eagle- Picher's contamination of that property.
>
> Even assuming, for the sake of argument, that Eagle-Picher and Norpak will not be co-liable under CERCLA or the Spill Act, Norpak's ECRA [New Jersey's Environmental Cleanup Responsibility Act] claim amounts to nothing more than a thinly disguised claim for reimbursement and contribution. Section 502(e)(1)(B) applies only to an entity that is liable with the debtor on . . . the claim of a creditor. Courts have held that the phrase an entity that is liable with the debtor is broad enough to encompass any type of liability shared with the debtor, whatever its basis. <u>Thus, so long as Norpak and Eagle-Picher are both potentially responsible for environmental cleanup costs of the Blanchard Street property, the legal theory underpinning that shared responsibility is irrelevant.</u>

*Id.* at 1190 (affirming bankruptcy court's determination that claim was for reimbursement or contribution for purposes of section 502(e)(1)(B)) (emphasis added) (internal citations and quotations omitted); *accord In re Wedtech Corp.*, 85 B.R. at 289-90 (disallowing debtor's officers' contingent indemnity claims).

24.    In *In re Wedtech Corp.*, the court held that the co-liability requirement of section 502(e)(1)(B) was satisfied even though the debtor and the claimant were not actually alleged to be joint tortfeasors in the underlying actions. *See id.* at 289-90. Rather, the court determined that, based on the nature of the allegations, if the claimant was found liable, the debtor could be co-liable. *Id.*

25.    Contractual indemnification or reimbursement claims under purchase agreements for environmental response costs from the owner of a contaminated site to a buyer meet the co-liability element of section 502(e)(1)(B) because indemnification "presupposes co-liability." *In re GCO Servs., LLC*, 324 B.R. at 466 (disallowing contingent claims by ERISA trustees).

15

"Analytically, indemnity is the same as reimbursement. One contractually provides for the reimbursement of loss incurred by another by indemnifying [the claimant]." *In re Pacor, Inc.*, 110 B.R. 686, 690 (E.D. Pa. 1990) (disallowing contingent asbestos tort claims where Debtor might be jointly and severally liable with claimants); *see also In re Pettibone Corp.*, 162 B.R. 791, 809 (Bankr. N.D. Ill. 1994) ("A claim for indemnification, as well as contribution, has been considered to be for 'reimbursement' within the meaning of § 502(e)(1)(B).") (provisionally disallowing products liability claims until such time as any of them cease to be contingent); *In re Regal Cinemas, Inc.*, 393 F.3d 647 (6th Cir. 2004) (disallowing contractual indemnification claim asserted by commercial lessee).

### C.    Element No. 3 – Claim Is Contingent.

26.    A claim is contingent until liquidated costs are actually incurred. *In re APCO Liquidating Trust*, 370 B.R. at 636 (disallowing CERCLA response costs not yet incurred); *accord Pearl-Phil GMT (Far East) Ltd. v. Caldor Corp.*, 266 B.R. 575, 580 (S.D.N.Y. 2001) (A claim is contingent "if the debtor's legal duty to pay does not come into existence until triggered by the occurrence of a future event.") (quoting *Mazzeo v. United States (In re Mazzeo)*, 131 F.3d 295, 303 (2d Cir. 1997)); *In re Alper Holdings, USA*, 2008 WL 4186333, at *5 (disallowing future legal defense costs and indemnification for any liability relating to purchased property); *Highland Holdings and Zito I, L.P. v. Century/ML Cable Venture*, 06 Civ.181 (GBD), 2007 WL 2405689, at *5 (S.D.N.Y. Aug. 24, 2007) (disallowing future contractual indemnification obligations). "The determination of whether the claim is contingent is made at the time of the allowance or disallowance of the claim, which courts have established is the date of the ruling." *In re Drexel II*, 148 B.R. at 985 (disallowing indemnification of future payments, based on a judgment or settlement, that may be made in pending litigation); *accord In re Baldwin-United*

*Corp.*, 55 B.R. 885, 894-95 (Bankr. S.D. Ohio 1985) (disallowing brokers' claims for

contribution and indemnity in regard to annuity holders' contingent claims against the brokers);

*In re GCO Servs., LLC*, 324 B.R. at 466. A simple rule of thumb used by this Court has been

that a claim is contingent if "the amounts and ultimate liability are presently unknown." *In re*

*Alper Holdings, USA*, 2008 WL 4186333, at *6 (citing *Drexel II*, 148 B.R. at 986-87, 991)

(indemnity claim for future defense costs are contingent and disallowed "to the extent these

Defense Costs are not determined and remain unpaid").

27.    Second Circuit case law confirms that future environmental cleanup costs are

contingent until the costs of the remediation work have actually been expended. *United States v.*

*LTV Corp. (In re Chateaugay Corp.)*, 944 F.2d 997, 1004-05 (2d Cir. 1991). Although

*Chateaugay* involved a claim by the EPA, the Court clearly established that future environmental

costs are contingent claims.

> We deal here with the far more manageable problem of sums
> ultimately to be owed to EPA at such time as it incurs CERCLA
> response costs. When such costs are incurred, EPA will
> unquestionably have what can fairly be called a 'right to payment.'
> That right is currently unmatured and will not mature until the
> response costs are incurred. In the context of contract claims, the
> Code's inclusion of 'unmatured' and 'contingent' claims is usually
> said to refer to obligations that will become due upon the
> happening of a future event . . . ."

*Id.* at 1004. Subsequent decision in the Second Circuit have also established that future

environmental cleanup costs are contingent claims. *Olin Corp. v. Riverwood Int'l Corp. (In re*

*Manville Forest Prods. Corp.)*, 209 F.3d 125, 128-130 (2d Cir. 2000) ("[T]he fact that Olin did

not know the specific parameters of its liability does not place that liability outside of the

definition of 'claim' but rather is precisely what made the claim contingent.").

28.     Future environmental remediation costs in the current chapter 11 cases are highly contingent, and estimation proceedings for even one of these duplicative Contribution Claims – let alone scores – would be extremely burdensome on the time and resources of this or any other Court and the chapter 11 estates.

## II.     Objections To Specific Claims Based On Section 502(e)(1)(B)

29.     The Debtors' specific objections to proofs of claim are set forth in the attached Appendix, which is organized by geographic sites and, for each site, by individual claims. Each discussion sets forth first the primary claim to which the secondary contingent claimant(s) and Debtor(s) are co-liable, followed by a description of the secondary claims to which these objections apply. Examples of typical fact patterns are as follows:

### A.     CERCLA Orders.

30.     Mallinckrodt Inc. filed Proof of Claim No. 849 against Chemtura in relation to the Diamond Alkali Site. In 2004, EPA reached an administrative settlement with various PRPs at the Diamond Alkali Site, including Chemtura (the "**2004 Settlement**"), requiring the PRPs to pay certain future response costs. On May 8, 2007, EPA entered into a second administrative settlement with the PRPs, including Chemtura, that required certain remedial actions (the "**2007 Settlement**"). Mallinckrodt is a party to both Settlements. The Mallinckrodt proof of claim alleges that Chemtura is liable to Mallinckrodt for unliquidated cost-recovery and/or contribution claims related to the Diamond Alkali Site pursuant to CERCLA sections 107(a), 113(f)(1), and 113(f)(3)(B), the New Jersey Spill Compensation and Control Act, N.J.S.A. 58:10-23.11(a)(2), and common law. Because Mallinckrodt and a debtor entity are both liable under the Settlements, CERCLA, the New Jersey Spill Compensation and Control Act, and common law, and the claim for future costs is contingent upon the expenditure of such

18

costs, Mallinckrodt claim should be disallowed pursuant to 502(e)(1)(B). If Mallinckrodt's claim is not disallowed, then Chemtura will face the prospect of paying twice for the same liability, because EPA has also filed a proof of claim asserting liability for future response costs relating to the Diamond Alkali Site.

### B.    PRP Groups Co-Liable to Government.

31.    The Cooper Drum Cooperating Parties Group and Each Individual Member ("**Cooper Drum Group**") filed Proof of Claim No. 11200 against Chemtura in relation to the Cooper Drum Site. In February 2009, EPA issued a Unilateral Administrative Order ("**UAO**") to 43 PRPs, including Chemtura, which requires the recipients to perform certain remedial actions at the Cooper Drum Site. The Cooper Drum Group consists of parties to the UAO. The proof of claim alleges that Chemtura is liable to the Cooper Drum Group under CERCLA and the UAO for an estimated $12 million in past recoverable costs and approximately $25 million in future response costs. Because the Cooper Drum Group and a debtor entity are both liable under CERCLA and the UAO, and the claim for future costs is contingent upon the expenditure of such costs, the Cooper Drum Group's claim should be disallowed with respect to the future response costs pursuant to 502(e)(1)(B). If the Cooper Drum Group's claim is not disallowed, then Chemtura will face the prospect of paying twice for the same liability, because EPA has also filed a proof of claim asserting liability for future response costs relating to the Cooper Drum Site.

### C.    Individual Claimants Co-Liable to PRP Groups, and Contractual Indemnification.

32.    The BKK Joint Defense Group, parties to a settlement agreement to which Chemtura is not a party, filed Proof of Claim No. 11048 against Chemtura in relation to the BKK Class I Landfill. The proof of claim alleges that Chemtura may be jointly and severally liable to

the BKK Joint Defense Group because it deposited waste at the BKK Class I Landfill.  The BKK

Joint Defense Group asserts a claim pursuant to CERCLA for future response costs to be

incurred by the BKK Joint Defense Group in excess of $500,000,000.  Because the BKK Joint

Defense Group and a debtor entity are both liable under CERCLA, and the claim for future costs

is contingent upon the expenditure of such costs, the BKK Joint Defense Group's claim should

be disallowed pursuant to 502(e)(1)(B).  If the BKK Joint Defense Group's claim is not

disallowed, then Chemtura will face the prospect of paying twice for the same liability, because

the State of California (which has taken the lead at the BKK Class I Landfill site) has also filed a

proof of claim asserting liability for future response costs relating to the BKK Class I Landfill

site.

33.     The foregoing are provided as examples of the specific discussions set forth in the

attached Appendix.  The Debtors respectfully refer the Court to the Appendix for a discussion of

all the claims and sites covered by this Memorandum.

## **CONCLUSION**

34.     For the foregoing reasons, the Debtors respectfully request that the Court enter an

order, substantially in the form annexed as Exhibit A to each Objection, disallowing the

environmental claims identified in the Objections and listed on Exhibit 1 to this Memorandum,

pursuant to section 502(e)(1)(B) of the Bankruptcy Code, and granting such other relief that it

deems just and proper.

New York, New York
Dated: May 28, 2010

*/s/ David J. Zott, P.C.*

Richard M. Cieri
M. Natasha Labovitz
Craig A. Bruens
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York  10022-4611
Telephone:     (212) 446-4800
Facsimile:     (212) 446-4900

David J. Zott, P.C.
Brian T. Stansbury
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL  60654
Telephone:  (312) 862-2000
Facsimile:  (312) 862-2200

Counsel to Debtors and Debtors-in-Possession

21

**<u>Exhibit 1</u>**

## Claims Objections (Listed Alphabetically by Site Name)

| Claim # | Claimant | Site Listed on Claim | Debtor Listed on Claim |
|---|---|---|---|
| 9773 | Goodrich Corporation on Behalf of Itself and Coltec Industries Inc. | Beacon Heights Superfund Landfill | Chemtura Corporation |
| 9775 | Goodrich Corporation on Behalf of Itself and Coltec Industries Inc. | Beacon Heights Superfund Landfill | Naugatuck Treatment Company |
| 10264 | Beacon Heights Coalition | Beacon Heights Superfund Landfill | Chemtura Corporation |
| | | | |
| 11041 | BKK Joint Defense Group | BKK Class I Landfill | ISCI, Inc. |
| 11048 | BKK Joint Defense Group | BKK Class I Landfill | Chemtura Corporation |
| 11798 | BKK Joint Defense Group | BKK Class I Landfill | Great Lakes Chemical Corporation |
| 6264 | MacDermid | BKK Class I Landfill | Chemtura Corporation |
| | | | |
| 2402 | Cleve Reber Superfund Site, Cleve Reber Trust Fund | Cleve Reber Landfill Superfund Site | Monochem, Inc. |
| 2403 | Vulcan Materials Company | Cleve Reber Landfill Superfund Site | Chemtura Corporation |

| Claim # | Claimant | Site Listed on Claim | Debtor Listed on Claim |
|---|---|---|---|
| 2405 | Vulcan Materials Company | Cleve Reber Landfill Superfund Site | Monochem, Inc. |
| 6250 | Cleve Reber Superfund Site, Cleve Reber Trust Fund | Cleve Reber Landfill Superfund Site | Uniroyal Chemical Company Limited (Delaware) |
| | | | |
| 11200 | The Cooper Drum Cooperating Parties Group and Each Individual Member | Cooper Drum Company Superfund Site | Chemtura Corporation |
| | | | |
| 9499 | DS&G Remedial Trust | Delaware Sand and Gravel Superfund Site | Chemtura Corporation |
| | | | |
| 849 | Mallinckrodt Inc. | Diamond Alkali Superfund Site | Chemtura Corp. |
| 865 | The Dial Corporation | Diamond Alkali Superfund Site | Chemtura Corporation |
| 9533 | NL Industries, Inc. | Diamond Alkali Superfund Site | Chemtura Corporation |
| 9745 | Givaudan Fragrances Corporation | Diamond Alkali Superfund Site | Chemtura Corporation |
| 10156 | Wolff & Samson Group Members | Diamond Alkali Superfund Site | Chemtura Corporation |

| Claim # | Claimant | Site Listed on Claim | Debtor Listed on Claim |
|---|---|---|---|
| 10277 | ISP Environmental Services Inc. | Diamond Alkali Superfund Site | Chemtura Corporation |
| 10483 | Lower Passaic River Study Area Site Subscribing Parties | Diamond Alkali Superfund Site | Chemtura Corporation |
| 10750 | Non-Public Third Party Joint Defense Group in NJ DEP V Occidental Chemical | Diamond Alkali Superfund Site | Chemtura Corporation |
| 10895 | The Stanley Works | Diamond Alkali Superfund Site | Chemtura Corporation |
| 12005 | Maxus Energy Corporation | Diamond Alkali Superfund Site | Chemtura Corporation |
| 12011 | Tierra Solutions Inc. | Diamond Alkali Superfund Site | Chemtura Corporation |
| 10894 | Passaic Valley Sewerage Commissioners | Diamond Alkali Superfund Site | Chemtura Corporation |
| 11590 | Lower Passaic River Study Area Site Subscribing Parties | Diamond Alkali Superfund Site | Chemtura Corporation |
|  |  |  |  |
| 2994 | Members of the Frontier Chemical Site PRP Group by its Chairman A. Timothy Webster | Frontier Chemical Site | Chemtura Corporation |
|  |  |  |  |

| Claim # | Claimant | Site Listed on Claim | Debtor Listed on Claim |
|---------|----------|---------------------|------------------------|
| 12104 | Sensient Technologies Corporation | Stoney Creek Technologies Site | Crompton Colors Incorporated |
| 12129 | Sensient Technologies Corporation | Stoney Creek Technologies Site | CNK Chemical Realty Corporation |
| 12060 | Sensient Technologies Corporation | Gibraltar, Pennsylvania Site | Chemtura Corporation |
|  |  |  |  |
| 6142 | Arivec PRP Group | Hazardous Site Inventory Site #10123 (Arivec) | Bio-Lab, Inc. |
|  |  |  |  |
| 10836 | ILCO Site Remediation Group | Interstate Lead Company Superfund Site | Chemtura Corporation |
|  |  |  |  |
| 6295 | Jadco Hughes PRP Group | Jadco Hughes Superfund Site | Chemtura Corporation |
|  |  |  |  |
| 14245 | PCS Joint Venture Ltd. | Landia Chemical Company Superfund Site | Chemtura Corp. |

| Claim # | Claimant | Site Listed on Claim | Debtor Listed on Claim |
|---|---|---|---|
| 14247 | Agrico Chemical Company | Landia Chemical Company Superfund Site | Chemtura Corporation |
|  |  |  |  |
| 10123 | CR USA Inc. | Laurel Park, Inc. Superfund Site | Chemtura Corporation |
| 10294 | Laurel Park Coalition | Laurel Park, Inc. Superfund Site | Chemtura Corporation |
| 10296 | Laurel Park Coalition | Laurel Park, Inc. Superfund Site | Naugatuck Treatment Company |
| 10319 | CR USA Inc. | Laurel Park, Inc. Superfund Site | Naugatuck Treatment Company |
| 10533 | Flabeg Technical Glass US Corporation | Laurel Park, Inc. Superfund Site | Chemtura Corporation |
| 10869 | Unisys Corporation | Laurel Park, Inc. Superfund Site | Naugatuck Treatment Company |
| 10873 | Cadbury Beverages Inc. | Laurel Park, Inc. Superfund Site | Naugatuck Treatment Company |
| 11473 | The Kerite Company | Laurel Park, Inc. Superfund Site | Naugatuck Treatment Company |

| Claim # | Claimant | Site Listed on Claim | Debtor Listed on Claim |
|---|---|---|---|
| 11475 | The Kerite Company | Laurel Park, Inc. Superfund Site | Chemtura Corporation |
| 11807 | Unisys Corporation | Laurel Park, Inc. Superfund Site | Chemtura Corporation |
| 13942 | Cadbury Beverages Inc. | Laurel Park, Inc. Superfund Site | Chemtura Corporation |
| 10935 | Flabeg Technical Glass US Corporation | Laurel Park, Inc. Superfund Site | Chemtura Corporation |
|  |  |  |  |
| 5928 | LWD PRP Group | LWD Site | Crompton Colors Incorporated |
| 5962 | LWD PRP Group | LWD Site | Great Lakes Chemical Corporation |
| 5969 | LWD PRP Group | LWD Site | Chemtura Corporation |
| 10495 | Givaudan Flavors Corporation | LWD Site | Great Lakes Chemical Corporation |
| 11249 | Givaudan Flavors Corporation | LWD Site | Chemtura Corporation |
|  |  |  |  |

| Claim # | Claimant | Site Listed on Claim | Debtor Listed on Claim |
|---|---|---|---|
| | | | |
| 10576 | Malone Cooperating Parties | Malone Service Company Superfund Site | Chemtura Corporation |
| | | | |
| 11861 | Azko Nobel Chemicals, Inc. | Stauffer-Lemoyne Superfund Site | Chemtura Corporation |
| | | | |
| 12302 | Stoney Creek Technologies LLC | Stoney Creek Technologies Site | Chemtura Corporation |

**<u>Exhibit 2</u>**

| BEACON HEIGHTS SUPERFUND LANDFILL | | | | | |
|---|---|---|---|---|---|
| **Primary Claimant(s)** | | | **Secondary Claimant(s)** | | |
| **Proof of Claim No.** | **Claimant** | **Debtor** | **Proof of Claim No.** | **Claimant** | **Debtor** |
| 11672[1] | United States of America on Behalf of the United States Environmental Protection Agency and the United States Department of Commerce | Chemtura Corporation | 9773 | Goodrich Corporation on Behalf of Itself and Coltec Industries Inc. | Chemtura Corporation |
| 11513 | Connecticut Commissioner of Environmental Protection | Chemtura Corporation | 9775 | Goodrich Corporation on Behalf of Itself and Coltec Industries Inc. | Naugatuck Treatment Company |
| | | | 10264 | Beacon Heights Coalition | Chemtura Corporation |

---

[1]    The Debtors intend to resolve any liability of Naugatuck Treatment Company with respect to this site in connection with this claim.  If a consensual resolution is not possible, then the Debtors anticipate that this claim would be partially reclassified so that it is asserted against both Chemtura Corporation and Naugatuck Treatment Company to the extent those Debtors have any liability with respect to this site.

| BKK CLASS I LANDFILL | | | | | |
|---|---|---|---|---|---|
| **Primary Claimant(s)** | | | **Secondary Claimant(s)** | | |
| **Proof of Claim No.** | **Claimant** | **Debtor** | **Proof of Claim No.** | **Claimant** | **Debtor** |
| 11493 | California Department of Toxic Substances Control | Uniroyal Chemical Company Limited (Delaware) | 11041 | BKK Joint Defense Group | ISCI, Inc. |
| 11546 | California Department of Toxic Substances Control | ISCI, Inc. | 11048 | BKK Joint Defense Group | Chemtura Corporation |
| 11552 | California Department of Toxic Substances Control | Uniroyal Chemical Company Limited (Delaware) | 11798 | BKK Joint Defense Group | Great Lakes Chemical Corporation |
| 11659 | California Department of Toxic Substances Control | Chemtura Corporation | 6264 | MacDermid | Chemtura Corporation |
| 11665 | California Department of Toxic Substances Control | Great Lakes Chemical Corporation | | | |
| 11724 | California Department of Toxic Substances Control | Great Lakes Chemical Global | | | |

2

| CLEVE REBER LANDFILL SUPERFUND SITE | | | | | |
|---|---|---|---|---|---|
| **Primary Claimant(s)** | | | **Secondary Claimant(s)** | | |
| **Proof of Claim No.** | **Claimant** | **Debtor** | **Proof of Claim No.** | **Claimant** | **Debtor** |
| 11672 | United States of America on Behalf of the United States Environmental Protection Agency and the United States Department of Commerce | Chemtura Corporation | 2402 | Cleve Reber Superfund Site, Cleve Reber Trust Fund | Monochem, Inc. |
| 11797 | United States of America on Behalf of the United States Environmental Protection Agency | Monochem, Inc. | 2403 | Vulcan Materials Company | Chemtura Corporation |
| | | | 2405 | Vulcan Materials Company | Monochem, Inc. |
| | | | 6250[2] | Cleve Reber Superfund Site, Cleve Reber Trust Fund | Uniroyal Chemical Company Limited (Delaware) |

---

[2] The Debtors have filed a procedural objection concurrently with this objection to reclassify this claim to a claim against Chemtura Corporation.

3

| COOPER DRUM COMPANY SUPERFUND SITE | | | | | |
|---|---|---|---|---|---|
| **Primary Claimant(s)** | | | **Secondary Claimant(s)** | | |
| **Proof of Claim No.** | **Claimant** | **Debtor** | **Proof of Claim No.** | **Claimant** | **Debtor** |
| 11672 | United States of America on Behalf of the United States Environmental Protection Agency and the United States Department of Commerce | Chemtura Corporation | 11200 | The Cooper Drum Cooperating Parties Group and Each Individual Member | Chemtura Corporation |

4

| DELAWARE SAND AND GRAVEL SUPERFUND SITE | | | | | |
|---|---|---|---|---|---|
| **Primary Claimant(s)** | | | **Secondary Claimant(s)** | | |
| **Proof of Claim No.** | **Claimant** | **Debtor** | **Proof of Claim No.** | **Claimant** | **Debtor** |
| 11672 | United States of America on Behalf of the United States Environmental Protection Agency and the United States Department of Commerce | Chemtura Corporation | 9499 | DS&G Remedial Trust | Chemtura Corporation |

K&E 16906368.1

| DIAMOND ALKALI SUPERFUND SITE | | | | | |
|---|---|---|---|---|---|
| **Primary Claimant(s)** | | | **Secondary Claimant(s)** | | |
| **Proof of Claim No.** | **Claimant** | **Debtor** | **Proof of Claim No.** | **Claimant** | **Debtor** |
| 11672 | United States of America on Behalf of the United States Environmental Protection Agency and the United States Department of Commerce | Chemtura Corporation | 849 | Mallinckrodt Inc. | Chemtura Corp. |
| | | | 865 | The Dial Corporation | Chemtura Corporation |
| | | | 9533 | NL Industries, Inc. | Chemtura Corporation |
| | | | 9745 | Givaudan Fragrances Corporation | Chemtura Corporation |
| | | | 10156 | Wolff & Samson Group Members | Chemtura Corporation |
| | | | 10277 | ISP Environmental Services Inc. | Chemtura Corporation |
| | | | 10483 | Lower Passaic River Study Area Site Subscribing Parties | Chemtura Corporation |
| | | | 10750 | Non-Public Third Party Joint Defense Group in NJ DEP V Occidental Chemical | Chemtura Corporation |
| | | | 10895 | The Stanley Works | Chemtura Corporation |
| | | | 12005 | Maxus Energy Corporation | Chemtura Corporation |

6

| | 12011 | Tierra Solutions Inc. | Chemtura Corporation |
| | 10894 | Passaic Valley Sewerage Commissioners | Chemtura Corporation |
| | 11590 | Lower Passaic River Study Area Site Subscribing Parties | Chemtura Corporation |

7

| FRONTIER CHEMICAL SITE | | | | | |
|---|---|---|---|---|---|
| Primary Claimant(s) | | | Secondary Claimant(s) | | |
| Proof of Claim No. | Claimant | Debtor | Proof of Claim No. | Claimant | Debtor |
| 12869 | New York State Department of Environmental Conservation | Chemtura Corporation | 2994 | Members of the Frontier Chemical Site PRP Group by its Chairman A. Timothy Webster | Chemtura Corporation |

8

| GIBRALTAR, PENNSYLVANIA SITE | | | | | |
|---|---|---|---|---|---|
| Primary Claimant(s) | | | Secondary Claimant(s) | | |
| Proof of Claim No. | Claimant | Debtor | Proof of Claim No. | Claimant | Debtor |
| 11234[3] | Commonwealth of Pennsylvania Department of Environmental Protection | Crompton Colors, Inc. | 12060 | Sensient Technologies Corporation | Chemtura Corporation |
| | | | 12104 | Sensient Technologies Corporation | Crompton Colors, Inc. |
| | | | 12129 | Sensient Technologies Corporation | CNK Chemical Realty Corporation |

---

[3]     The Debtors intend to resolve any liability of Chemtura Corporation with respect to this site in connection with this claim.  If a consensual resolution is not possible, then the Debtors anticipate that this claim would be partially reclassified so that it is asserted against both Crompton Colors, Inc. and Chemtura Corporation to the extent those Debtors have any liability with respect to this site.

9

| HAZARDOUS SITE INVENTORY SITE #10123 (ARIVEC) | | | | | |
|---|---|---|---|---|---|
| **Primary Claimant(s)** | | | **Secondary Claimant(s)** | | |
| **Proof of Claim No.** | **Claimant** | **Debtor** | **Proof of Claim No.** | **Claimant** | **Debtor** |
| 9236[4] | Georgia Department of Natural Resources Hazardous Sites Response Program | Chemtura Corporation | 6142 | Arivec PRP Group | Bio-Lab, Inc. |

---

[4]     The Debtors believe that this claim should have been asserted against Bio-Lab, Inc. and intend to resolve any liability of Bio-Lab, Inc. in connection with this claim.  If a consensual resolution is not possible, then the Debtors anticipate that this claim would be reclassified as a claim against Bio-Lab, Inc. with respect to this site.

K&E 16906368.1

| INTERSTATE LEAD COMPANY SUPERFUND SITE | | | | | |
|---|---|---|---|---|---|
| Primary Claimant(s) | | | Secondary Claimant(s) | | |
| Proof of Claim No. | Claimant | Debtor | Proof of Claim No. | Claimant | Debtor |
| 11672 | United States of America on Behalf of the United States Environmental Protection Agency and the United States Department of Commerce | Chemtura Corporation | 10836 | ILCO Site Remediation Group | Chemtura Corporation |

11

| JADCO HUGHES SUPERFUND SITE | | | | | |
|---|---|---|---|---|---|
| **Primary Claimant(s)** | | | **Secondary Claimant(s)** | | |
| **Proof of Claim No.** | **Claimant** | **Debtor** | **Proof of Claim No.** | **Claimant** | **Debtor** |
| 11672 | United States of America on Behalf of the United States Environmental Protection Agency and the United States Department of Commerce | Chemtura Corporation | 6295 | Jadco Hughes PRP Group | Chemtura Corporation |

K&E 16906368.1

| LANDIA CHEMICAL COMPANY SUPERFUND SITE | | | | | |
|---|---|---|---|---|---|
| **Primary Claimant(s)** | | | **Secondary Claimant(s)** | | |
| **Proof of Claim No.** | **Claimant** | **Debtor** | **Proof of Claim No.** | **Claimant** | **Debtor** |
| 11672 | United States of America on Behalf of the United States Environmental Protection Agency and the United States Department of Commerce | Chemtura Corporation | 14245 | PCS Joint Venture Ltd. | Chemtura Corporation |
| | | | 14247 | Agrico Chemical Company | Chemtura Corporation |

13

| LAUREL PARK, INC. SUPERFUND SITE | | | | | |
|---|---|---|---|---|---|
| **Primary Claimant(s)** | | | **Secondary Claimant(s)** | | |
| **Proof of Claim No.** | **Claimant** | **Debtor** | **Proof of Claim No.** | **Claimant** | **Debtor** |
| 11672 | United States of America on Behalf of the United States Environmental Protection Agency and the United States Department of Commerce | Chemtura Corporation | 10123 | CR USA Inc. | Chemtura Corporation |
| 11993 | United States of America on Behalf of the United States Environmental Protection Agency | Naugatuck Treatment Company | 10294 | Laurel Park Coalition | Chemtura Corporation |
| 11513 | Connecticut Commissioner of Environmental Protection | Chemtura Corporation | 10296 | Laurel Park Coalition | Naugatuck Treatment Company |
| 11569 | Connecticut Commissioner of Environmental Protection | Naugatuck Treatment Company | 10319 | CR USA Inc. | Naugatuck Treatment Company |
| | | | 10533 | Flabeg Technical Glass US Corporation | Chemtura Corporation |
| | | | 10869 | Unisys Corporation | Naugatuck Treatment Company |
| | | | 10873 | Cadbury Beverages Inc. | Naugatuck Treatment Company |

14

| | 11473 | The Kerite Company | Naugatuck Treatment Company |
| | 11475 | The Kerite Company | Chemtura Corporation |
| | 11807 | Unisys Corporation | Chemtura Corporation |
| | 13942 | Cadbury Beverages Inc. | Chemtura Corporation |
| | 10935 | Flabeg Technical Glass US Corporation | Chemtura Corporation |

K&E 16906368.1

| LWD SITE | | | | | |
| --- | --- | --- | --- | --- | --- |
| **Primary Claimant(s)** | | | **Secondary Claimant(s)** | | |
| **Proof of Claim No.** | **Claimant** | **Debtor** | **Proof of Claim No.** | **Claimant** | **Debtor** |
| 11672[5] | United States of America on Behalf of the United States Environmental Protection Agency and the United States Department of Commerce | Chemtura Corporation | 5928 | LWD PRP Group | Crompton Colors Incorporated |
| | | | 5962 | LWD PRP Group | Great Lakes Chemical Corporation |
| | | | 5969 | LWD PRP Group | Chemtura Corporation |
| | | | 10495 | Givaudan Flavors Corporation | Great Lakes Chemical Corporation |
| | | | 11249 | Givaudan Flavors Corporation | Chemtura Corporation |

---

[5]      The Debtors intend to resolve any liability of Great Lakes Chemical Corporation with respect to this site in connection with this claim.  If a consensual resolution is not possible, then the Debtors anticipate that this claim would be partially reclassified so that it is asserted against both Chemtura Corporation and Great Lakes Chemical Corporation to the extent those Debtors have any liability with respect to this site.

K&E 16906368.1

| MALONE SERVICE COMPANY SUPERFUND SITE | | | | | |
|---|---|---|---|---|---|
| **Primary Claimant(s)** | | | **Secondary Claimant(s)** | | |
| **Proof of Claim No.** | **Claimant** | **Debtor** | **Proof of Claim No.** | **Claimant** | **Debtor** |
| 11672 | United States of America on Behalf of the United States Environmental Protection Agency and the United States Department of Commerce | Chemtura Corporation | 10576 | Malone Cooperating Parties | Chemtura Corporation |
| 1976 | Texas Commission on Environmental Quality | Chemtura Corporation | | | |

17

| STAUFFER-LEMOYNE SUPERFUND SITE | | | | | |
|---|---|---|---|---|---|
| Primary Claimant(s) | | | Secondary Claimant(s) | | |
| Proof of Claim No. | Claimant | Debtor | Proof of Claim No. | Claimant | Debtor |
| 11672 | United States of America on Behalf of the United States Environmental Protection Agency and the United States Department of Commerce | Chemtura Corporation | 11861 | Azko Nobel Chemicals, Inc. | Chemtura Corporation |

18

| STONEY CREEK TECHNOLOGIES SITE | | | | | |
| Primary Claimant(s) | | | Secondary Claimant(s) | | |
| Proof of Claim No. | Claimant | Debtor | Proof of Claim No. | Claimant | Debtor |
| 11672[6] | United States of America on Behalf of the United States Environmental Protection Agency and the United States Department of Commerce | Chemtura Corporation | 12302 | Stoney Creek Technologies LLC | Chemtura Corporation |

---

[6]    The Debtors intend to resolve any liability of Crompton Colors, Inc. and CNK Chemical Realty Corporation with respect to this site in connection with this claim.  If a consensual resolution is not possible, then the Debtors anticipate that this claim would be partially reclassified so that it is asserted against Chemtura Corporation, Crompton Colors, Inc. and CNK Chemical Realty Corporation to the extent those Debtors have any liability with respect to this site.

19

**Exhibit 3**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| CHEMTURA CORPORATION, *et al.*,[1] | ) Case No. 09-11233 (REG) |
| | ) |
| Debtors. | ) Jointly Administered |
| | ) |

## DECLARATION OF RAMAN S. IYER

RAMAN S. IYER declares under penalty of perjury pursuant to 28 U.S.C. § 1746 as follows:

1.    I am employed by Chemtura Corporation ("**Chemtura**") as Director, Environmental, Health, Safety ("**EHS**") and Remediation.   In that capacity, I have lead responsibility for overseeing environmental remediation work on behalf of Chemtura and its affiliates and subsidiaries, including all of the Debtors in these proceedings (the "**Debtors**").   I have held the Director, EHS and Remediation position with Chemtura since 2007.   I joined Chemtura in 1989.   Since I joined Chemtura, my titles and responsibilities have included Director of Remediation, Manager, EHS and Utilities, and Manager, Environmental Affairs.   I hold a B.S. in Chemical Engineering and an M.S. in Civil/Environmental Engineering.   I am over the age of eighteen and am not a party to the above-captioned action.

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal taxpayer-identification number, are:  Chemtura Corporation (3153); A&M Cleaning Products, LLC (4712); Aqua Clear Industries, LLC (1394); ASCK, Inc. (4489); ASEPSIS, Inc. (6270); BioLab Company Store, LLC (0131); BioLab Franchise Company, LLC (6709); Bio-Lab, Inc. (8754); BioLab Textile Additives, LLC (4348); CNK Chemical Realty Corporation (5340); Crompton Colors Incorporated (3341); Crompton Holding Corporation (3342); Crompton Monochem, Inc. (3574); GLCC Laurel, LLC (5687); Great Lakes Chemical Corporation (5035); Great Lakes Chemical Global, Inc. (4486); GT Seed Treatment, Inc. (5292); HomeCare Labs, Inc. (5038); ISCI, Inc. (7696); Kem Manufacturing Corporation (0603); Laurel Industries Holdings, Inc. (3635); Monochem, Inc. (5612); Naugatuck Treatment Company (2035); Recreational Water Products, Inc. (8754); Uniroyal Chemical Company Limited (Delaware) (9910); Weber City Road LLC (4381); and WRL of Indiana, Inc. (9136).

2.      The Environmental Compliance and Remediation Department maintains complete and exclusive responsibility for managing the environmental remediation portfolio of Chemtura and its affiliates and subsidiaries.  In my 21 years with the Chemtura companies, I have had countless dealings with EPA, various state agencies, and other Potentially Responsible Parties ("**PRPs**") and PRP Groups at many sites around the United States.

3.      By virtue of my employment as Director, Environmental Compliance and Remediation for Chemtura, and my extensive knowledge of the Debtors' environmental remediation obligations, I am personally familiar with the operations of the Debtors with respect to compliance with their environmental obligations at each of the environmental sites listed in the Proofs of Claim ("**Environmental POCs**") filed in these Chapter 11 cases and I have familiarized myself with each of such POCs.

4.      Many of the Environmental POCs indicate that at least in part they are for environmental remediation costs that have not yet been incurred ("**Future Costs**").

5.      Many of the Environmental POCs for Future Costs that have been filed by private (i.e., non-governmental) parties cover the same Future Costs for which federal or state agencies have filed Environmental POCs.  Similarly, some Environmental POCs for Future Costs that have been filed by private parties cover the same Future Costs for which other private parties have filed Environmental POCs.  In both cases, I refer to any Environmental POCs that cover the same costs as others as "overlapping" Environmental POCs.

6.      The total dollar amount of all Environmental POCs is unknown because a significant percentage of the claims are listed as unliquidated and because many of the POCs are vague.

7.    The total dollar amount of the overlapping Environmental POCs is also unknown because a significant percentage of the claims are listed as unliquidated and because many of the POCs are vague.  That said, the Environmental POCs do explicitly allege billions of dollars of potential environmental liability, and the overlapping Environmental POCs involve hundreds of millions of dollars of potential environmental liability.

8.    In my experience, when EPA identifies multiple PRPs, the practical effect is often that most, but not necessarily all, of the PRPs form PRP Groups to negotiate with the EPA for the form and cost of a remedial action and to enter an administrative settlement.  PRP Groups may assess their members over time for costs incurred and paid out either to private contractors that are performing the remediation or to the EPA.  PRPs that do not join such groups will have conflicting interests and may eventually be sued by the PRP Groups for cost reimbursement and contribution.

9.    The Debtors over the years have been active settling members at scores of CERCLA sites around the United States.  As a result of the Chapter 11 cases, however, the Debtors have stopped paying into and otherwise participating in PRP Groups for sites not owned or leased by the Debtors.  As a consequence, many PRPs and PRP Groups have filed CERCLA reimbursement and contribution claims against the Debtors for the same environmental liabilities for which the United States of America and state environmental agencies have filed claims.

10.    The Debtors currently are actively negotiating with the United States government in an effort to settle all environmental claims asserted on behalf of the EPA and the other federal agencies covered by the United States claim.  The Debtors' current plan is to attempt to resolve - either consensually or through claims objection and estimation proceedings - the United States claim in advance of confirmation of a plan of reorganization. The Debtors are pursuing a similar

course of action with respect to the states that filed proofs of claim. Debtors believe that it is important to resolve both the government claims and the $1.7 billion overlapping Environmental Claims issue in the near term, in order to avoid delays in confirming or consummating a Chapter 11 plan and making distributions thereunder.

11.     Proofs of Claim Nos. 9773, 9775, and 10264 relate to the Beacon Heights Landfill Superfund Site. In 1987, the United States District Court for the District of Connecticut entered a Consent Decree to which the Government and 32 settling defendants, including Uniroyal, are parties. Over time, many of the PRPs have settled with various municipalities and private parties. The remedial construction activities at the Superfund Site are complete. And the Site has gone through two five-year reviews by EPA. The Site is secure, regularly inspected, and currently in the operation and maintenance stage.

12.     Proofs of Claim Nos. 11041, 11048, 11798, and 6264 relate to the BKK Class I Landfill Site.

13.     Proofs of Claim Nos. 2402, 2403, 2405, and 6250 relate to the Cleve Reber Landfill Superfund Site. In 1991, the EPA issued a Unilateral Administrative Order ("**UAO**") requiring five PRPs, including Uniroyal, to perform certain remedial actions at the Cleve Reber Landfill Superfund Site. In 1998, EPA entered into an Administrative Order of Consent ("**AOC**") with five PRPs, including Uniroyal, pursuant to which EPA settled its claims for past costs and projected future oversight costs. Construction is complete at this Site. The Site has been secured and is currently in the operation and maintenance stage.

14.     Proofs of Claim Nos. 11200 and 10859 relate to the Cooper Drum Company Superfund Site. In February 2009, the EPA issued a UAO to 43 PRPs, including Chemtura, which requires the recipients to perform certain remedial actions at the Cooper Drum Site.

15.     Proof of Claim No. 9499 relates to the Delaware Sand and Gravel Superfund Site. On June 14, 1995, the United States District Court for the District of Delaware entered a Consent Decree, requiring the settling Defendants, including Witco, to reimburse the EPA for response costs and to conduct certain remedial activities at the Site.

16.     Proofs of Claim Nos. 849, 865, 9533, 9745, 10156, 10277, 10483, 10487, 10750, 10895, 12005 and 12011 relate to the Diamond Alkali Superfund Site located in New Jersey.  In 2004, EPA reached an administrative settlement with various PRPs at the Diamond Alkali Site, including Chemtura, requiring the PRPs to pay certain future response costs.  On May 8, 2007, EPA entered into a second administrative settlement with the PRPs, including Chemtura that required certain remedial actions. Raclaur LLC has represented Chemtura in the PRP Group in all discussions and remedial activities.

17.     Proof of Claim No. 2994 relates to the Frontier Chemical Site.  In 2006, the New York Department of Environmental Conservation issued a Record of Decision ("**ROD**") that selected a remedy for the Frontier Chemical Site.

18.     Proofs of Claim Nos.   11234, 12104, and 12129 relate to the Gibraltar, Pennsylvania Site.  This claim is from PADEP, for monitoring and reporting of groundwater data and the maintenance of impoundments at the Gibraltar Site.  Chemtura's remedial obligations have been completed and Chemtura obtained an Act2 No Further Action, establishing the same.

19.     Proof of Claim No.   6142 relates to Hazardous Site Inventory Site #10123 (ARIVEC).  Bio-Lab is one of approximately 135 PRPs at this Site.  In 2004, Bio-Lab signed a PRP Allocation Work Agreement with approximately 72 PRPs.  As of 2008, work was ongoing for soil and groundwater remediation.

20.     Proof of Claim No. 10836 relates to the Interstate Lead Company Superfund Site. In 1994, a UAO was issued to three PRPs, not including Witco. Witco did, however, enter into a PRP Organization Agreement in 1994. And a Consent Decree to which Witco was a party was issued in 1996. Remedial action concerning soil contamination was completed in 2006. As of 2008, there was ongoing groundwater monitoring in preparation for a groundwater remedy.

21.     Proof of Claim No. 6295 relates to the Jadco Hughes Superfund Site. Uniroyal was not a party to the UAO issued at this site. But in 1998 Uniroyal entered into a Site Allocation Agreement with the other PRPs. In 2004, Uniroyal was a party to a Stipulation and Order relating to past costs and funding future remedial activities at the Site.

22.     Proofs of Claim Nos. 10531, 14245, 14246 and 14247 relate to the Landia Chemical Company Superfund Site. The proof of claims allege that Chemtura is liable pursuant to the August 28, 2009 Consent Decree, to which Chemtura is not a party.

23.     Proofs of Claim Nos. 10123, 10294, 10296, 10319, 10533, 10869, 10873, 11473, 11475, 11807, 13942, and 10935 relate to the Laurel Park, Inc. Superfund Site. In 1992, 19 settling defendants, including Uniroyal, entered into a Consent Decree requiring them to take certain remedial actions. The remedial construction activities at the Superfund Site are complete. Nearby residents have been provided with a water supply pipeline. The Site has gone through two five-year reviews by EPA. The Site is secure, regularly inspected, and currently in the operation and maintenance stage.

24.     Proofs of Claim Nos. 5928, 5962, 5969, 10495, and 11249 relate to the LWD Site. Witco and Great Lakes Chemical Company ("**GLCC**") have been identified as PRPs. In 2007, LWD filed for chapter 7 bankruptcy protection and the EPA entered into an Administrative Order with 58 PRPs, not including Witco and GLCC. In August 2008, Witco and

GLCC received a general notice letter from EPA. A water treatment system is operating on site and soil removal activities are ongoing. The EPA is attempting to negotiate an AOC with approximately 400 PRPs.

25.    Proof of Claim No. 10576 relates to the Malone Service Company Superfund Site. GLCC and Chemtura are PRPs at the Malone Service Company Site. EPA notified Witco of its status as a PRP in 2004. There are two PRP Groups at the Site: Malone Cooperating Parties and Non-MCP PRP Group, to which Chemtura is a party. Chemtura was a party to the 2006 AOC, which involved de minimus contributors to the Site contamination. As of November 2008, Chemtura was participating in settlement negotiations with the EPA and the Malone Cooperating Parties.

26.    Proof of Claim No. 10603 relates to the San Joaquin, California Site. The California DTSC filed a complaint for recovery of past response costs against Witco and five other PRPs in 1998. A Memorandum Decision was entered in 2003 between California DTSC, Witco, and three other PRPs. In March 2008, Chemtura entered into an agreement with the California DTSC to complete a site investigation and remaining remedy at the main San Joaquin Drum Site. In May and August 2008, Chemtura conducted site investigation activities, submitted a report in October 2008 and filed a remedial investigation work plan (RIWP) with the California DTSC to fulfill its obligations. The Workplan was approved. But Chemtura was unable to complete the Workplan because of its Chapter 11 filing.

27.    Proof of Claim No. 11861 relates to the Stauffer-Lemoyne Superfund Site. In 1999, EPA issued a ROD requiring construction of a soil flushing system in the OU-2 area of the Stauffer-LeMoyne Site to accelerate the migration of contaminants from the subsurface soil into

the groundwater, where contaminants will be remediated by the treatment system, monitoring of subsurface and institutional controls.

28.     In 2001, Witco and Azko Nobel Chemicals Inc. entered into a Consent Decree issued by the United States District Court for the Southern District of Alabama pursuant to which Witco was required to perform the remedy at OU-2.

29.     Proof of Claim No. 12302 relates to the Stoney Creek Technologies Site.  On August 3, 2007, EPA issued an administrative order directing Chemtura and two other PRPs to remove certain chemical inventory from the Stoney Creek Site.  Chemtura fulfilled its obligations, to the extent possible.

30.     On February 5, 2008, EPA issued an administrative order, which directed Chemtura and two other PRPs to manage wastewater at the Stoney Creek Site to prevent discharges of oil from the facility.  Chemtura conducted an engineering study for wastewater treatment and management and removed on-site ash piles for off-site disposal.

31.         I declare, under penalty of perjury, that the foregoing is true and correct.


Executed May 27, 2010                                    /s/  Raman S. Iyer

                                                        Raman S. Iyer