Richard M. Cieri
M. Natasha Labovitz
Craig A. Bruens
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022-4611
Telephone:  (212) 446-4800
Facsimile:  (212) 446-4900

David J. Zott, P.C.
Brian T. Stansbury
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Telephone:  (312) 862-2000
Facsimile:  (312) 862-2200

Counsel to the Debtors and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| | ) Case No. 09-11233 (REG) |
| CHEMTURA CORPORATION, *et al.*,[1] | ) |
| | ) Jointly Administered |
| Debtors. | ) |
| | ) |

### APPENDIX TO
### MEMORANDUM OF LAW IN SUPPORT OF THE DEBTORS' OBJECTIONS TO CERTAIN CREDITORS' PROOFS OF CLAIM PURSUANT TO SECTION 502(E)(1)(B) OF THE BANKRUPTCY CODE

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal taxpayer-identification number, are:  Chemtura Corporation (3153); A&M Cleaning Products, LLC (4712); Aqua Clear Industries, LLC (1394); ASCK, Inc. (4489); ASEPSIS, Inc. (6270); BioLab Company Store, LLC (0131); BioLab Franchise Company, LLC (6709); Bio-Lab, Inc. (8754); BioLab Textile Additives, LLC (4348); CNK Chemical Realty Corporation (5340); Crompton Colors Incorporated (3341); Crompton Holding Corporation (3342); Crompton Monochem, Inc. (3574); GLCC Laurel, LLC (5687); Great Lakes Chemical Corporation (5035); Great Lakes Chemical Global, Inc. (4486); GT Seed Treatment, Inc. (5292); HomeCare Labs, Inc. (5038); ISCI, Inc. (7696); Kem Manufacturing Corporation (0603); Laurel Industries Holdings, Inc. (3635); Monochem, Inc. (5612); Naugatuck Treatment Company (2035); Recreational Water Products, Inc. (8754); Uniroyal Chemical Company Limited (Delaware) (9910); Weber City Road LLC (4381); and WRL of Indiana, Inc. (9136).

# INDEX[2]

### APPENDIX TO MEMORANDUM OF LAW IN SUPPORT OF THE DEBTORS' OBJECTIONS TO CERTAIN CREDITORS' PROOFS OF CLAIM PURSUANT TO SECTION 502(E)(1)(B) OF THE BANKRUPTCY CODE

**Tab A .......... Beacon Heights Landfill Superfund Site**

    Basis of Objection

        Tab 1 BH Ex. 1

        Tab 2 BH Ex. 2

        Tab 3 BH Ex. 3

        Tab 4 BH Ex. 4

        Tab 5 BH Ex. 5

**Tab B .......... BKK Class I Landfill**

    Basis of Objection

        Tab 1 BKK Ex. 1

        Tab 2 BKK Ex. 2

        Tab 3 BKK Ex. 3

        Tab 4 BKK Ex. 4

        Tab 5 BKK Ex. 5

        Tab 6 BKK Ex. 6

---

[2] Due to the voluminous nature of the Appendix and the records comprising the Tabs, the Debtors will serve only the Appendix without Tabs upon (a) the indenture trustee for each of the Debtors' outstanding bond issuances; (b) the Internal Revenue Service; (c) the Environmental Protection Agency; (d) the Securities and Exchange Commission; and (e) those persons and entities that have formally requested notice by filing a written request for notice, pursuant to Bankruptcy Rule 2002 and the Local Bankruptcy Rules. The Debtors will serve complete copies of the Appendix and all Tabs on (a) counsel to the statutory committee of unsecured creditors appointed in these chapter 11 cases; (b) counsel to the official committee of equity security holders appointed in these chapter 11 cases; (c) counsel to the agent for the Debtors' prepetition and postpetition secured lenders; (d) the United States Trustee for the Southern District of New York; and (e) each of the affected claimants. For all the other parties in interest, these records may be viewed on the official website of the Bankruptcy Court at https://ecf.nysb.uscourts.gov or at http://www.kccllc.net/Chemtura or may be obtained upon reasonable request to Anna del Rosario, Kirkland & Ellis LLP, 601 Lexington Avenue, New York, NY 10022, Telephone: (212) 446-3487, email: anna.delrosario@kirkland.com.

Tab 7 BKK Ex. 7

Tab 8 BKK Ex. 8

Tab 9 BKK Ex. 9

Tab 10 BKK Ex. 10

**Tab C .......... Cleve Reber Landfill Superfund Site**

Basis of Objection

Tab 1 CR Ex. 1

Tab 2 CR Ex. 2

Tab 3 CR Ex. 3

Tab 4 CR Ex. 4

Tab 5 CR Ex. 5

Tab 6 CR Ex. 6

**Tab D .......... Cooper Drum Company Superfund Site**

Basis of Objection

Tab 1 CD Ex. 1

Tab 2 CD Ex. 2

**Tab E .......... Delaware Sand and Gravel Superfund Site**

Basis of Objection

Tab 1 DS Ex. 1

Tab 2 DS Ex. 2

**Tab F .......... Diamond Alkali Superfund Site**

Basis of Objection

Tab 1 DA Ex. 1

Tab 2 DA Ex. 2

Tab 3 DA Ex. 3

Tab 4 DA Ex. 4

Tab 5 DA Ex. 5

Tab 6 DA Ex. 6

Tab 7 DA Ex. 7

Tab 8 DA Ex. 8

Tab 9 DA Ex. 9

Tab 10 DA Ex. 10

Tab 11 DA Ex. 11

Tab 12 DA Ex. 12

Tab 13 DA Ex. 13

Tab 14 DA Ex. 14

**Tab G .......... Frontier Chemical Site**

Basis of Objection

Tab 1 FC Ex. 1

Tab 2 FC Ex. 2

**Tab H .......... Gibraltar, PA Site**

Basis of Objection

Tab 1 Gibraltar Ex. 1

Tab 2 Gibraltar Ex. 2

Tab 3 Gibraltar Ex. 3

Tab 4 Gibraltar Ex. 4

**Tab I .......... Hazardous Site Inventory Site #10123 (ARIVEC)**

Basis of Objection

Tab 1 HSI Ex. 1

Tab 2 HIS Ex. 2

**Tab J ........... Interstate Lead Company Superfund Site**

    Basis of Objection

        Tab 1 IL Ex. 1

        Tab 2 IL Ex. 2

**Tab K .......... Jadco Hughes Superfund Site**

    Basis of Objection

        Tab 1 JH Ex. 1

        Tab 2 JH Ex. 2

**Tab L ........... Landia Chemical Company Superfund Site**

    Basis of Objection

        Tab 1 LC Ex. 1

        Tab 2 LC Ex. 2

        Tab 3 LC Ex. 3

**Tab M .......... Laurel Park, Inc. Superfund Site**

    Basis of Objection

        Tab 1 LP Ex. 1

        Tab 2 LP Ex. 2

        Tab 3 LP Ex. 3

        Tab 4 LP Ex. 4

        Tab 5 LP Ex. 5

        Tab 6 LP Ex. 6

        Tab 7 LP Ex. 7

        Tab 8 LP Ex. 8

        Tab 9 LP Ex. 9

        Tab 10 LP Ex. 10

        Tab 11 LP Ex. 11

Tab 12 LP Ex. 12

Tab 13 LP Ex. 13

Tab 14 LP Ex. 14

Tab 15 LP Ex. 15

Tab 16 LP Ex. 16

**Tab N .......... LWD Site**

Basis of Objection

Tab 1 LWD Ex. 1

Tab 2 LWD Ex. 2

Tab 3 LWD Ex. 3

Tab 4 LWD Ex. 4

Tab 5 LWD Ex. 5

Tab 6 LWD Ex. 6

**Tab O .......... Malone Service Company Superfund Site**

Basis of Objection

Tab 1 MS Ex. 1

Tab 2 MS Ex. 2

Tab 3 MS Ex. 3

**Tab P .......... Stauffer-LeMoyne Superfund Site**

Basis of Objection

Tab 1 Stauffer-LeMoyne Ex. 1

Tab 2 Stauffer-LeMoyne Ex. 2

**Tab Q ........... Stoney Creek Technologies Site**

Basis of Objection

Tab 1 Stoney Creek Ex. 1

Tab 2 Stoney Creek Ex. 2

**<u>Tab A</u>**

**Beacon Heights Landfill Superfund Site**

**Basis of Objection**

**Beacon Heights Landfill Site**

**Debtors:**

**Chemtura Corporation**

**Naugatuck Treatment Company**

**Claims to be disallowed:**

**Goodrich Corporation on Behalf of Itself and Coltec Industries Inc.**

**Beacon Heights Coalition**

1.      Primary Proof of Claim 11672, United States of America:

The United States of America, acting at the request of the United States Environmental Protection Agency ("**EPA**") and the United States Department of Commerce, filed a claim against Chemtura Corporation ("**Chemtura**") in relation to the Beacon Heights Landfill site. [BH Ex. 1].  The proof of claim alleges that Chemtura is liable to the United States because Uniroyal, Inc. ("**Uniroyal**"), as a predecessor to Chemtura, generated wastes that were disposed of at the Beacon Heights site.  In 1987, the United States District Court for the District of Connecticut entered a Consent Decree ("**Consent Decree**") to which the Government and 32 settling defendants, including Uniroyal, are parties.  The United States of America asserts a claim under CERCLA and the Consent Decree for $18,938,450 in future response costs.

2.      Primary Proof of Claim 11513, Connecticut Commissioner of Environmental Protection:

The Connecticut Commissioner of Environmental Protection filed a claim against Chemtura in relation to the Beacon Heights Landfill Site.  [BH Ex. 2].  The proof of claim alleges that Chemtura is responsible for the environmental remediation obligations of its predecessor, Uniroyal, under the Consent Decree.  The Connecticut Commissioner of Environmental Protection asserts a claim under the Consent Decree for $10,650,120 in future response costs.

2

3.      **Objection**: Secondary claimant Proof of Claim 9773, Goodrich Corporation on Behalf of Itself and Coltec Industries Inc.

Goodrich Corporation, a member of the Beacon Heights Coalition and a party to the Consent Decree, filed a proof of claim against Chemtura in relation to the Beacon Heights Landfill Superfund site.  [BH Ex. 3].  The proof of claim incorporates and adopts in full the claim filed by the Beacon Heights Coalition.  Because the Goodrich Corporation and a debtor entity are both liable under the Consent Decree, and the claim for past assessed but not paid costs and future costs is contingent upon the expenditure of such costs, the Coalition's claim must be disallowed pursuant to section 502(e)(1)(B) of the Bankruptcy Code.

4.      **Objection**: Secondary claimant Proof of Claim 9775, Goodrich Corporation on Behalf of Itself and Coltec Industries Inc.

Goodrich Corporation, a member of the Beacon Heights Coalition and a party to the Consent Decree, filed a proof of claim against Naugatuck Treatment Company in relation to the Beacon Heights Landfill Superfund site.  [BH Ex. 4].  The proof of claim incorporates and adopts in full the claim filed by the Beacon Heights Coalition.  Because Goodrich Corporation and a debtor entity are both liable under the Consent Decree, and the claim for past assessed but not paid costs and future costs is contingent upon the expenditure of such costs, the Coalition's claim must be disallowed pursuant to section 502(e)(1)(B) of the Bankruptcy Code.

5.      **Objection**: Secondary claimant Proof of Claim 10264 Beacon Heights Coalition

The Beacon Heights Coalition, which consists of Chemtura, Goodrich Corporation, and the Reynolds Aluminum Building Products Company, all parties to the Consent Decree, filed a proof of claim against Chemtura in relation to the Beacon Heights Landfill Superfund Site.  [BH Ex. 5].  The proof of claim alleges that Chemtura is liable to the Coalition for $6,991,845, pursuant to the Consent Decree.  $109,200 of this amount relates to the Debtors' share of a 2009 assessment (which was not paid by the Beacon Heights Coalition or any of its members) and the

3

remainder relates to projected future costs.  Because the Beacon Heights Coalition and a debtor entity are both liable under the Consent Decree, and the claim for past assessed but not paid costs and future costs is contingent upon the expenditure of such costs, the Coalition's claim must be disallowed pursuant to section 502(e)(1)(B) of the Bankruptcy Code.

**<u>Tab B</u>**

**BKK Class I Landfill**

**Basis of Objection**

1

**BKK Class I Landfill**

    <u>**Debtors:**</u>

    **Uniroyal**

    **ISCI, Inc.**

    **Chemtura Corporation**

    **Great Lakes**

    <u>**Claims to be disallowed:**</u>

    **BKK Joint Defense Group**

    **MacDermid, Inc.**

1.       Primary Proof of Claim 11493, California Department of Toxic Substances Control

The California Department of Toxic Substances Control ("**CA DTSC**") filed a claim against Uniroyal Chemical Company Limited (Delaware) ("**Uniroyal Chemical"**) in relation to the BKK Class I Landfill. [BKK Ex. 1]. The proof of claim alleges that Uniroyal Chemical is liable to CA DTSC because it sent hazardous waste or other hazardous substances to the BKK Class I Landfill for disposal. CA DTSC asserts an unliquidated claim under the California Hazardous Substances Account Act ("**HSAA**") and the Comprehensive Environmental Response, Compensation, and Liability Act ("**CERCLA**") for future response costs.

2.       Primary Proof of Claim 11546, California Department of Toxic Substances Control

CA DTSC filed a claim against ISCI, Inc. in relation to the BKK Class I Landfill. [BKK Ex. 2]. The proof of claim alleges that ISCI, Inc. is liable to CA DTSC because it sent hazardous waste or other hazardous substances to the BKK Class I Landfill for disposal. CA DTSC asserts an unliquidated claim under HSAA and CERCLA for future response costs.

3.      Primary Proof of Claim 11552 California Department of Toxic Substances Control

CA DTSC filed a claim against Uniroyal in relation to the BKK Class I Landfill.  [BKK Ex. 3].  The proof of claim alleges that Uniroyal is liable to CA DTSC because it sent hazardous waste or other hazardous substances to the BKK Class I Landfill for disposal.  CA DTSC asserts an unliquidated claim under HSAA and CERCLA for future response costs.

4.      Primary Proof of Claim 11659, California Department of Toxic Substances Control

CA DTSC filed a claim against Chemtura in relation to the BKK Class I Landfill.  [BKK Ex. 4].  The proof of claim alleges that Chemtura is liable to CA DTSC because Chemtura sent hazardous waste or other hazardous substances to the BKK Class I Landfill for disposal.  CA DTSC asserts an unliquidated claim under HSAA and CERCLA for future response costs.

5.      Primary Proof of Claim 11665, California Department of Toxic Substances Control

CA DTSC filed a claim against Great Lakes Chemical Corporation in relation to the BKK Class I Landfill.  [BKK Ex. 5].  The proof of claim alleges that Great Lakes Chemical Corporation is liable to CA DTSC because it sent hazardous waste or other hazardous substances to the BKK Class I Landfill for disposal.  CA DTSC asserts an unliquidated claim under HSAA and CERCLA for future response costs.

6.      Primary Proof of Claim 11724, California Department of Toxic Substances Control

CA DTSC filed a claim against Great Lakes Chemical Global, Inc. in relation to the BKK Class I Landfill.  [BKK Ex. 6].  The proof of claim alleges that Great Lakes Chemical Global, Inc. is liable to CA DTSC because it sent hazardous waste or other hazardous substances to the BKK Class I Landfill for disposal.  CA DTSC asserts an unliquidated claim under HSAA and CERCLA for future response costs.

3

7.      **Objection**: Secondary claimant Proof of Claim 11041, BKK Joint Defense Group

The BKK Joint Defense Group filed a proof of claim against ISCI, Inc. in relation to the BKK Class I Landfill. [BKK Ex. 7]. The proof of claim alleges that ISCI, Inc. may be jointly and severally liable to the BKK Joint Defense Group because it deposited waste at the BKK Class I Landfill. The BKK Joint Defense Group asserts a claim pursuant to CERCLA for past recoverable costs in excess of $35,000,000 and future response costs to be incurred by the BKK Joint Defense Group in excess of $500,000,000. Because the BKK Joint Defense Group and a debtor entity are both liable under CERCLA, and the claim for future costs is contingent upon the expenditure of such costs, the BKK Joint Defense Group's claim must be disallowed pursuant to section 502(e)(1)(B) of the Bankruptcy Code.

8.      **Objection**: Secondary claimant Proof of Claim 11048, BKK Joint Defense Group

The BKK Joint Defense Group filed a proof of claim against Chemtura in relation to the BKK Class I Landfill. [BKK Ex. 8]. The proof of claim alleges that Chemtura may be jointly and severally liable to the BKK Joint Defense Group because it deposited waste at the BKK Class I Landfill. The BKK Joint Defense Group asserts a claim pursuant to CERCLA for past recoverable costs in excess of $35,000,000 and future response costs to be incurred by the BKK Joint Defense Group in excess of $500,000,000. Because the BKK Joint Defense Group and a debtor entity are both liable under CERCLA, and the claim for future costs is contingent upon the expenditure of such costs, the BKK Joint Defense Group's claim must be disallowed pursuant to section 502(e)(1)(B) of the Bankruptcy Code.

9.      **Objection**: Secondary claimant Proof of Claim 11798, BKK Joint Defense Group

The BKK Joint Defense Group filed a proof of claim against Great Lakes Chemical Corporation in relation to the BKK Class I Landfill. [BKK Ex. 9]. The proof of claim alleges that Great Lakes Chemical Corporation may be jointly and severally liable to the BKK Joint

4

Defense Group because it deposited waste at the BKK Class I Landfill.  The BKK Joint Defense Group asserts a claim pursuant to CERCLA for past recoverable costs in excess of $35,000,000 and future response costs to be incurred by the BKK Joint Defense Group in excess of $500,000,000.  Because the BKK Joint Defense Group and a debtor entity are both liable under CERCLA, and the claim for future costs is contingent upon the expenditure of such costs, the BKK Joint Defense Group's claim must be disallowed pursuant to section 502(e)(1)(B) of the Bankruptcy Code.

      10.    **Objection**: Secondary claimant Proof of Claim 6264, MacDermid, Inc.

MacDermid filed a proof of claim against Chemtura in relation to the BKK Class I Landfill.  [BKK Ex. 10].  The proof of claim alleges that Chemtura, as a successor of Witco Corporation and its subsidiary Allied-Kelite Company, is liable to MacDermid, Inc. ("**MacDermid**") for future response costs under the terms of an Asset Purchase Agreement. MacDermid asserts an unliquidated claim pursuant to CERCLA for future costs to be incurred by MacDermid.  Because MacDermid and a debtor entity are both liable under CERCLA, and the claim for future costs is contingent upon the expenditure of such costs, MacDermid's claim must be disallowed pursuant to section 502(e)(1)(B) of the Bankruptcy Code.

**<u>Tab C</u>**

**Cleve Reber Landfill Superfund Site**

**Basis of Objection**

**Cleve Reber Landfill Superfund Site**

**Debtors:**

**Chemtura Corporation**

**Monochem, Inc.**

**Claims to be disallowed:**

**Cleve Reber Superfund Site, Cleve Reber Trust Fund**

**Vulcan Materials Company**

1.      Primary Proof of Claim 11672, United States of America

The United States of America, on behalf of the EPA and the United States Department of Commerce filed a claim against Chemtura in relation to the Cleve Reber Landfill Superfund Site. [CR Ex. 1].  The proof of claim alleges that Chemtura is liable to the United States because Uniroyal, as a predecessor to Chemtura, arranged for disposal of hazardous wastes at the Site.  In 1991, the EPA issued a Unilateral Administrative Order ("**UAO**") requiring five PRPs, including Uniroyal, to perform certain remedial actions at the Cleve Reber Landfill Superfund Site.  In 1998, EPA entered into a second AOC with five PRPs, including Uniroyal, pursuant to which EPA settled its claims for past costs and projected future oversight costs.  The United States asserts an unliquidated claim for past response costs and a claim for approximately $409,341 in future response costs under CERCLA and the AOCs.

2.      Primary Proof of Claim 11797, United States of America

The United States of America, on behalf of the EPA filed a claim against Monochem, Inc. ("**Monochem**") in relation to the Cleve Reber Landfill Superfund Site.  [CR Ex. 2].  The proof of claim alleges that Monochem is liable to the United States because Uniroyal, as a predecessor to Chemtura, arranged for disposal of hazardous wastes at the Site.  In 1991, the EPA issued a UAO requiring five PRPs, including Uniroyal, to perform certain remedial actions

2

at the Cleve Reber Landfill Superfund Site.  In 1998, EPA entered into a second AOC with five

PRPs, including Uniroyal, pursuant to which EPA settled its claims for past costs and projected

future oversight costs.  The United States asserts an unliquidated claim for past response costs

and a claim for approximately $409,341 in future response costs.

3.    **Objection**: Secondary claimant Proof of Claim 2402, Cleve Reber Superfund
Site, Cleve Reber Trust Fund

The Cleve Rever Superfund Site, Cleve Reber Trust Fund ("**Trust Fund**") filed a proof

of claim against Monochem in relation to the Cleve Reber Landfill Superfund Site.  [CR Ex. 3].

The proof of claim alleges that Monochem is liable to the Trust Fund for its unliquidated

allocated share of response costs associated with the performance of remedial actions under the

UAO.  Because the Trust Fund and a debtor entity are both liable under the UAO, and the claim

for future costs is contingent upon the expenditure of such costs, the Trust Fund's claim must be

disallowed pursuant to section 502(e)(1)(B) of the Bankruptcy Code.

4.    **Objection**: Secondary claimant Proof of Claim 2403, Vulcan Materials Company

The Vulcan Material Company ("**Vulcan**") filed a proof of claim against Chemtura in

relation to the Cleve Reber Landfill Superfund Site.  [CR Ex. 4].  The proof of claim alleges that

Chemtura is liable to Vulcan for its unliquidated allocated share of response costs associated

with the performance of remedial actions under the UAO.  Because Vulcan and a debtor entity

are both liable under the UAO, and the claim for future costs is contingent upon the expenditure

of such costs, Vulcan's claim must be disallowed pursuant to section 502(e)(1)(B) of the

Bankruptcy Code.

5.    **Objection**: Secondary claimant Proof of Claim 2405, Vulcan Materials Company

Vulcan filed a proof of claim against Monochem in relation to the Cleve Reber Landfill

Superfund Site.  [CR Ex. 5].  The proof of claim alleges that Monochem is liable to Vulcan for

3

its unliquidated allocated share of response costs associated with the performance of remedial actions under the UAO. Because Vulcan and a debtor entity are both liable under the UAO, and the claim for future costs is contingent upon the expenditure of such costs, Vulcan's claim must be disallowed pursuant to section 502(e)(1)(B) of the Bankruptcy Code.

6.     **Objection**: Secondary claimant Proof of Claim 6250, Cleve Reber Superfund Site, Cleve Reber Trust Fund

The Trust Fund filed a proof of claim against Uniroyal Chemical Company Limited (Delaware) in relation to the Cleve Reber Landfill Superfund Site. [CR Ex. 6]. The proof of claim alleges that Uniroyal is liable to the Trust Fund for its unliquidated allocated share of response costs associated with the performance of remedial actions under the UAO. Because the Trust Fund and a debtor entity are both liable under the UAO, and the claim for future costs is contingent upon the expenditure of such costs, the Trust Fund's claim must be disallowed pursuant to section 502(e)(1)(B) of the Bankruptcy Code.

**<u>Tab D</u>**

**Cooper Drum Company Superfund Site**

**Basis of Objection**

**Cooper Drum Company Superfund Site**

<u>**Debtors:**</u>

**Chemtura Corporation**

<u>**Claims to be disallowed:**</u>

**The Cooper Drum Cooperating Parties Group and Each Individual Member**

1.        Primary Proof of Claim 11672, United States of America

The United States of America, on behalf of the United States Environmental Protection

Agency ("**EPA**") and the United States Department of Commerce filed a proof of claim against

Chemtura Corporation ("**Chemtura**") in relation to the Cooper Drum Company Superfund Site

("**Cooper Drum Site**").  [CD Ex. 1].  The proof of claim alleges that Chemtura is liable to the

United States because Chemtura and its predecessors disposed of hazardous wastes at the Cooper

Drum Site.  In February 2009, the EPA issued a Unilateral Administrative Order ("**UAO**") to 43

PRPs, including Chemtura, which requires the recipients to perform certain remedial actions at

the Cooper Drum Site.  The United States asserts a claim under CERCLA and the UAO for

$10,012,809 in unreimbursed response costs and estimated future response costs of

approximately $12 million.

2.        **Objection**: Secondary Claimant Proof of Claim 11200, The Cooper Drum
Cooperating Parties Group and Each Individual Member

The Cooper Drum Cooperating Parties Group and Each Individual Member ("**Cooper**

**Drum Group**"), consisting of parties to the UAO, filed a proof of claim against Chemtura in

relation to the Cooper Drum Site. [CD Ex. 2].  The proof of claim alleges that Chemtura is liable

to the Cooper Drum Group under CERCLA and the UAO for an estimated $12 million in past

recoverable costs and approximately $25 million in future response costs.  Because the Cooper

Drum Group and a debtor entity are both liable under CERCLA and the UAO, and the claim for

2

future costs is contingent upon the expenditure of such costs, the Cooper Drum Group's claim must be disallowed pursuant to section 502(e)(1)(B) of the Bankruptcy Code.

**<u>Tab E</u>**

**Delaware Sand and Gravel Superfund Site**

**Basis of Objection**

**Delaware Sand and Gravel Superfund Site**

<u>**Debtors:**</u>

**Chemtura Corporation**

<u>**Claims to be disallowed:**</u>

**DS&G Remedial Trust**

1.       Primary Proof of Claim 11672, United States of America

The United States of America, on behalf of the United States Environmental Protection Agency and the United States Department of Commerce filed a claim against Chemtura Corporation ("**Chemtura**") in relation to the Delaware Sand and Gravel Superfund Site. [DS Ex. 1].  The proof of claim alleges that Chemtura is liable to the United States because Witco, as a predecessor to Chemtura, arranged for disposal or treatment of hazardous substances at the Delaware Sand and Gravel Superfund Site ("**DS Site**").  On June 14, 1995, the United States District Court for the District of Delaware entered a Consent Decree, requiring the settling Defendants, including Witco, to reimburse the EPA for response costs and to conduct certain remedial activities at the DS Site.  The United States asserts a claim under CERCLA and the Consent Decree for $696,334.74 in unreimbursed response costs already incurred by the EPA, as well as an estimated $13 million in future response costs.

2.       **Objection**: Secondary Claimant Proof of Claim 9499, DS&G Remedial Trust

The DS&G Remedial Trust filed a proof of claim against Chemtura in relation to the DS Site.  [DS Ex. 2].  The proof of claim alleges that Chemtura is liable to the DS&G Remedial Trust for $108,343.11 in past response costs and $469,317.27 in future response costs, pursuant to the Consent Decree and related Agreements.  Because members of the DS&G Remedial Trust and a debtor entity are both liable under CERCLA, the Consent Decree, and related Agreements, and the claim for future costs is contingent upon the expenditure of such costs, the DS&G

2

Remedial Trust's claim should be disallowed pursuant to section 502(e)(1)(B) of the Bankruptcy

Code.

**<u>Tab F</u>**

**Diamond Alkali Superfund Site**

**Basis of Objection**

**Diamond Alkali Superfund Site**

**Debtors:**

**Chemtura Corporation**

**Claims to be disallowed:**

**Mallinckrodt Inc.**

**The Dial Corporation**

**NL Industries, Inc.**

**Givaudan Fragrances Corporation**

**Wolff & Samson Group Members**

**ISP Environmental Services Inc.**

**Lower Passaic River Study Area Site Subscribing Parties**

**Ashland Inc.**

**Non-Public Third Party Joint Defense Group in NJ DEP V Occidental Chemical**

**The Stanley Works**

**Maxus Energy Corporation**

**Tierra Solutions Inc.**

**Passaic Valley Sewerage Commissioners**

**Lower Passaic River Study Area Site Subscribing Parties**

1.      Primary Proof of Claim 11672, United States of America:

The United States of America, on behalf of the United States Environmental Protection Agency and the United States Department of Commerce filed a claim against Chemtura Corporation ("**Chemtura**") in relation to the Diamond Alkali Superfund Site ("**Diamond Alkali Site**"). [DA Ex. 1]. The proof of claim alleges that Chemtura is liable to the United States because Witco, Crompton & Knowles Corporation, and Atlantic Industries, predecessors of Chemtura, were the owners and/or operators of facilities at the time of disposal of hazardous

2

waste and arranged for the disposal of hazardous substances at the Diamond Alkali Site.  In

2004, EPA reached an administrative settlement with various PRPs at the Diamond Alkali Site,

including Chemtura (the "**2004 Settlement**"), requiring the PRPs to pay certain future response

costs.  On May 8, 2007, EPA entered into a second administrative settlement with the PRPs,

including Chemtura, that required certain remedial actions (the "**2007 Settlement**").  The United

States asserts a claim under CERCLA, the 2004 Settlement, and the 2007 Settlement (the

"Settlements") for approximately $15 million in unreimbursed response costs already incurred

by the EPA and approximately $790 million in future response costs.

     2.     **Objection**: Secondary Claimant Proof of Claim 849, Mallinckrodt Inc.

Mallinckrodt Inc., which is a party to the Settlements, filed a proof of claim against

Chemtura in relation to the Diamond Alkali Site.  [DA Ex. 2].  The proof of claim alleges that

Chemtura is liable to Mallinckrodt Inc. for unliquidated cost-recovery and/or contribution claims

pursuant to CERCLA sections 107(a), 113(f)(1), and 113(f)(3)(B), the New Jersey Spill

Compensation and Control Act, N.J.S.A. 58:10-23.11(a)(2), and common law.   Because

Mallinckrodt Inc. and a debtor entity are both liable under the Settlements, CERCLA, the New

Jersey Spill Compensation and Control Act, and common law, and the claim for future costs is

contingent upon the expenditure of such costs, Mallinckrodt Inc.'s claim must be disallowed

pursuant to section 502(e)(1)(B) of the Bankruptcy Code.

     3.     **Objection**: Secondary Claimant Proof of Claim 865, The Dial Corporation

The Dial Corporation ("**Dial**") filed a proof of claim against Chemtura in relation to the

Diamond Alkali Site.  [DA Ex. 3].  The proof of claim alleges that Chemtura is liable to Dial for

unliquidated cost recovery and/or contribution claims pursuant to the New Jersey Spill

Compensation and Control Act, N.J.S.A. 58:10-23.11(a)(2), and common law.  Because Dial and

a debtor entity are both liable under the New Jersey Spill Compensation and Control Act,

113(f)(3)(B), N.J.S.A. 58:10-23.11(a)(2), and common law, and the claim for future costs is contingent upon the expenditure of such costs, Dial's claim must be disallowed pursuant to section 502(e)(1)(B) of the Bankruptcy Code.

4.      **Objection**: Secondary Claimant Proof of Claim 9533, NL Industries, Inc.

NL Industries, Inc. ("**NL**") filed a proof of claim against Chemtura in relation to the Diamond Alkali Site. [DA Ex. 4]. The proof of claim alleges that Chemtura is liable to NL for unliquidated cost-recovery and/or contribution claims pursuant to CERCLA sections 107(a), 113(f)(1), and 113(f)(3)(B), the New Jersey Spill Compensation and Control Act, 113(f)(3)(B), N.J.S.A. 58:10-23.11(a)(2), and common law. Because NL and a debtor entity are both liable under CERCLA, the New Jersey Spill Compensation and Control Act, and common law, and the claim for future costs is contingent upon the expenditure of such costs, NL's claim must be disallowed pursuant to section 502(e)(1)(B) of the Bankruptcy Code.

5.      **Objection**: Secondary Claimant Proof of Claim 9745, Givaudan Fragrances Corporation

Givaudan Fragrances Corporation ("**Givaudan**"), a party to the Settlements, filed a proof of claim against Chemtura in relation to the Diamond Alkali Site. [DA Ex. 5]. The proof of claim incorporates by reference the claim of the Lower Passaic River Study Area Site Subscribing Parties described below. Because Givaudan and a debtor entity are both liable under CERCLA, the New Jersey Spill Compensation and Control Act, and the Settlements, and the claim for future costs is contingent upon the expenditure of such costs, Givaudan's claim must be disallowed pursuant to section 502(e)(1)(B) of the Bankruptcy Code.

6.      **Objection**: Secondary Claimant Proof of Claim 10156, Wolff & Samson Group Members

Wolff & Samson Group Members (the "**W&S Group**") filed a proof of claim against Chemtura in relation to the Diamond Alkali Site. [DA Ex. 6]. The proof of claim alleges that

Chemtura is liable to the W&S Group for unliquidated cost recovery and/or contribution claims pursuant to CERCLA sections 107(a), 113(f)(1), and 113(f)(3)(B). Further, the W&S Group asserts a claim pursuant to the New Jersey Spill Compensation and Control Act, 113(f)(3)(B), N.J.S.A. 58:10-23.11(a)(2), for cleanup and removal costs and natural resource damages. Because the W&S Group and a debtor entity are both liable under CERCLA and the New Jersey Spill Compensation and Control Act, and the claim for future costs is contingent upon the expenditure of such costs, W&S Group's claim must be disallowed pursuant to section 502(e)(1)(B) of the Bankruptcy Code.

       7.    **Objection**: Secondary Claimant Proof of Claim 10277, ISP Environmental Services Inc.

       ISP Environmental Services, Inc. ("**ISP**") filed a proof of claim against Chemtura in relation to the Diamond Alkali site. [DA Ex. 7]. The proof of claim alleges that Chemtura is liable to ISP for unliquidated direct cost recovery and contingent contribution claims pursuant to CERCLA sections 107(a), 113(f)(1), and 113(f)(3)(B). Further, ISP asserts an unliquidated claim pursuant to the New Jersey Spill Compensation and Control Act, 113(f)(3)(B), N.J.S.A. 58:10-23.11(a)(2), for cleanup and removal costs and natural resource damages. Because ISP and a debtor entity are both liable under CERCLA and the New Jersey Spill Compensation and Control Act, and the claim for future costs is contingent upon the expenditure of such costs, ISP's claim must be disallowed pursuant to section 502(e)(1)(B) of the Bankruptcy Code.

       8.    **Objection**: Secondary Claimant Proof of Claim 10483, Lower Passaic River Study Area Site Subscribing Parties

       Lower Passaic River Study Area Site Subscribing Parties (the "**Lower Passaic Parties**"), parties to the Settlements, filed a proof of claim against Chemtura in relation to the Diamond Alkali Site. [DA Ex. 8]. The proof of claim alleges that Chemtura is liable to the Lower Passaic Parties for an unliquidated amount under CERCLA, the New Jersey Spill Compensation and

Control Act, and the Settlements.  Because the Lower Passaic Parties and a debtor entity are both liable under CERCLA, the New Jersey Spill Compensation and Control Act, and the Settlements, and the claim for future costs is contingent upon the expenditure of such costs, the Lower Passaic Parties' claim must be disallowed.

9.      **Objection**: Secondary Claimant Proof of Claim 10750, Non-Public Third Party Joint Defense Group in NJ DEP v. Occidental Chemical

Non-Public Third Party Joint Defense Group in NJ DEP v. Occidental Chemical ("**Joint Defense Group**") filed a proof of claim against Chemtura in relation to the Diamond Alkakli site.  [DA Ex. 9].  The proof of claim alleges that Chemtura is liable to the Joint Defense Group for unliquidated cost recovery and/or contribution claims pursuant to CERCLA sections 107(a), 113(f)(1), and 113(f)(3)(B), the New Jersey Spill Compensation and Control Act, 113(f)(3)(B), N.J.S.A. 58:10-23.11(a)(2), and common law.  Because the Joint Defense Group and a debtor entity are both liable under CERCLA, the New Jersey Spill Compensation and Control Act, and common law, and the claim for future costs is contingent upon the expenditure of such costs, the Joint Defense Group's claim must be disallowed pursuant to section 502(e)(1)(B) of the Bankruptcy Code.

10.     **Objection**: Secondary Claimant Proof of Claim 10895, The Stanley Works

The Stanley Works, a party to the settlements, filed a proof of claim against Chemtura in relation to the Diamond Alkali site.  [DA Ex. 10].  The proof of claim alleges that Chemtura is liable to the Joint Defense Group for unliquidated cost recovery and/or contribution claims pursuant to CERCLA sections 107(a), 113(f)(1), and 113(f)(3)(B), the New Jersey Spill Compensation and Control Act, 113(f)(3)(B), N.J.S.A. 58:10-23.11(a)(2), the Settlements and common law.  Because The Stanley Works and a debtor entity are both liable under CERCLA, the New Jersey Spill Compensation and Control Act, the Settlements, and common law, and the

claim for future costs is contingent upon the expenditure of such costs, The Stanley Works's claim must be disallowed pursuant to section 502(e)(1)(B) of the Bankruptcy Code.

11. **Objection**: Secondary Claimant Proof of Claim 12005, Maxus Energy Corporation

Maxus Energy Corporation ("**Maxus Energy**") filed a proof of claim against Chemtura in relation to the Diamond Alkali Site. [DA Ex. 11]. The proof of claim alleges that Chemtura is liable to Maxus Energy for the recovery of unliquidated response costs and cleanup and removal costs under CERCLA and the New Jersey Spill Compensation Act. Because Maxus Energy and a debtor entity are both liable under CERCLA and the New Jersey Spill Compensation Act, and the claim for future costs is contingent upon the expenditure of such costs, Maxus Energy's claim must be disallowed pursuant to section 502(e)(1)(B) of the Bankruptcy Code.

12. **Objection**: Secondary Claimant Proof of Claim 12011, Tierra Solutions Inc.

Tierra Solutions Inc. ("**Tierra**") filed a proof of claim against Chemtura in relation to the Diamond Alkali Site. [DA Ex. 12]. The proof of claim alleges that Chemtura is liable to Tierra for the recovery of unliquidated response costs and cleanup and removal costs under CERCLA and the New Jersey Spill Compensation Act. Because Tierra and a debtor entity are both liable under CERCLA and the New Jersey Spill Compensation Act, and the claim for future costs is contingent upon the expenditure of such costs, Tierra's claim must be disallowed pursuant to section 502(e)(1)(B) of the Bankruptcy Code.

13. **Objection**: Secondary Claimant Proof of Claim 10894, Passaic Valley Sewerage Commission

The Passaic Valley Sewerage Commission ("**PVSC**") filed a proof of claim against Chemtura. [DA Ex. 13]. The proof of claim alleges that Chemtura is liable to PVSC for unliquidated contribution claims related to the Diamond Alkali Site (and other environmental sites) pursuant to CERCLA, the New Jersey Spill Compensation and Liability Act, and common

7

law for cleanup and investigation costs, natural resource damages, and natural resource damages restoration costs related to environmental contamination.  Further, the proof of claim asserts unliquidated contribution claims based on various agreements and orders.  Because PVSC and a debtor entity are both liable under CERCLA, the New Jersey Spill Compensation and Liability Act, common law, and various agreements and orders, and the claim for future costs is contingent upon the expenditure of such costs, PVSC's claim as it relates to the Diamond Alkali Site must be disallowed pursuant to section 502(e)(1)(B) of the Bankruptcy Code.

14.    **Objection**: Secondary Claimant Proof of Claim 11590 Lower Passaic River Study Area Site Subscribing Parties

The Lower Passaic River Study Area Site Subscribing Parties ("**Subscribing Parties**"), parties to the Agreements, filed a proof of claim against Chemtura.  [DA Ex. 14].  The proof of claim alleges that Chemtura is liable to the Subscribing Parties for an unliquidated amount under CERCLA, the New Jersey Spill Compensation and Control Act, and the Settlements.  Because the Subscribing Parties and a debtor entity are both liable under CERCLA, the New Jersey Spill Compensation and Control Act, and the Settlements, and the claim for future costs is contingent upon the expenditure of such costs, the Subscribing Parties' claim must be disallowed pursuant to section 502(e)(1)(B) of the Bankruptcy Code.

**<u>Tab G</u>**

**Frontier Chemical Site**

**Basis of Objection**

**Frontier Chemical Site**

<u>**Debtors:**</u>

**Chemtura Corporation**

<u>**Claims to be disallowed:**</u>

**Members of the Frontier Chemical Site PRP Group by its Chairman A. Timothy Webster.**

1.      Primary Proof of Claim 12869, New York State Department of Environmental Conversation

The New York State Department of Environmental Conservation (the "**NYDEC**") filed a claim against Chemtura in relation to the Frontier Chemical Site.  [FC Ex. 1].  The proof of claim alleges that Chemtura is liable to the NYDEC because Crompton, a predecessor of Chemtura, and Uniroyal contributed waste to the Frontier Chemical Site.  In 2006, the NYDEC issued a Record of Decision ("**ROD**") that selected a remedy for the Frontier Chemical Site.  The NYDEC asserts a claim under the ROD for $13,350 in future response costs.

2.      **Objection**: Secondary Claimant 2994, Members of the Frontier Chemical Site PRP Group by its Chairman A. Timothy Webster

The Members of the Frontier Chemical Site PRP Group ("**PRP Group**"), parties to the ROD, filed a proof of claim against Chemtura in relation to the Frontier Chemical Site.  [FC Ex. 2].  The proof of claim alleges that Chemtura is liable to the PRP Group for $14,785.25 in future response costs.  Because the PRP Group and a debtor entity are both liable under the ROD, and the claim for future costs is contingent upon the expenditure of such costs, the PRP Group's claim must be disallowed under section 502(e)(1)(B) of the Bankruptcy Code.

**<u>Tab H</u>**

**Gibraltar, PA**

**Basis of Objection**

**Gibraltar, Pennsylvania**

<u>**Debtors:**</u>

**Chemtura Corporation**

**Crompton Colors, Incorporated**

**CNK Chemical Realty Corporation**

<u>**Claims to be disallowed:**</u>

**Sensient Technologies**

1.      Primary Proof of Claim 11234, Pennsylvania Department of Environmental Protection:

The Pennsylvania Department of Environmental Protection ("**Department**") filed a proof of claim against Chemtura Corporation and Crompton Colors, Incorporated ("**Debtors**") in relation to a manufacturing facility in Gibraltar, Pennsylvania ("**Gibraltar Site**"). [Gibraltar Ex. 1].  The proof of claim alleges that Debtors are liable to the Department because hazardous and residual wastes were deposed at the Gibraltar Site during the Debtors' operation of the Site.  The Department asserts a protective claim for an unstated amount of costs relating to Debtors' environmental obligations, post-petition liabilities and response costs, and civil penalties for environmental law violations relating to the Gibraltar Site.

2.      **Objection**: Secondary claimant Proof of Claim 12060, Sensient Technologies Corporation

Sensient Technologies Corporation ("**STC**") filed a proof of claim against Chemtura Corporation in relation to the Gibraltar Site.  [Gibraltar Ex. 2].  The proof of claim alleges that Chemtura is liable to STC for approximately $378,036 to $767,390, pursuant to a November 31, 2001 Purchase Agreement (the "**Purchase Agreement**"), for monitoring and reporting of groundwater data and the maintenance of impoundments at the Gibraltar Site. Further, STC asserts a claim for any additional amounts that may be due or will become due by Chemtura

2

under or arising with respect to Purchase Agreement as well as those amounts that are unliquidated and/or contingent that remain outstanding. Because STC and Chemtura are both liable under CERCLA, and the claim for future costs is contingent upon the expenditure of such costs, STC's claim must be disallowed pursuant to section 502(e)(1)(B) of the Bankruptcy Code.

3.     **Objection**: Secondary claimant Proof of Claim 12104, Sensient Technologies Corporation:

Sensient Technologies Corporation ("**STC**") filed a proof of claim against Crompton Colors Incorporated ("**Crompton**") in relation to the Gibraltar Site. [Gibraltar Ex. 3]. The proof of claim alleges that Chemtura is liable to STC for approximately $378,036 to $767,390, pursuant to their November 31, 2001 Purchase Agreement (the "**Purchase Agreement**"), for current and future costs for eradication, monitoring, and mowing services at the Gibraltar Site. Further, STC asserts a claim for any additional amounts that may be due or will become due by Crompton under or arising with respect to Purchase Agreement as well as those amounts that are unliquidated and/or contingent that remain outstanding. Because STC and Crompton are both liable under CERCLA, and the claim for future costs is contingent upon the expenditure of such costs, STC's claim must be disallowed pursuant to section 502(e)(1)(B) of the Bankruptcy Code.

4.     **Objection**: Secondary claimant Proof of Claim 12129, Sensient Technologies Corporation:

STC filed a proof of claim against CNK Chemical Realty Corporation ("**CNK**") in relation to the Gibraltar Site. [Gibraltar Ex. 3]. The proof of claim consists of the same facts and allegations regarding the Gibraltar Site as identified in Proof Claim #12104. Because STC and CNK are both liable under CERCLA, and the claim for future costs is contingent upon the expenditure of such costs, STC's claim must be disallowed pursuant to section 502(e)(1)(B) of the Bankruptcy Code.

**<u>Tab I</u>**

**Hazardous Site Inventory Site #10123 (ARIVEC)**

**Basis of Objection**

**Hazardous Site Inventory Site #10123 (ARIVEC)**

>**Debtors:**
>
>**Bio-Lab, Inc.**
>
>**Claims to be disallowed:**
>
>**Arivec PRP Group**

1.      Primary Proof of Claim 12869, New York State Department of Environmental Conversation

The Georgia Department of Natural Resources filed a claim against Chemtura in relation to the Hazardous Site Inventory Site #10123 (ARIVEC) ("**Hazardous Site Inventory Site**") [HSI Ex. 1].  The proof of claim alleges that Chemtura is liable to the Georgia Department of Natural Resources under the Georgia Hazardous Site Response Act, O.C.G.A. § 12-8-96 ("**HSRA**") for $89,887.25 in corrective action costs and an unliquidated amount of future response costs.

2.      **Objection**: Secondary Claimant Proof of Claim 6142, Arivec PRP Group

The Arivec PRP Group (the "PRP Group") filed a proof a claim against Bio-Lab, Inc. in relation to the Hazardous Site Inventory Site.  [HSI Ex. 2].  The proof of claim alleges that Bio-Lab, Inc. is liable to the PRP Group because Bio-Lab, Inc., a member of the PRP Group, sent hazardous waste to the Hazardous Site Inventory Site.  The PRP Group asserts an unliquidated claim for future response costs, pursuant to CERCLA and the HSRA.  Because the PRP Group and a debtor entity are both liable under CERCLA and the HSRA, and the claim for future costs is contingent upon the expenditure of such costs, the PRP Group's claim must be disallowed pursuant to section 502(e)(1)(B) of the Bankruptcy Code.

1

**<u>Tab J</u>**

**Interstate Lead Company Superfund Site**

**Basis of Objection**

**Interstate Lead Company Superfund Site**

**<u>Debtors:</u>**

**Chemtura**

**<u>Claims to be disallowed:</u>**

**ILCO Site Remediation Group**

1.     Primary Proof of Claim 11672, United States of America

The United States of America, on behalf of the EPA and the United States Department of Commerce filed a proof of claim against Chemtura in relation to the Interstate Lead Company Superfund Site ("**Interstate Lead Site**").  [IL Ex. 1].  The proof of claim alleges that Chemtura is liable to the United States as a member of the ILCO Site Remediation Group.  The United States asserts a claim for unliquidated past and future response costs under the ILCO Site Remediation Group Agreement (the "Agreement") and CERCLA.

2.     **Objection**: Secondary Claimant Proof of Claim 10836, ILCO Site Remediation Group

The ILCO Site Remediation Group filed a proof of claim against Chemtura in relation to the Interstate Lead Site.  [IL Ex. 2].  The proof of claim alleges that Chemtura is liable under the Agreement for $732,973.88 in future cleanup costs.  Further, the ILCO Site Remediation Group asserts a claim under § 107(a) of CERCLA for estimated future response costs of $31,816,555.  Because the ILCO Site Remediation Group and a debtor entity are both liable under the Agreement and CERCLA, and the claim for future costs is contingent upon the expenditure of such costs, the ILCO Site Remediation Group's claim must be disallowed pursuant to section 502(e)(1)(B) of the Bankruptcy Code.

**<u>Tab K</u>**

**Jadco Hughes Superfund Site**

**Basis of Objection**

**Jadco Hughes Superfund Site**

**Debtors:**

**Chemtura**

**Claims to be disallowed:**

**Jadco Hughes PRP Group**

1.        Primary Proof of Claim 11672, United States of America

The United States of America, on behalf of the EPA and the United States Department of Commerce filed a proof of claim against Chemtura in relation to the Jadco Hughes Superfund Site ("**Jadco Hughes Site**").  [JH Ex. 1].  The proof of claim alleges that Chemtura is liable to the United States because Chemtura, as a successor of Uniroyal and Crompton, is a PRP at the Jadco Hughes Site.  The United States asserts a claim pursuant to § 107(a) of CERCLA for unliquidated past and future response costs.

2.        **Objection**: Secondary Claimant Proof of Claim 6295, Jadco Hughes PRP Group

The Jadco Hughes PRP Group filed a proof of claim against Chemtura in relation to the Jadco Hughes Site.  [JH Ex. 2].  The proof of claim alleges that Chemtura is liable to the Jadco Hughes PRP Group because Chemtura sent hazardous waste to the Jadco Hughes Site.  The Jadco Hughes PRP Group asserts an unliquidated claim for future response costs pursuant to § 107(a) of CERCLA.  Because the Jadco Hughes PRP Group and a debtor entity are both liable under CERCLA, and the claim for future costs is contingent upon the expenditure of such costs, the Jadco Hughes PRP Group's claim must be disallowed pursuant to section 502(e)(1)(B) of the Bankruptcy Code.

**<u>Tab L</u>**

**Landia Chemical Company Superfund Site**

**Basis of Objection**

**Landia Chemical Company Superfund Site**

<u>**Debtors:**</u>

**Chemtura**

<u>**Claims to be disallowed:**</u>

**BASF Sparks LLC c/o BASF Corporation**

**PCS Joint Venture Ltd.**

**Agrico Chemical Company**

1.      Primary Proof of Claim 11672, United States of America

The United States of America, on behalf of the EPA and the United States Department of Commerce filed a proof of claim against Chemtura in relation to the Landia Chemical Company Superfund Site ("**Landia Site**").  [LC Ex. 1].  The proof of claim alleges that Chemtura is liable to the United States because Southern Mill Creek Products Company, a predecessor of Chemtura, arranged for disposal or treatment, or arranged with a transporter for disposal or treatment, of hazardous substances.  The United States asserts a claim under § 107(a) of CERCLA for unliquidated past response costs and approximately $8.5 million in future response costs.

2.      **Objection**: Secondary Claimant Proof of Claim 14245, PCS Joint Venture Ltd.

PCS Joint Venture Ltd. ("**PCS**") filed a proof of claim against Chemtura in relation to the Landia Site.  [LC Ex. 2].  The proof of claim alleges that Chemtura is liable to PCS for $8,504,200 pursuant to the August 28, 2009 Consent Decree (the "**Consent Decree**"), to which Chemtura is not a party.  Further, PCS asserts a claim pursuant to §107 of CERCLA for $478,543.34 for future EPA oversight costs.  Because PCS and a debtor entity are liable under CERCLA, and the claim for future costs is contingent upon the expenditure of such costs, PCS's claim must be disallowed pursuant to section 502(e)(1)(B) of the Bankruptcy Code.

2

3.    **Objection**: Secondary Claimant Proof of Claim 14247, Agrico Chemical Company

Agrico Chemical Company ("**Agrico**") filed a proof of claim against Chemtura in relation to the Landia Site.  [LC Ex. 3].  The proof of claim alleges that Chemtura is liable to Agrico for $8,504,200 pursuant to the August 28, 2009 Consent Decree (the "**Consent Decree**"), to which Chemtura is not a party.  Further, Agrico asserts a claim pursuant to §107 of CERCLA for $478,543.34 for future EPA oversight costs.  Because Agrico and a debtor entity are liable under CERCLA, and the claim for future costs is contingent upon the expenditure of such costs, Agrico's claim must be disallowed pursuant to section 502(e)(1)(B) of the Bankruptcy Code.

**<u>Tab M</u>**

**Laurel Park Inc. Superfund Site**

**Basis of Objection**

**Laurel Park Inc. Superfund Site**

   **Debtors:**

   **Chemtura**

   **Naugatuck Treatment Company**

   **Claims to be disallowed:**

   **CR USA Inc.**

   **Laurel Park Coalition**

   **Flabeg Technical Glass US Corporation**

   **Unisys Corporation**

   **Cadbury Beverages Inc.**

   **The Kerite Company**

1.      Primary Proof of Claim 11672, United States of America

The United States of America, on behalf of the EPA and the United States Department of Commerce filed a proof of claim against Chemtura in relation to the Laurel Park Inc. Superfund Site ("**Laurel Park Site**").  [LP Ex. 1].  The proof of claim alleges that Chemtura is liable to the United States because Uniroyal, as a successor to Chemtura, arranged for transport of hazardous materials at the Laurel Park Site.  In 1992, 19 settling defendants, including Uniroyal, entered into a Consent Decree requiring them to take certain remedial actions.  The United States asserts a claim pursuant to the Consent Decree and § 107(a) of CERCLA for unliquidated past response costs and approximately $19,578,214 in future response costs

2.      Primary Proof of Claim 11993, United States of America

The United States of America, on behalf of the EPA filed a proof of claim against Naugatuck Treatment Company ("**Naugatuck**") in relation to the Laurel Park Site.  [LP Ex. 2]. The proof of claim alleges that Naugatuck is liable to the United States because Naugatuck or its

predecessors arranged for transport of hazardous materials at the Laurel Park Site.  In 1992, 19

settling defendants, including Naugatuck, entered into a Consent Decree requiring them to take

certain remedial actions.  The United States asserts a claim pursuant to the Consent Decree and §

107(a) of CERCLA for unliquidated past response costs and approximately $19,578,214 in

future response costs.

> 3.      Primary Proof of Claim 11513, The Connecticut Commissioner of Environmental
Protection

The Commissioner filed a proof of claim against Chemtura in relation to the Laurel Park

Site.  [LP Ex. 3].  The proof of claim alleges that Chemtura is obligated to remediate the Laurel

Park Site under the terms of the Consent Decree, to which the Commissioner is a party.  The

Commissioner asserts a claim pursuant to the Consent Decree for $8,251,196 in future response

costs.

> 4.      Primary Proof of Claim 11569, The Connecticut Commissioner of Environmental
Protection

The Connecticut Commissioner of Environmental Protection (the "Commissioner") filed

a proof of claim against Naugatuck in relation to the Laurel Park Site.  [LP Ex. 4].  The proof of

claim alleges that Naugatuck is obligated to remediate the Laurel Park Site under the terms of the

Consent Decree, to which the Commissioner is a party.  The Commissioner asserts a claim

pursuant to the Consent Decree for $8,251,196 in future response costs.

> 5.      **Objection**: Secondary Claimant Proof of Claim 10123, CR USA Inc.

CR USA Inc. ("**CR**"), a party to the Consent Decree, filed a proof of claim against

Chemtura in relation to the Laurel Park Site.  [LP Ex. 5].  CR adopts and incorporates the claim

filed by the Laurel Park Coalition.  As such, it asserts an unliquidated claim pursuant to the

Consent Decree for costs associated with the remediation of the Laurel Park Site.  Because CR

and a debtor entity are both liable under the Consent Decree, and the claim for the unpaid

3

assessment and projected future costs is contingent upon the expenditure of such costs, CR's claim must be disallowed pursuant to section 502(e)(1)(B) of the Bankruptcy Code.

6.    **Objection**: Secondary Claimant Proof of Claim 10294, Laurel Park Coalition

Laurel Park Coalition (the **"Coalition"**), consisting of parties to the Consent Decree, filed a proof of claim against Chemtura in relation to the Laurel Park Site.  [LP Ex. 6].  The proof of claim alleges that the members of the Coalition, including Chemtura, entered into a Sharing Agreement on March 8, 1991.  The Coalition asserts a claim for $6,646,147 pursuant to the Consent Decree and Sharing Agreement.  $172,480 of this amount relates to the Debtors' share of a 2009 assessment (which was not paid by the Laurel Park Coalition or any of its members) and the remainder relates to projected future costs.  Because the Coalition and a debtor entity are both liable under the Consent Decree and Sharing Agreement, and the claim for the unpaid assessment and projected future costs is contingent upon the expenditure of such costs, the Coalition's claim must be disallowed pursuant to section 502(e)(1)(B) of the Bankruptcy Code.

7.    **Objection**: Secondary Claimant Proof of Claim 10296, Laurel Park Coalition

The Coalition, consisting of parties to the Consent Decree, filed a proof of claim against Naugatuck in relation to the Laurel Park Site.  [LP Ex. 7].  The proof of claim alleges that the members of the Coalition, including Naugatuck, entered into a Sharing Agreement on March 8, 1991.  The Coalition asserts a claim for $6,646,147 pursuant to the Consent Decree and Sharing Agreement.  $172,480 of this amount relates to the Debtors' share of a 2009 assessment (which was not paid by the Laurel Park Coalition or any of its members) and the remainder relates to projected future costs.  Because the Coalition and a debtor entity are both liable under the Consent Decree and Sharing Agreement, and the claim for the unpaid assessment and projected future costs is contingent upon the expenditure of such costs, the Coalition's claim must be disallowed pursuant to section 502(e)(1)(B) of the Bankruptcy Code.

4

8.     **Objection**: Secondary Claimant Proof of Claim 10319, CR USA Inc.

CR, a party to the Consent Decree, filed a proof of claim against Naugatuck in relation to the Laurel Park Site.  [LP Ex. 8].  CR adopts and incorporates the claim filed by the Laurel Park Coalition.  As such, it asserts an unliquidated claim pursuant to the Consent Decree for costs associated with the remediation of the Laurel Park Site.  Because CR and a debtor entity are both liable under the Consent Decree, and the claim for the unpaid assessment and projected future costs is contingent upon the expenditure of such costs, CR's claim must be disallowed pursuant to section 502(e)(1)(B) of the Bankruptcy Code.

9.     **Objection**: Secondary Claimant Proof of Claim 10533, Flabeg Technical Glass US Corporation

Flabeg Technical Glass US Corporation ("**Flabeg**"), a party to the Consent Decree, filed a proof of claim against Chemtura in relation to the Laurel Park Site.  [LP Ex. 9].  Flabeg alleges that in September 1995, Chemtura and Flabeg entered into a Settlement Agreement that requires Chemtura to indemnify Flabeg for any assessments under the Sharing Agreement for greater than $650,000.  Flabeg asserts a claim for $422,314.80, pursuant to the Settlement Agreement and the Sharing Agreement.  Because Flabeg and a debtor entity are both liable under the Consent Decree, and the claim for future costs is contingent upon the expenditure of such costs, Flabeg's claim must be disallowed pursuant to section 502(e)(1)(B) of the Bankruptcy Code.

10.    **Objection**: Secondary Claimant Proof of Claim 10869, Unisys Corporation

Unisys Corporation ("**Unisys**"), filed a proof of claim against Naugatuck in relation to the Laurel Park Site.  [LP Ex. 10].  Unisys asserts a claim for $6,646,147 pursuant to the Consent Decree and Sharing Agreement.  $172,480 of this amount relates to the Debtors' share of a 2009 assessment (which was not paid by the Laurel Park Coalition or any of its members) and the remainder relates to projected future costs.  Because Unisys and a debtor entity are both liable

under the Consent Decree and Sharing Agreement, and the claim for the unpaid assessment and projected future costs is contingent upon the expenditure of such costs, Unisys's claim must be disallowed pursuant to section 502(e)(1)(B) of the Bankruptcy Code.

11.     **Objection**: Secondary Claimant Proof of Claim 10873, Cadbury Beverages Inc., f/k/a Cadbury Schwepps

Cadbury Beverages Inc., f/k/a Cadbury Schwepps ("**Cadbury**"), filed a proof of claim against Naugatuck in relation to the Laurel Park Site.  [LP Ex. 11].  Cadbury asserts a claim for $6,646,147 pursuant to the Consent Decree and Sharing Agreement.  $172,480 of this amount relates to the Debtors' share of a 2009 assessment (which was not paid by the Laurel Park Coalition or any of its members) and the remainder relates to projected future costs.  Because Cadbury and a debtor entity are both liable under the Consent Decree and Sharing Agreement, and the claim for the unpaid assessment and projected future costs is contingent upon the expenditure of such costs, Cadbury's claim must be disallowed pursuant to section 502(e)(1)(B) of the Bankruptcy Code.

12.     **Objection**: Secondary Claimant Proof of Claim 11473, The Kerite Company

The Kerite Company ("**Kerite**"), a party to the Consent Decree, filed a proof of claim against Naugatuck in relation to the Laurel Park Site.  [LP Ex. 12].  Kerite adopts and incorporates the claim filed by the Laurel Park Coalition.  As such, it asserts an unliquidated claim pursuant to the Consent Decree for costs associated with the remediation of the Laurel Park Site.  Because Kerite and a debtor entity are both liable under the Consent Decree, and the claim for the unpaid assessment and projected future costs is contingent upon the expenditure of such costs, Kerite's claim must be disallowed pursuant to section 502(e)(1)(B) of the Bankruptcy Code.

13.    **Objection**: Secondary Claimant Proof of Claim 11475, The Kerite Company

Kerite, a party to the Consent Decree, filed a proof of claim against Chemtura in relation to the Laurel Park Site.  [LP Ex. 13].  Kerite adopts and incorporates the claim filed by the Laurel Park Coalition.  As such, it asserts an unliquidated claim pursuant to the Consent Decree for costs associated with the remediation of the Laurel Park Site.  Because Kerite and a debtor entity are both liable under the Consent Decree, and the claim for the unpaid assessment and projected future costs is contingent upon the expenditure of such costs, Kerite's claim must be disallowed pursuant to section 502(e)(1)(B) of the Bankruptcy Code.

14.    **Objection**: Secondary Claimant Proof of Claim 11807, Unisys Corporation

Unisys, a party to the Consent Decree, filed a proof of claim against Chemtura in relation to the Laurel Park Site.  [LP Ex. 14].  Unisys asserts a claim for $6,646,147 pursuant to the Consent Decree and Sharing Agreement.  $172,480 of this amount relates to the Debtors' share of a 2009 assessment (which was not paid by the Laurel Park Coalition or any of its members) and the remainder relates to projected future costs.  Because Unisys and a debtor entity are both liable under the Consent Decree and Sharing Agreement, and the claim for the unpaid assessment and projected future costs is contingent upon the expenditure of such costs, Unisys's claim must be disallowed pursuant to section 502(e)(1)(B) of the Bankruptcy Code.

15.    **Objection**: Secondary Claimant Proof of Claim 13942, Cadbury Beverages f/k/a Cadbury Schwepps

Cadbury, a party to the Consent Decree, filed a proof of claim against Chemtura in relation to the Laurel Park Site.  [LP Ex. 15].  Cadbury asserts a claim for $6,646,147 pursuant to the Consent Decree and Sharing Agreement.  $172,480 of this amount relates to the Debtors' share of a 2009 assessment (which was not paid by the Laurel Park Coalition or any of its members) and the remainder relates to projected future costs.  Because Cadbury and a debtor

7

entity are both liable under the Consent Decree and Sharing Agreement, and the claim for the unpaid assessment and projected future costs is contingent upon the expenditure of such costs, Cadbury's claim must be disallowed pursuant to section 502(e)(1)(B) of the Bankruptcy Code.

16.     **Objection**: Secondary Claimant Proof of Claim 10935, Flabeg Technical Glass US Corporation

Flabeg filed a proof of claim against Chemtura in relation to the Laurel Park Site.  [LP Ex. 16].  Flabeg asserts a claim for $616,525.68, pursuant to the Settlement Agreement and the Sharing Agreement.  Because Flabeg and a debtor entity are both liable under the Consent Decree, and the claim for future costs is contingent upon the expenditure of such costs, Flabeg's claim must be disallowed pursuant to section 502(e)(1)(B) of the Bankruptcy Code.

**<u>Tab N</u>**

**LWD Site**

**Basis of Objection**

**LWD Site**

**Debtors:**

**Chemtura**

**Crompton Colors Inc.**

**Great Lakes Chemical Corporation**

**Claims to be disallowed:**

**LWD PRP Group**

**Givaudan Flavors**

1.    Primary Proof of Claim 11672, United States of America

The United States of America, on behalf of EPA and the United States Department of Commerce filed a claim against Chemtura in relation to the LWD Site.  [LWD Ex. 1].  The proof of claim alleges that Chemtura is liable to the United States because Crompton Knowles, Desoto, Uniroyal, and Witco, as predecessors to Chemtura arranged for disposal of hazardous substances at the LWD Site.  The United States asserts a claim pursuant to § 107(a) of CERCLA for approximately $35 million in past response costs and unliquidated future response costs.

2.    **Objection**:  Secondary Claimant Proof of Claim 5928, LWD PRP Group

LWD PRP Group filed a proof of claim against Crompton Colors Incorporated ("**Crompton**") in relation to the LWD Site.  [LWD Ex. 2].  The proof of claim alleges that Crompton is liable to the LWD PRP Group for past costs incurred and future unliquidated cleanup costs pursuant to § 107(a) of CERCLA.  Because the LWD PRP Group and a debtor entity are both liable under CERCLA, and the claim for future costs is contingent upon the expenditure of such costs, the LWD PRP Group's claim must be disallowed pursuant to section 502(e)(1)(B) of the Bankruptcy Code.

2

3.    **Objection**: Secondary Claimant Proof of Claim 5962, LWD PRP Group

LWD PRP Group filed a proof of claim against Great Lakes Chemical Corporation ("**Great Lakes**") in relation to the LWD Site. [LWD Ex. 3]. The proof of claim alleges that Great Lakes is liable to the LWD PRP Group for past costs incurred and future unliquidated cleanup costs pursuant to § 107(a) of CERCLA. Because the LWD PRP Group and a debtor entity are both liable under CERCLA, and the claim for future costs is contingent upon the expenditure of such costs, the LWD PRP Group's claim must be disallowed pursuant to section 502(e)(1)(B) of the Bankruptcy Code.

4.    **Objection**: Secondary Claimant Proof of Claim 5969, LWD PRP Group

LWD PRP Group filed a proof of claim against Chemtura in relation to the LWD Site. [LWD Ex. 4]. The proof of claim alleges that Chemtura is liable to the LWD PRP Group for past costs incurred and future unliquidated cleanup costs pursuant to § 107(a) of CERCLA. Because the LWD PRP Group and a debtor entity are both liable under CERCLA, and the claim for future costs is contingent upon the expenditure of such costs, the LWD PRP Group's claim must be disallowed pursuant to section 502(e)(1)(B) of the Bankruptcy Code.

5.    **Objection**: Secondary Claimant Proof of Claim 10495, Givaudan Flavors Corporation

Givaudan Flavors Corporation ("**Givaudan**") filed a proof of claim against Great Lakes in relation to the LWD Site. [LWD Ex. 5]. The proof of claim adopts and incorporates by reference the claim of the LWD PRP Group. As such, it alleges that Great Lakes is liable to the LWD PRP Group for past costs incurred and future unliquidated cleanup costs pursuant to § 107(a) of CERCLA. Because Givaudan and a debtor entity are both liable under CERCLA, and the claim for future costs is contingent upon the expenditure of such costs, Givaudan's claim must be disallowed pursuant to section 502(e)(1)(B) of the Bankruptcy Code.

6.    **Objection**:    Secondary Claimant Proof of Claim 11249, Givaudan Flavors Corporation

Givaudan filed a proof of claim against Chemtura in relation to the LWD Site.  [LWD Ex. 6].  The proof of claim adopts and incorporates by reference the claim of the LWD PRP Group.  As such, it alleges that Great Lakes is liable to the LWD PRP Group for past costs incurred and future unliquidated cleanup costs pursuant to § 107(a) of CERCLA.  Because Givaudan and a debtor entity are both liable under CERCLA, and the claim for future costs is contingent upon the expenditure of such costs, Givaudan's claim must be disallowed pursuant to section 502(e)(1)(B) of the Bankruptcy Code.

**<u>Tab O</u>**

**Malone Service Company Superfund Site**

**Basis of Objection**

**Malone Service Company Superfund Site**

**Debtors:**

**Chemtura**

**Claims to be disallowed:**

**Malone Cooperating Parties**

1.      Primary Proof of Claim 11672, United States of America

The United States of America, on behalf of EPA and the United States Department of Commerce filed a proof of claim against Chemtura in relation to the Malone Service Company Superfund Site ("**Malone Site**").  [MS Ex. 1].  The proof of claim alleges that Chemtura is liable to the United States because Uniroyal, Witco, Desoto, and Great Lakes, as predecessors to Chemtura, arranged for disposal or transport of hazardous materials at the Malone Site.  The United States asserts a claim pursuant to § 107(a) of CERCLA for $17,589,973 in past response costs and $54,018,630 in future response costs.

2.      Primary Proof of Claim 1976, Texas Commission on Environmental Quality

The Texas Commission on Environmental Quality ("**TCEQ**") filed a proof of claim against Chemtura in relation to the Malone Site.  [MS Ex. 2].  The proof of claim alleges that Chemtura is liable to TCEQ, as a PRP at the Malone Site, for approximately $1,500,000 in past response costs and unliquidated future response costs.

3.      **Objection**: Secondary Claimant Proof of Claim 10576, Malone Cooperating Parties

The Malone Cooperating Parties filed a proof of claim against Chemtura in relation to the Malone Site.  [MS Ex. 3].  The proof of claim alleges that Chemtura is liable to the Malone Cooperating Parties, pursuant to CERCLA, for approximately $108,890 in past EPA response costs, future projected costs and damages for injuries to natural resources at the Malone Site.

2

Because the Malone Cooperating Parties and a debtor entity are both liable under CERCLA, and the claim for future costs is contingent upon the expenditure of such costs, the Malone Cooperating Parties' claim must be disallowed pursuant to section 502(e)(1)(B) of the Bankruptcy Code.

**<u>Tab P</u>**

**Stauffer-LeMoyne Superfund Site**

**Basis of Objection**

**Former Stauffer-LeMoyne Superfund Site**

**<u>Debtor:</u>**

**Chemtura Corporation**

**<u>Claims to be disallowed:</u>**

**Azko Nobel Chemicals**

1.        Primary Proof of Claim 11672, United States of America

The United States of America filed proof of claim on behalf of the United States Environmental Protection Agency and the United States Department of Commerce against Chemtura Corporation ("**Chemtura**") in connection with the Stauffer-LeMoyne Superfund Site in LeMoyne, Alabama ("**Stauffer-LeMoyne Site**").   [Stauffer-LeMoyne Ex. 1].   The proof of claim alleges that Chemtura (as a successor to Witco Corporation) is liable to the Government because Witco Corporation owned and operated the Stauffer-LeMoyne Site at the time of disposal of hazardous substances there. In 1999, EPA issued a Record of Decision ("**ROD**") requiring construction of a soil flushing system in the OU-2 area of the Stauffer-LeMoyne Site to accelerate the migration of contaminants from the subsurface soil into the groundwater, where contaminants will be remediated by the a treatment system, monitoring of subsurface, and institutional controls. In 2001, Witco and Azko Nobel Chemicals Inc. ("**ANCI**") became entered into a Consent Decree (the "**Consent Decree**") issued by the United States District Court for the Southern District of Alabama pursuant to which Witco was required to perform the remedy at OU-2. Government asserts a claim against Chemtura under CERCLA and the Consent Decree for at least $2 million for remaining work required by the Consent Decree, future response costs at the Stauffer-LeMoyne Site, plus interest.

2

2.    **Objection**: Secondary claimant Proof of Claim 11861, Azko Nobel Chemicals, Inc.:

ANC, also a party to the Consent Decree, filed a proof of claim against Chemtura in relation to the Stauffer-Lemoyne Site.  [Stauffer-LeMoyne Ex. 2].  The proof of claim alleges that Chemtura is liable to ANCI because Witco (Chemtura's predecessor at the Stauffer-LeMoyne Site) entered into a 1997 Past Cost Reimbursement Agreement (the "**Reimbursement Agreement**") with ANIC, pursuant to which Witco agreed to reimburse ANIC for the cost ANIC incurred with respect to the operation including without limitation the treatment, operation, and maintenance of the ground-water intercept, of the Stauffer-LeMoyne Site.  Further, in March 2000, ANCI and CK Witco Corporation ("**CK Witco**") (a successor to Witco and a predecessor to Chemtura) entered into a Site Environmental Remediation and Access Agreement (the "**Remediation Agreement**"), pursuant to which CK Witco and its successor  would remediate the Stauffer-LeMoyne Site, reimburse ANCI for costs ANCI incurred for activities undertaken pursuant to the Reimbursement Agreement, and indemnify and defend ANCI from liabilities incurred in connection with CK Witco's activities under the Remediation Agreement or breach of the same. ANCI asserts a claim pursuant to CERCLA, the 2001 Consent Decree, the 2000 Remediation Agreement, and the 1997 Past Cost Remediation Agreement for approximately $4,084,652.38 broken down as: $876,960.11 for fixed ANCI environmental costs, $1,557,692.27 for contingent ANCI environmental costs, and a maximum of $1,650,000.00 for contingent ANCI Remediation Costs.  Because ANCI and Chemtura are both liable under CERCLA and 2001 Consent Decree, and the claim for future costs is contingent upon the expenditure of such costs, ANCI's claim must be disallowed pursuant to section 502(e)(1)(B) of the Bankruptcy Code.

**<u>Tab Q</u>**

**Stoney Creek Technologies Site**

**Basis of Objection**

**Stoney Creek Technologies Site**

    <u>**Debtors:**</u>

    **Chemtura Corporation**

    <u>**Claims to be disallowed:**</u>

    **Stoney Creek Technologies**

    1.      Primary Proof of Claim 11672, United States of America

United States of America filed a proof of claim at the request of the EPA and the United States Department of Commerce, acting through the National Oceanic and Atmospheric Administration, against Chemtura Corporation ("**Chemtura**") in relation to 4th Street, Trainer, Delaware County, Pennsylvania ("**Stoney Creek Technologies Site**"). [Stoney Creek Ex. 1]. The proof of claim alleges that Chemtura is liable to Government as a former owner or operator of the Stoney Creek Technologies Site and as a successor to Witco Corporation who, by contract, agreement, or otherwise, arranged for disposal or treatment of hazardous substances at the Stoney Creek Technologies Site. On August 3, 2007, EPA issued an administrative order (the "**2007 Administrative Order**") directing Chemtura to remove certain chemical inventory from the Stoney Creek Technologies Site. On February 5, 2008, EPA issued an administrative order (the "**2008 Administrative Order**"), which directed Chemtura to manage wastewater at the Stoney Creek Technologies Site to prevent discharges of oil from the facility. Government asserts a claim under CERCLA and the Administrative Orders for $1,249,707 in unreimbursed costs already incurred by the EPA, as well as an estimated $4,487,135 for the cost of remaining work at the Site. Government also asserts a claim for $2,452,721.49, pursuant to CERCLA and the 2008 Administrative Order, for civil penalties caused by Chemtura's failure to operate the wastewater management treatment plant as required by the 2008 Administrative Order.

2

2.      **Objection**: Secondary claimant Proof of Claim 12302, Stoney Creek
Technologies LLC:

Stoney Creek Technologies ("**SCT**") filed a proof of claim against Chemtura Corporation
in relation to the Stoney Creek Technologies Site.  [Stoney Creek Ex. 2].  The proof of claim
alleges that Chemtura is liable to SCT for at least $1,700,000, pursuant to their June 30, 1998
Toll Manufacturing Agreement (the "**1998 Toll Manufacturing Agreement**"), to clean,
decommission and/or dispose of tanks and containers at the Stoney Creek Technologies Site.
Because SCT and Chemtura are both liable under CERCLA, and the claim for future costs is
contingent upon the expenditure of such costs, STC's claim must be disallowed pursuant to
section 502(e)(1)(B) of the Bankruptcy Code.