**Tab 10 BKK Ex. 10**

B 10 (Official Form 10) (12/08 Modified CEM)

**UNITED STATES BANKRUPTCY COURT SOUTHERN DISTRICT OF NEW YORK**

**In re Chemtura Corporation, et al., Case No. 09-11233 (REG) (Jointly Administered)**

PROOF OF CLAIM

Name of Debtor:                                                          Case Number:

NOTE: *This form should not be used to make a claim for administrative expenses arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503(a).*

| | |
|---|---|
| Name of Creditor (the person or other entity to whom the debtor owes money or property):<br><br>MacDermid<br>245 Freight Street<br>Waterbury, CT 06702<br>Attn: John L. Cordani, General Counsel and Secretary | ☐ Check this box to indicate that this claim amends a previously filed claim.<br><br>Court Claim Number:_____<br>*(If known)*<br><br>Filed on:_____ |
| If address and name different from above, please provide the name and address where notices should be sent:<br>Creditor Name: ☒ **Date Stamped Copy Returned**<br>Address:  N/A      ☐ **No self addressed stamped envelope**  Telephone number:<br>City/State/ZIP  ☐ **No copy to return** | ☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.<br><br>☐ Check this box if you are the debtor or trustee in this case. |

| | |
|---|---|
| **1. Amount of Claim as of Date Case Filed:**<br><br>$ _Unliquidated_ $_____ $_____ $ Unliquidated<br>  (Unsecured)    (Secured)    (Priority)    (Total)<br><br>If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4.<br><br>If all or part of your claim is entitled to priority, complete item 5.<br><br>☐ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges. | **5. Amount of Claim Entitled to Priority under 11 U.S.C. § 507(a) or 11 U.S.C. § 503(b)(9). If any portion of your claim falls in one of the following categories, check the box and state the amount.**<br><br>Specify the priority of the claim.<br><br>☐ Wages, salaries, or commissions (up to $10,950*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier — 11 U.S.C. § 507(a)(4).<br><br>☐ Contributions to an employee benefit plan — 11 U.S.C. § 507(a)(5). |
| **2. Basis for Claim:** Indemnification claim arising in connection with the BKK Corp. Landfill,<br>(See instruction #2 on reverse side.) W. Covina, CA | ☐ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use — 11 U.S.C. § 507(a)(7). |
| **3. Last four digits of any number by which creditor identifies debtor:**<br><br>3a.  **Debtor may be scheduled account as:** MacDermid, Inc. re: Allied Kelite/WITCO Chemical Corp.<br>(See instruction #3a on reverse side.) | ☐ Taxes or penalties owed to governmental units — 11 U.S.C. § 507(a)(8). |
| **4. Secured Claim (See instruction #4 on reverse side.)**<br>Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.<br><br>Nature of property or right of setoff:  ☐ Real Estate  ☐ Motor Vehicle  ☐ Other<br>Describe:<br><br>Value of Property: $ N/A    Annual Interest Rate _ %<br><br>Amount of arrearage and other charges as of time case filed included in secured claim,<br><br>if any: $ N/A      Basis for perfection: N/A<br><br>Amount of Secured Claim: $ N/A    Amount Unsecured: $ N/A | ☐ Other - Specify applicable paragraph of 11 U.S.C. § 507(a)(__).<br><br>Amount entitled to priority:<br><br>$ N/A |
| **6.   Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. | *Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment* |
| **7.   Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements or running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. If the supporting documents are in excess of 100 pages, you may attach a summary of them and a list of each document you have relied upon. You may also attach a summary. *(See definition of "redacted" on reverse side.)* DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING. | |

| | |
|---|---|
| Date:<br>10-8-09 | Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.<br><br>MacDermid by: John L. Cordani, General Counsel and Secretary   Telephone: 203-575-5646 |   RECEIVED<br><br>OCT 22 2009<br><br>KURTZMAN CARSON CONSULTANTS |

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

1 of 3



0911233091022000000000025

 **Nutter**

James F. Coffey
Direct Line: 617-439-2863
Fax: 617-310-9863
E-mail: jcoffey@nutter.com

October 21, 2009
9678-7876

***VIA OVERNIGHT COURIER***

Chemtura Claims Processing Center
c/o Kurtzman Carson Consultants
2335 Alaska Avenue
El Segundo, CA  90245

Re:  Chemtura Corporation, et al., Case No. 09-11233

Dear Sir or Madam:

Enclosed please find two (2) original executed Proofs of Claim submitted on behalf of MacDermid, Inc. to be filed in connection with the above-referenced bankruptcy case.   Please return a copy of each Proof of Claim to my attention in the enclosed prepaid Federal Express envelope.

Thank you for your assistance in this matter.

Very truly yours,

James F. Coffey

JFC:jmr

Enclosure

cc:  John L. Cordani, General Counsel and Secretary (w/o encl.)

1868796.1



**John L. Cordani**
General Counsel and Secretary

December 2, 2008

Lynn Schefsky
Senior Vice President, General Counsel & Secretary
Chemtura Corporation
199 Benson Road
Middlebury, CT 06749

**Via Certified Mail**
**Return Receipt Requested**

      *Re:*    *Claim for Indemnification*
             *BKK Corporation Landfill*
             *2210 South Azusa Avenue*
             *West Covina, CA 91972*
             *("BKK Landfill")*

Dear Atty. Schefsky:

      I write on behalf of MacDermid, Incorporated ("MacDermid") to present a claim for indemnification from Chemtura Corporation pursuant to the terms of an Asset Purchase Agreement between MacDermid and Witco Corporation dated May 2, 1994 (the "Agreement"). I present the claim to you because I believe that Chemtura Corporation is the successor to, and responsible for the liabilities of Witco Corporation and its subsidiary Allied Kelite Company. In this regard I believe that (1) Chemtura Corporation was formed in 2005 with the merger of Crompton Corporation and Great Lakes Chemical and (2) Crompton Corporation previously acquired Witco Corporation and Allied-Kelite Company ("Allied-Kelite") in 2000 upon its merger with Allied-Kelite's parent Witco Corporation.

      Attached as Exhibit A please find a claim by the California Department of Toxic Substances Control and the BKK Working Group concerning certain liabilities associated with the BKK Landfill (the "Claim"). The liabilities associated with the Claim are properly the liabilities of Allied-Kelite and Witco Corporation under the terms of the Agreement for the following reasons:

MacDermid
245 Freight Street
Waterbury, CT 06702

Phone 203-575-5646
Fax 203-575-7970
jcordani@macdermid.com

1. The liabilities associated with the Claim are clearly Excluded Liabilities (as defined in the Agreement) since the activities associated with the Claim clearly occurred prior to April 18, 1994.

2. The liabilities associated with the Claim represent a breach of the warranties and representations contained in the Agreement, including those of Section 5.11 of the Agreement.

Given Chemtura's relationship with Witco Corporation and Allied-Kelite, we present the claim of indemnification to Chemtura as provided for in Article 12 of the Agreement. The extent of the liability cannot be reasonably estimated at this time.

In this regard, please promptly confirm to me whether Chemtura will provide indemnification to MacDermid regarding the claim and whether Chemtura will assume responsibility for the Claim. Since Allied-Kelite remains a subsidiary of Chemtura and MacDermid did not purchase the Allied-Kelite Company, we would appreciate it if you would inform the California Department of Toxic Substances Control and the BKK Working Group of Chemtura's position and responsibility.

Thank you for your consideration and I look forward to your response.

Sincerely,

John L. Cordani

Cc:    Witco Corporation
       c/o Mayer Brown & Platt
       190 South LaSalle Street
       Chicago, IL 60603
       Attn: John R. Sagan

2

## Exhibit A





## Department of Toxic Substances Control

Maureen F. Gorsen, Director
8800 Cal Center Drive
Sacramento, California 95826-3200



Arnold Schwarzenegger
Governor

Linda S. Adams
Secretary for
Environmental Protection

November 24, 2008

**VIA FEDERAL EXPRESS**

David Crotty
Director
Macdermid Incorporated dba Allied Kelite
29111 Milford Rd.
New Hudson, MI 48165-9741

### IMPORTANT LEGAL MATTER

**Prompt Attention Needed: Notice of Liability and
Invitation to Potentially Responsible Parties to Execute Tolling Agreement**

Re:  **BKK Corporation Landfill,
2210 South Azusa Avenue
West Covina, CA  91792
(the "Facility")**

Dear David Crotty:

The Department of Toxic Substances Control ("DTSC") sends this letter to notify ALLIED KELITE CO (hereinafter referred to as "you" or "your company or organization") of potential liability, as defined by Section 107(a) of the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. Section 9607(a), as amended ("CERCLA"), and California Health and Safety Code section 25323.5, that you may incur or may have incurred with respect to the BKK Corporation Landfill Facility, in West Covina, CA (the "Facility"). Both DTSC and the BKK Working Group, an unincorporated group of 27 entities, are conducting response actions at the Facility. Enclosed with this letter is a Tolling Agreement, relating to potential claims the BKK Working Group and DTSC may have against you based on their work at the Facility, which DTSC encourages you to sign.

David Crotty
November 24, 2008
Page 2

## The BKK Facility

The Facility is a 583-acre facility located at 2210 South Azusa Avenue, West
Covina, California. The Facility contains a closed hazardous waste Class I landfill, a
closed Class III municipal solid waste landfill, and related facilities including a leachate
treatment plant and a gas collection system. The Class I landfill is approximately 190
acres in size and accepted waste from roughly 1962 to 1987. In total, the Class I landfill
accepted approximately five million tons of liquid and solid hazardous wastes together
with substantially greater amounts of municipal and commercial waste. The BKK
Corporation is the current owner and operator of the Class I and Class III landfills.

In October 2004, the BKK Corporation announced that it could not continue to
conduct post-closure care for the Class I Landfill after November 17, 2004. Thereafter,
DTSC engaged a contractor to conduct emergency response activities and to operate
and maintain the critical equipment and systems on a daily basis. Additional information
about the BKK Facility and the post-closure operations and response actions there can
be found at:

http://www.envirostor.dtsc.ca.gov/public/profile_report.asp?global_id=19490005

## Notice of Potential Liability

DTSC has documented the release or threatened release of hazardous
substances, pollutants or contaminants at the Facility. DTSC has spent and will spend
public funds, and the BKK Working Group has spent and will spend its funds, on actions
to investigate and control such releases or threatened releases at the Facility. Under
provisions of California's Hazardous Substance Account Act ("HSAA"), Health and
Safety Code sections 25300 et seq., including sections 25355.5(a) and 25358.3(a),
DTSC may order potentially responsible parties ("PRP's") to perform response actions
deemed necessary by DTSC to protect the public health, welfare or the environment.
Also, under the HSAA, including sections 25360 and 25363, and CERCLA, 42 U.S.C.
section 9601 et seq., PRP's may be compelled to compensate DTSC or other parties for
costs incurred in responding to any release or threatened release at the Facility. Such
actions and costs may include, but are not limited to, expenditures for conducting daily
maintenance of the Class I landfill and associated systems, necessary repair work,
monitoring and other post-closure activities, a Removal Action, Engineering
Evaluation/Cost Analyses, Remedial Investigation/Feasibility Studies, Remedial
Design/Remedial Actions, groundwater cleanup and other investigative, planning,
response oversight and enforcement activities. In addition, PRP's may be required to
pay damages for injury to, destruction of or loss of natural resources, including the cost
of assessing such damages.

Shipping records maintained by DTSC and the BKK Corporation, as well as other
business records maintained by the BKK Corporation, identify generators who arranged
for the disposal of hazardous substances at the Class I landfill. Based on DTSC's data,

David Crotty
November 24, 2008
Page 3

the BKK Working Group and DTSC believe that you are one of the generators that
disposed of waste at the Class I landfill and therefore a PRP with respect to the Facility.
Enclosed with this letter are examples of data available in DTSC's files that pertain to
your disposal of waste at the Facility during the time period ranging from 1980 through
1984. The BKK Working Group is in the process of collecting, analyzing, and
organizing BKK Corporation's business records and other information into a database
and may be able to give you additional information about the wastes you sent to the
Class I landfill, including information about shipments predating 1980. The BKK Working
Group has indicated that it will ask PRP's to sign a confidentiality agreement before
providing additional information from their database.

**Tolling Agreement**

DTSC and the BKK Working Group have incurred response costs related to the
Class I landfill, including costs incurred pursuant to the Consent Decree. As a result,
DTSC and the BKK Working Group possess claims against you for the recovery of
response costs pursuant to CERCLA, among other authorities. DTSC strongly prefers
that this litigation be deferred until such time as a long-term settlement and enforcement
approach has been developed for the Facility. The BKK Working Group concurs in that
wish. The enclosed Tolling Agreement would toll, or stop, any statute of limitations
applicable to potential claims that DTSC or the BKK Working Group have against you
relating to the Facility for a period of 18 months. It also tolls any potential claims you
have against DTSC or the BKK Working Group. The Tolling Agreement does not
constitute an admission of fact or of liability. It is simply intended to provide the parties
with additional time to consider settlement options. Please give these matters your
immediate attention. You may wish to consult with an attorney.

**Response Actions at the Facility**

In December 2004, DTSC issued an "Imminent and Substantial Endangerment
Determination and Order and Remedial Action Order" ("ISE Order") to the BKK
Corporation and 50 other respondents who were alleged to be potentially responsible
for conditions at the Class I Landfill. Some of these respondents are now members of
the BKK Working Group. The ISE Order required the respondents to conduct operation
and maintenance activities at the Class I Landfill and the leachate treatment plant.

In 2005, the BKK Working Group began reimbursing DTSC for a portion of its
response costs. In October 2005, the BKK Working Group and DTSC lodged a
proposed Consent Decree with the Federal District Court. That Consent Decree
provides for the BKK Working Group to perform certain projects and operations at the
Class I Landfill and to pay for, and be released from, certain DTSC response costs. It
also provides for DTSC to dismiss, without prejudice, the ISE Order against the BKK
Working Group members. The Court entered the Consent Decree on March 9, 2006
and, as extended, it is scheduled to terminate in March 2009. The BKK Working Group
and DTSC anticipate entering a successor Consent Decree with a term of three years,

David Crotty
November 24, 2008
Page 4

requiring the BKK Working Group to conduct additional response activities at the Facility. DTSC will soon conduct or compel other additional response actions, including actions to address groundwater contamination, as well.

## Information to Assist Responsible Parties

Please sign and return *all three* originals of the Tolling Agreement to the following address no later than January 7, 2009:

> Connie Salcido Delgado
> Paralegal Specialist
> Bingham McCutchen LLP
> 355 South Grand Avenue, Suite 4400
> Los Angeles, California 90071

Within 30 days of receiving all signed originals of the Tolling Agreement, DTSC and the BKK Working Group will sign all originals and return one fully executed original to you at the above address or any other address you so designate.

If you have any questions for DTSC concerning the Facility, or the Tolling Agreement please contact Marilee Hanson, DTSC, at (916) 323-4971 or bkkntc@dtsc.ca.gov. If you have any questions for the BKK Working Group, please contact Jesse Chavez of the law firm Bingham McCutchen LLP at (213) 680-6400 or jesus.chavez@bingham.com.

Thank you for your cooperation.

Very truly yours,

Marilee Hanson
Senior Staff Counsel

Enclosures:

o  Sample of documents relating to ALLIED KELITE CO's shipments to the Class I Facility.

o  Three originals of the Tolling Agreement - **Please sign and return all three by January 7, 2009**

o  BKK Working Group Member List

# ALLIED KELITE CO.

## BKK LANDFILL

### List of Generator ID Numbers:  Allied Kelite Co.

| ParentName | DTSC_MAN_GENERATOR-ID |
| --- | --- |
| ALLIED KELITE CO | CAD009662362 |
| ALLIED KELITE CO | CAD009662364 |

### BKK LANDFILL
List of Manifest Numbers: Allied Kelite Co.

| ParentName | DTSC_MAN_MANIFEST-NBR |
|---|---|
| ALLIED KELITE CO | 83642307 |
| ALLIED KELITE CO | 84111036 |
| ALLIED KELITE CO | 84120523 |
| ALLIED KELITE CO | 84120527 |
| ALLIED KELITE CO | 84120612 |

State of California—Health and Welfare Agency
TOXIC SUBSTANCES CONTROL DIVISION
714-744 P Street
Sacramento, CA 95814

Department of Health Services

UNIFORM HAZARDOUS WASTE MANIFEST
FORM NO. DHS-8022A 3-84

STATE ID NUMBER **83642307**

Please print or type with ELITE type (12 characters per inch).

**GENERATOR NAME AND MAILING ADDRESS**
WITCO CHEMICAL
1250 N. MAIN ST
LOO ANGELES CA 90012
AREA CODE/PHONE NUMBER 213

MANIFEST DOCUMENT NUMBER
EPA ID NUMBER
CAD00946 2242

**TRANSPORTER NO. 1 NAME AND MAILING ADDRESS**
FALCONE DISP
3031 E. I. ST WILMINGTON CA
VEH./CONTAINER NO. 55497
EPA ID NUMBER CAD000045733

**TRANSPORTER NO. 2/ALTERNATE TSD FACILITY**
VEH./CONTAINER NO.
EPA ID NUMBER

AREA CODE/PHONE NUMBER
EPA ID NUMBER

**TREATMENT, STORAGE, OR DISPOSAL (TSD) FACILITY**
BKK LANDFILL
2210 AZUSA AVE WEST COVINA CA
AREA CODE/PHONE NUMBER
EPA ID NUMBER CAD0021786174

| PROPER U.S. D.O.T. SHIPPING NAME AND HAZARD CLASS | UN/NA NUMBER | TOTAL QUANTITY | UNIT WT/VOL | CONTAINER NO. | TYPE | WASTE CAT. NO. | DISP METH |
|---|---|---|---|---|---|---|---|
| CORROSIVE MATERIAL | | | | | | | |
| CORROSIVE SOLID NOS | UN1759 | 20 | YDS | 1 | RC | 01 | |
| CRUSHED DRUMS | | | | | | | 0E |

| COMPONENTS | | CONC. RANGE | | UNITS | |
|---|---|---|---|---|---|
| | | UPPER | LOWER | % | PPM |
| | | | | | |

**SPECIAL HANDLING INSTRUCTIONS**
10412
GEN 00870 OLD/NEW 512 S A RT 354 TONS 5.01 HWF 49.70
TRAN 0010

This is to certify that the above-named wastes are properly classified, described, packaged, marked and labeled, and are in proper condition for transportation according to the applicable requirements of the Department of Transportation and the EPA.

Printed or typed full name and signature ROBERT ODENCRANTZ
MO 10 DAY 12 YR 84

☐ Check if continuation sheet is used. Number of continuation sheets

**TRANSPORTER 1 ACKNOWLEDGEMENT OF RECEIPT OF ABOVE WASTES**
Printed or typed full name and signature ROBERT A MARCO Robert A Morciol
DATE REC'D & ACCEPTED MO 10 DAY 12 YR 84

**TRANSPORTER 2 ACKNOWLEDGEMENT OF RECEIPT OF ABOVE WASTES**
Printed or typed full name and signature
DATE REC'D & ACCEPTED MO DAY YR

**DISCREPANCY INDICATION SPACE**
BKK - manifest incomplete!
does not list residue in containers * Labels on drums read corrosive

Facility owner or operator: Certification of receipt of hazardous waste covered by this manifest except as noted in the discrepancy indication space above. Note: TSDF must complete waste number. See instructions.
Printed or typed full name and signature RON SAGER Ron Sage CAD067186749
DATE RECEIVED & ACCEPTED MO 10 DAY 18 YR 84

TSDF SENDS THIS COPY TO GENERATOR WITHIN 15 DAYS

BKK-10-C-057-00001401

State of California—Health and Welfare Agency

Department of Health Services
Toxic Substances Control Division
Sacramento, California

Please print or type. (Form designed for use on elite (12-pitch) typewriter.)

| UNIFORM HAZARDOUS WASTE MANIFEST | 1. Generator's US EPA ID No. CAD0069662362 | Manifest Document No. | 2. Page 1 of | Information in the shaded areas is not required by Federal law. |
|---|---|---|---|---|

A. State Manifest Document Number
**84111036**

B. State Generator's ID

3. Generator's Name and Mailing Address
WITCO CHEMICAL
1211 N MAIN ST
MINNESOTA 90201

4. Generator's Phone (213) 222-1801

C. State Transporter's ID 55469

5. Transporter 1 Company Name
CHEM DISPOSAL

6. US EPA ID Number CAD008048933

D. Transporter's Phone 590-8691

7. Transporter 2 Company Name

8. US EPA ID Number

E. State Transporter's ID

F. Transporter's Phone

9. Designated Facility Name and Site Address
BKK LANDFILL
2711 W ARESH AVE
WEST COVINA CA

10. US EPA ID Number CAD066773745

G. State Facility's ID CAD067786749

H. Facility's Phone (818) 869-0916

| 11. US DOT Description (Including Proper Shipping Name, Hazard Class, and ID Number) | 12. Containers No. | Type | 13. Total Quantity WV/Vol | 14. Unit Wt/Vol | I. Waste No. |
|---|---|---|---|---|---|
| a. | 1 | RL | | | 181 |
| b. | | | | | |
| c. | | | | | |
| d. | | | | | |

UN1759

K. Handling Codes for Wastes Listed Above

CONTAINERS

03

15. Special Handling Instructions and Additional Information
GLOVES

16. GENERATOR'S CERTIFICATION: I hereby declare that the contents of this consignment are fully and accurately described above by proper shipping name and are classified, packed, marked, and labeled, and are in all respects in proper condition for transport by highway according to applicable international and national governmental regulations.

| Printed/Typed Name | Signature | Date Month Day Year |
|---|---|---|
| | | 11 17 87 |

17. Transporter 1 Acknowledgement of Receipt of Materials

| Printed/Typed Name | Signature | Date Month Day Year |
|---|---|---|
| | | 11 17 87 |

18. Transporter 2 Acknowledgement or Receipt of Materials

| Printed/Typed Name | Signature | Date Month Day Year |
|---|---|---|
| | | |

19. Discrepancy Indication Space
10415    870   0210   R   1 518   3541   4.27   42.36

20. Facility Owner or Operator: Certification of receipt of hazardous materials covered by this manifest except as noted in Item 19.

| Printed/Typed Name SIAS, ANTHONY | Signature Anthony S. | Date Month Day Year 11 01 87 |
|---|---|---|

Yellow: TSDF SENDS THIS COPY TO GENERATOR WITHIN 30 DAYS

DHS 8022 A (7/84)
(EPA 8700-22)

BKK-10-C-057-00001854

## TOLLING AGREEMENT

This Tolling Agreement ("Agreement") is made and entered into by and between the Department of Toxic Substances Control ("DTSC"), the BKK Working Group and ALLIED KELITE CO. DTSC is the state agency charged with the primary responsibility for implementing the California Hazardous Substances Account Act ("HSAA"), Health and Safety Code § 25300 et seq., and the Hazardous Waste Control Act ("HWCA"), Health and Safety Code § 25100 et seq., the state analogs to the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended ("CERCLA" or "Superfund"), 42 U.S.C. §§ 9601 et. seq., and the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. §§ 6901 et. seq., respectively. The BKK Working Group is an unincorporated association of twenty-seven entities, identified in Exhibit A, who have entered into a Consent Decree with DTSC related to the BKK Corporation Landfill Facility ("DTSC Consent Decree"), located in West Covina, California ("Facility"). Hereinafter, DTSC, the BKK Working Group, and ALLIED KELITE CO are singularly referred to as a "Party" and collectively referred to as the "Parties."

### Recitals

A.     DTSC has notified ALLIED KELITE CO that it may have legal liability based upon the disposal of waste material at the Facility under a variety of statutory and common law theories, including CERCLA and the HSAA. ALLIED KELITE CO denies such liability for purposes of this Agreement.

B.     The Parties desire to toll any applicable statute of limitations governing claims that the Parties could assert against each other relating to the Facility in the manner set forth below. As provided in Section 3 below, this Agreement does not toll any applicable statute of limitations governing claims that DTSC and the BKK Working Group could assert against each other relating to the Facility.

### Terms and Conditions

1.     DTSC, the BKK Working Group and each of its individual members listed on Exhibit A, and ALLIED KELITE CO agree that all statutes of limitations applicable as of the Effective Date to any rights, claims, causes of action, counterclaims, crossclaims and defenses regarding, based upon or arising out of disposal of waste material at the Facility, or the ownership or operation of the Facility which either DTSC or the BKK Working Group could assert against ALLIED KELITE CO, or which ALLIED KELITE CO could assert against DTSC or the BKK Working Group as of the Effective Date shall be tolled for the period between the Effective Date and the Termination Date, and this tolling period shall be excluded from all computations of any applicable period of limitations.

2.     The BKK Working Group and ALLIED KELITE CO agree not to initiate litigation concerning the investigation, remediation, or the recovery of costs relating to the Facility against the other Party between the Effective Date and the Termination Date.

3.    This Agreement does not toll any applicable statute of limitations governing claims that DTSC and the BKK Working Group could assert against each other relating to the Facility.

4.    Each of the undersigned hereby represents and warrants that he or she is authorized to execute this Agreement on behalf of the respective Parties to this Agreement.

5.    By entering into this Agreement, the Parties do not admit any fact nor assume any liability of any kind.  Moreover, this Agreement may not be offered as evidence of an admission of such responsibility or liability in any court or legal proceeding.

6.    DTSC, the BKK Working Group and ALLIED KELITE CO agree that this Agreement shall not apply to any third party and shall not revive any rights, claims, causes of actions, counterclaims, crossclaims or defenses that are already barred by an applicable provision of law as of the Effective Date.

7.    This Agreement may be signed in counterparts by one or more of the Parties, and those counterparts when taken together shall have the same force and effect as if a single, original document had been signed by all the Parties.

8.    Notwithstanding any other provision of this Agreement, DTSC reserves, and this Agreement is without prejudice to, the right to issue any administrative order or to take any other legal action relating to the Facility against ALLIED KELITE CO under any applicable law including but not limited to CERCLA and the HSAA.

9.    The Termination Date of this Agreement shall be the earlier of:  (a) eighteen (18) months from the Effective Date; (b) sixty (60) days after DTSC issues any administrative order or takes any other legal action relating to the Facility against another Party (provided that an extension or replacement of the existing DTSC Consent Decree with the BKK Working Group shall not trigger this termination provision); (c) the date any person files a legal action for investigation, remediation, or the recovery of costs relating to the Facility against any Party; (d) sixty (60) days after DTSC and/or the BKK Working Group provide ALLIED KELITE CO with a settlement offer (this period can be extended by mutual consent of the Parties); or, (e) sixty (60) days after any Party, in its sole discretion, gives written notification of termination to the other Parties.

10.    Any modifications to this Agreement must be in writing and signed by all Parties.

///
///
///

2

11.    The Effective Date of this Agreement shall be the date upon which DTSC
signs the Agreement.

IN WITNESS THEREOF, the Parties have executed this Agreement on the dates
set forth below.

Department of Toxic Substances Control

By:_____    Date:_____

Name:  Marilee Hanson    Title:  Senior Staff Counsel

BKK Working Group

By:_____    Date:_____

Name:  James J. Dragna, Esq.    Title:   Attorney for the BKK
                                                     Working Group

ALLIED KELITE CO

By:_____    Date:_____

Print Name: _____    Title:_____

# CONTACT INFORMATION FOR ALLIED KELITE CO

Name:  _____

Title:  _____

Company:_____

Address: _____

_____

_____

Phone: _____

Email: _____

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Lynn Schefsky
Senior Vice President, General Counsel &
Secretary
Chemtura Corporation
199 Benson Road
Middlebury, CT 06749

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____  ☑ Agent  ☐ Addressee

B. Received by ( Printed Name)   C. Date of Delivery
Allins                          12 3 8

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:        ☐ No

3. Service Type
☑ Certified Mail      ☐ Express Mail
☐ Registered          ☑ Return Receipt for Merchandise
☐ Insured Mail        ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
(Transfer from service label)     7007 1490 0000 5804 5952

PS Form 3811, February 2004        Domestic Return Receipt        102595-02-M-1540



**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com®

OFFICIAL USE

| | |
|---|---|
| Postage | $ 1.3 |
| Certified Fee | 2.70 |
| Return Receipt Fee (Endorsement Required) | 2.2 |
| Restricted Delivery Fee (Endorsement Required) | 6.2 |
| Total Postage & Fees | $ |

Postmark Here
WATERBURY CT MAIN OFFICE
DEC 02 2008
Luri P.
USPS - 061

Sent To
Lynn Schefsky
Senior Vice President, General Counsel &
Secretary
Chemtura Corporation
199 Benson Road
Middlebury, CT 06749

Street, Apt. or PO Box
City, State,

PS Form 38

7007 1490 0000 5804 5952

 **MacDermid**

**John L. Cordani**
General Counsel and Secretary

December 2, 2008

California Department of Toxic Substances Control
8800 Cal Center Drive
Sacramento, CA 95826-3200
Attn: Marilee Hanson

**Via Certified Mail**
**Return Receipt Requested**

>    Re:    *BKK Corporation Landfill*
>           *2210 South Azusa Avenue*
>           *West Covina, CA 91792*
>           *(the "Facility")*

Dear Ms. Hanson:

I write on behalf of MacDermid, Incorporated ("MacDermid") in response to your letter of November 24, 2008 regarding the Facility. In response to your letter I would like to explain why MacDermid is not a successor to the Allied-Kelite Company and does not have the right to consider the tolling agreement you have raised in your letter.

To our knowledge, the Allied-Kelite Company still exists as a subsidiary and/or predecessor of Chemtura Corporation of 199 Benson Road, Middlebury, CT 06749. MacDermid did not purchase the Allied-Kelite Company nor did it assume its obligations in this regard. MacDermid has never done business as "Allied-Kelite".

In May of 1994 MacDermid did acquire certain products and assets of the Allied-Kelite Company. However, MacDermid's purchase of a portion of Allied-Kelite Company's assets in 1994 did not make it a successor to Allied-Kelite Company or responsible for its prior liabilities. MacDermid's acquisition of certain assets from Allied-Kelite Company represented only a small portion of Allied-Kelite's assets and the Allied-Kelite Company remained in business thereafter. Attached hereto as Exhibit A please find a copy of the relevant portion of the Asset Purchase Agreement with Allied-Kelite Company.

---

The actions that connected Allied-Kelite Company with the Facility occurred a decade prior to MacDermid's acquisition of a small portion of Allied-Kelite Company's assets. As a result these liabilities clearly remain with the Allied-Kelite Company and its parent/successor Chemtura Corporation.

Given the foregoing, MacDermid does not believe that it has the position or authority to consider the tolling agreement you request in this regard. Instead we suggest that you contact Chemtura Corporation as the appropriate party and drop MacDermid from your list.

Thank you for your consideration.

Sincerely,

John L. Cordani

cc:    Connie Salcido Delgado
       Bingham McCutchen LLP.
       355 South Grand Avenue
       Suite 4400
       Los Angeles, CA 90071

**Exhibit A**

ASSET PURCHASE AGREEMENT

dated as of April 18, 1994

by and between

ALLIED-KELITE COMPANY

("Seller"),

WITCO CORPORATION,

THE RICHARDSON COMPANY

and

MACDERMID INCORPORATED

("Buyer")

METAL FINISHING BUSINESS OF
ALLIED-KELITE COMPANY

18152958

"Agreement" means this Asset Purchase Agreement, including all Schedules and Exhibits hereto, as it may be amended from time to time in accordance with its terms.

"Assumed Liabilities" has the meaning set forth in <u>Section 2.4</u>.

"Disposal" means disposal as defined by RCRA and the regulations thereunder.

"Environmental Claims" means any claims, demands, causes of action, judgments and litigation made or brought against Buyer or Seller or any Affiliate of Seller, relating to the violation of any Environmental Law by Seller with respect to the Metal Finishing Business except to the extent such violation arises out of the operation of the Metal Finishing Business after the Closing Date.

"Environmental Laws" means any Federal, state or local law, regulation, ordinance or order pertaining to the protection of natural resources, the environment and the health and safety of the public, including, but not limited to, the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. §§ 9601 <u>et</u> <u>seq</u>., the Resource Conservation and Recovery Act ("RCRA"), as amended, 42 U.S.C. §§ 6901 <u>et</u> <u>seq</u>., the Hazardous Materials Transportation Act, as amended, 49 U.S.C. §§ 1801 <u>et</u> <u>seq</u>., the Federal

Mine Safety and Health Act of 1977, as amended, 30 U.S.C. § 801 et seq., the Occupational Safety and Health Act, as amended, 29 U.S.C. §§ 651 et seq., and any other state, Federal or local law, regulation, rule, ordinance or order, currently in existence, which govern:

(i)    the existence, cleanup and/or remedy of contamination on real property;

(ii)   the emission or discharge of Hazardous Substances into the environment;

(iii)  the control of Hazardous Wastes; or

(iv)   the use, generation, transport, treatment, storage, disposal, removal or recovery of Hazardous Substances, including building materials.

"Excluded Liabilities" has the meaning set forth in Section 2.5.

"Hazardous Substances" means (a) any oil, flammable substances, explosives, radioactive materials, hazardous wastes or substances, toxic wastes or substances or any other wastes, materials or pollutants defined as or included in the definition of "hazardous substances", "hazardous wastes", "hazardous materials", "extremely hazardous waste", "restricted hazardous waste", or "toxic substances" or words of similar import under any applicable local, state or Federal law or under the regulations adopted or publications promulgated pursuant thereto, including, but not limited to, Environmental Laws; and (b) any other chemical, material or substance, exposure to which is prohibited, limited or regulated by any governmental authority.

"Hazardous Wastes" means hazardous wastes as defined by RCRA and the regulations thereunder.

18152958

3

2.4.    <u>Assumed Liabilities</u>. Buyer shall assume as of the Closing and pay when due the
following undischarged liabilities that are not by their terms or nature required to be discharged
by the Closing:

8

18152958

(a)    all prorated taxes and other prorated liabilities of the Metal Finishing Business referred to in Section 3.5 to the extent allocable to the period following the Closing Date and arising in the ordinary course of business;

(b)    subject to Section 12.2(c), all warranty claims for defective products of Seller (whenever manufactured) shipped after the Closing;

(c)    all accrued vacation and accrued sickness benefits for all Continuing Employees and Transition Employees as set forth in Section 7.1(e); and

(d)    all product liability claims for which Buyer is liable under Section 12.3(a) hereof.

2.5.  Excluded Liabilities. Except for those obligations and liabilities expressly assumed by Buyer pursuant to Sections 2.3 and 2.4, Buyer shall not assume or be bound by any duties, responsibilities, obligations or liabilities of Seller of any kind or nature, known, unknown, contingent or otherwise, including, without limitation, duties, responsibilities, obligations or liabilities:

(a)    current liabilities incurred by Seller in the ordinary course of business to the extent not paid at Closing;

(b)    to employees or former employees of Seller or any of their beneficiaries, heirs or assignees, including (i) any pension, accrued vacation or other liabilities hereof and (ii) any arising by virtue of any collective bargaining relationship or agreement or pursuant to the National Labor Relations Act or any other labor relations law;

(c)    to the Pension Benefit Guaranty Corporation or any similar organization, whether arising out of the employment by Seller of any employees or former employees or the transactions contemplated by this Agreement;

(d)    with respect to (i) any income, profits, franchise or similar tax or (ii) any claims existing at or prior to the Closing, (whether asserted or unasserted,) for personal injuries, property damages or consequential damages relating to the Metal Finishing Business or otherwise;

(e)    with respect to any Environmental Claim or under any Environmental Laws or any statute, rule or regulation (with respect to Seller's actions prior to the Closing), including but not limited to environmental, antitrust, civil rights, health, safety, labor and discrimination laws;

(f)    arising out of or based upon those matters disclosed on Schedules 5.4 and 5.7 hereto;

18152958

(g)    any liability under any Contract incurred by Seller in violation of the
provisions of this Agreement or arising out of a material breach or default by Seller prior
to the Closing (including any event prior to the Closing that with the passage of time or
the giving of notice, or both, would become a breach or default); or

(h)    any intercompany payable balances owing by Seller, or any of its
subsidiaries, to any Affiliate of Seller.

All liabilities of Seller other than those expressly assumed by Buyer pursuant to Sections 2.3 and
2.4 (including without limitation all liabilities referred to in clauses (a) through (h) of this
Section 2.5) are hereinafter sometimes referred to as the "Excluded Liabilities."

10

18152958

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed by their respective duly authorized officers as of the date first above written.

MACDERMID INCORPORATED

By: _C. Rice_

Name:
Title: _Vice President_

ALLIED-KELITE COMPANY

By: _Robert J. Seward_

Name:
Title: Vice President

WITCO CORPORATION (solely for the purposes of being bound by the provisions of Section 5.1, Section 5.2, Section 10, Section 14.3.1(b) and Section 15 hereof)

By: _Robert J. Seward_

Name:
Title: Vice President

THE RICHARDSON COMPANY (solely for the purposes of being bound by the provisions of Section 5.1, Section 5.2, Section 10, Section 14.3.1(b) and Section 15 hereof)

By: _Robert J. Seward_

Name:
Title: Vice President

3152958.4  041594  1951C  94116829

43



**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com®

OFFICIAL USE

Postage $

Certified Fee

Return Receipt Fee
(Endorsement Required)

Restricted Delivery Fee
(Endorsement Required)

Total Postage & Fees $

*Sent To* California Department of Toxic Substances
Control

*Street, Apt No.* 8800 Cal Center Drive
*or PO Box No.*
*City, State, ZIP+4* Sacramento, CA 95826-3200  Attn: Marilee Hanson

PS Form 3811, February 2004

7007 1490 0000 5804 5976

---

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____  ☐ Agent  ☐ Addressee

B. Received by (Printed Name)    C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:  ☐ No

3. Service Type
   ☒ Certified Mail   ☐ Express Mail
   ☐ Registered   ☐ Return Receipt for Merchandise
   ☐ Insured Mail   ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

**SENDER: COMPLETE THIS SECTION**
■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:
California Department of Toxic
Substances Control
8800 Cal Center Drive
Sacramento, CA 95826-3200
Attn: Marilee Hanson

2. Article Number    7007 1490 0000 5804 5976
(Transfer from service label)

PS Form 3811, February 2004    Domestic Return Receipt

---

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com®

OFFICIAL USE

Postage $

Certified Fee

Return Receipt Fee
(Endorsement Required)

Restricted Delivery Fee
(Endorsement Required)

Total Postage & Fees $

*Sent To* Connie Salcido Delgado
*Street, Apt No.* 355 South Grand Avenue
*or PO Box No.* Bingham McCutchen LLP, Suite 4400
*City, State, ZIP+4* Los Angeles, CA 90071

PS Form 3811, February 2004

7007 1490 0000 5804 5969

---

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____  ☐ Agent  ☐ Addressee

B. Received by (Printed Name)  STEWART McLEOD   C. Date of Delivery 12/3/0

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:  ☐ No

3. Service Type
   ☒ Certified Mail   ☐ Express Mail
   ☐ Registered   ☐ Return Receipt for Merchandise
   ☐ Insured Mail   ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

**COMPLETE THIS SECTION**
■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

Addressed to:
Salcido Delgado
Bingham McCutchen LLP.
South Grand Avenue
Suite 4400
Los Angeles, CA 90071

Article Number    7007 1490 0000 5804 5969
(Transfer from service label)

PS Form 3811, February 2004    Domestic Return Receipt