UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x
                                   :

In re                             :          Chapter 11
                                     :

CHEMTURA CORPORATION, *et al.*,         :          Case No. 09-11233 (REG)
                                     :

                       Debtors.      :          (Jointly Administered)
                                     :

-------------------------------------------------------------x

BENCH DECISION[1] ON DEBTORS'
OBJECTIONS, UNDER BANKRUPTCY CODE
SECTION 502(e)(1)(B) AND STATE LAW, TO
CLAIMS OF CORPORATE DIACETYL
CLAIMANTS

Appearances:

KIRKLAND & ELLIS LLP
*Attorneys for the Debtors and Debtors-in-Possession*
601 Lexington Avenue
New York, NY 10022
By:    M. Natasha Labovitz, Esq.
        Craig A. Bruens, Esq.
        Brian T. Stansbury, Esq.
        Richard M. Cieri, Esq.

-and-

300 North LaSalle Street
Chicago, IL 60654
By:    Nader R. Boulos, P.C., Esq. (argued)
        Alyssa A. Qualls, Esq.

DUANE MORRIS LLP
*Conflicts Counsel for the Debtors*
1540 Broadway
New York, NY 10036
By:    Gerard S. Catalanello, Esq.

---

[1]    I use bench decisions to lay out in writing decisions that are too long, or too important, to dictate in open court, but where the circumstances do not permit more leisurely drafting or more extensive or polished discussion. Because they often start as scripts for decisions to be dictated in open court, they typically have a more conversational tone.

-and-

30 South 17th Street
Philadelphia, PA 19103
By:    Lawrence J. Kotler, Esq.

EDWARDS ANGELL PALMER & DODGE LLP
*Attorneys for Citrus & Allied Essences, Ltd.*
750 Lexington Avenue
New York, NY 10022
By:    Larry D. Henin, Esq. (argued)

HUSCH BLACKWELL SANDERS LLP
*Attorneys for Creditor, Flavor Concepts, Inc.*
190 Carondelet Plaza
Suite 600
St. Louis, MO 63105
By:    Marshall C. Turner, Esq. (telephonically) (argued)

ADELMAN & GETTLEMAN, LTD.
*Attorneys for Creditor, Ungerer & Company*
53 West Jackson Boulevard
Chicago, IL 60604
By:    Brad A. Berish, Esq. (telephonically)


BEFORE:    ROBERT E. GERBER
           UNITED STATES BANKRUPTCY JUDGE

In this contested matter in the jointly administered chapter 11 cases of Chemtura

Corporation (**"Chemtura"**) and its affiliates (collectively, the **"Debtors"**), the Debtors

object to proofs of claim (collectively, the **"Contribution Claims"**) filed by 5 corporate

entities (collectively, the **"Corporate Claimants"**), for contribution and/or

indemnification with respect to amounts the Corporate Claimants might pay in the future

in litigation against them.  The Contribution Claims arise out of lawsuits asserted by

various plaintiffs (**"Tort Plaintiffs"**) alleging injuries from exposure to the chemicals

diacetyl and/or acetoin (collectively, **"diacetyl"**), which at one time were used in the

manufacture of butter flavorings.

The Debtors contend that the Contribution Claims, except to the extent premised on amounts already paid to Tort Plaintiffs, should be disallowed and expunged under Bankruptcy Code section 502(e)(1)(B). And the Debtors also contend, with respect to amounts actually paid, that portions of the Contribution Claims fail to establish contribution or indemnity liability under applicable state law.

Except for claims for reimbursement of defense costs, the Debtors' objections will be sustained, and the Corporate Claimants' claims will be expunged. My Findings of Fact and Conclusions of Law in connection with this determination follow.

<u>Findings of Fact</u>

From 1982 to 2005, Chemtura Canada Co./Cie[2] (**"Chemtura Canada"**), a wholly owned indirect subsidiary of Chemtura, manufactured and shipped diacetyl to Citrus & Allied Essences, Ltd. (**"Citrus"**). Citrus thereafter resold that diacetyl to certain customers in the United States. From 1998 to 2005, Chemtura acted as an intermediary, purchasing diacetyl from Chemtura Canada and then selling it to Citrus.

Starting in 2001, Tort Plaintiffs began filing lawsuits against various companies, including Chemtura and Chemtura Canada, alleging that exposure to diacetyl caused them personal injury. Before the commencement of these chapter 11 cases, Chemtura and Chemtura Canada had been named in approximately 28 lawsuits relating to diacetyl, 20 of which still remain pending. Various distributors, manufacturers, and suppliers who

---

[2]     At the time this motion was argued, Chemtura Canada had not filed a petition under the Bankruptcy Code. However, on August 8, 2010, after I took the matter under submission, Chemtura Canada filed its own chapter 11 petition. After filing its petition, Chemtura Canada also filed a motion, which I granted (see Order, ECF #3535), that deemed all diacetyl related proofs of claim filed against Chemtura to be filed against Chemtura Canada as well.

As against the possibility, if any, that claims against Chemtura Canada should be analyzed differently, this decision will not, without more, also result in expungement of claims against Chemtura Canada. It will, of course, be applicable precedent with respect to such claims.

may have directly or indirectly purchased diacetyl from Chemtura and/or Chemtura Canada have also been named as defendants in lawsuits alleging injuries related to diacetyl exposure.

By the time of the October 30, 2009 deadline for the filings of proofs of claim, approximately 375 non-duplicative proofs of claim related to diacetyl were filed. The great bulk of the 375 were by Tort Claimants, but those claims also included the Contribution Claims filed by 7 Corporate Claimants.[3]

The 7 Corporate Claimants originally consisted of Citrus; Ungerer & Company (**"Ungerer"**); Polarome International Inc. (**"Polarome"**); Givaudan Flavors Corporation (**"Givaudan"**); Flavor Concepts, Inc. (**"Flavor Concepts"**); FONA International, Inc. (**"FONA"**); and Spartan Chemical Company (**"Spartan"**). However, by the time of oral argument on this motion, the Debtors reached agreements resolving their objections with respect to Givaudan and FONA.

Through the Contribution Claims, the remaining Corporate Claimants seek contribution and/or indemnification from Chemtura for amounts the Corporate Claimants have allegedly already paid and may pay in the future with respect to diacetyl related lawsuits. The majority of the underlying Tort Plaintiffs relating to these Contribution Claims have also filed their own individual proofs of claim against Chemtura, although certain underlying Tort Plaintiffs have neglected to do so.

In general, the Corporate Claimants assert claims against Chemtura of three types:

---

[3]     Just before the issuance of this opinion, I was notified of additional settlements between certain Tort Claimants and the Debtors. The settlement of these claims does not affect the concepts in this opinion.

(1) For contribution and indemnity against Chemtura on account of those diacetyl related lawsuits in which *Chemtura was either a named party by the plaintiff, or otherwise brought into the litigation* by one of the Corporate Claimants or another defendant;[4]

(2) For contribution and indemnity on account of diacetyl related litigation which is currently pending against one of the Corporate Claimants but where *Chemtura is not a named defendant and has not otherwise been brought into the litigation*.[5]

(3) on account of claims that the Corporate Claimants would bring against Chemtura *if the Corporate Claimants were named* in future diacetyl related litigation.

*Citrus (Proof of Claim No. 9956)*

Citrus is a supplier of essential oils, oleoresins, aromatic chemicals and specialty flavor ingredients to both resellers and end users of such products. As previously noted, between 1982 and 2005, Citrus was the exclusive reseller of diacetyl manufactured by Chemtura Canada and/or sold by Chemtura.

According to the Citrus proof of claim, Citrus has been named as a defendant in at least 28 lawsuits brought by Tort Plaintiffs "for essentially the same alleged conduct, namely the defendants' alleged negligent design, testing, formulation, manufacture, marketing and selling of certain chemicals, including diacetyl and acetoin, which diacetyl

---

[4]     Certain of the claims that fall into this category have already been settled between the relevant Corporate Claimants and the Tort Plaintiff.

[5]     Certain of the claims that fall into this category have already been settled between the relevant Corporate Claimants and the Tort Plaintiff.

and acetoin were purchased by Citrus from Chemtura and/or Chemtura Canada."[6]  The

Citrus proof of claim asserts indemnity and contribution claims against Chemtura for all

*settled* litigation, *pending* litigation, and *future* litigation that is "relating to or arising out

of the purchase of any and all chemicals by Citrus from Chemtura, including but not

limited to diacetyl and acetoin . . . ."[7]

The 28 lawsuits brought against Citrus involve 74 underlying Tort Plaintiffs.

With respect to 63 of the 74 underlying Tort Plaintiffs' claims, Citrus has *yet to incur* any

obligation to such plaintiffs.  With respect to the remaining 11 underlying Tort Plaintiffs'

claims, Citrus has made payments under various settlement agreements.

The Debtors objected to the unliquidated portion of the Citrus proof of claim but,

with 1 exception, have not objected to the portion of the Citrus proof of claim that is

based on actual settlement payments.  The exception is a settlement (the "**Campbell**

**Settlement**") that Citrus entered into with certain Tort Plaintiffs in *Campbell v.*

*International Flavors & Fragrances, et al.* (the "**Campbell Litigation**"), in July 2009.

In the Campbell Settlement, the plaintiffs released Citrus and certain other entities from

any and all liability but expressly declined to release Chemtura and reserved all rights and

claims as against Chemtura.  As discussed below, Chemtura argues that because the

Campbell Settlement did not extinguish Chemtura's liability to the Campbell Tort

Plaintiffs, Citrus is barred from seeking contribution from Chemtura with respect to that

settlement on state law—as contrasted to 502(e)(1)(B)—grounds.[8]

---

[6]     Citrus Proof of Claim at 2.

[7]     *Id.* at 3.

[8]     Obj. to Citrus Proof of Claim ¶ 16.

*Ungerer (Proof of Claim No. 8360)*

Ungerer is a distributor and supplier of, among other things, specialty flavor ingredients to resellers and end users.  Ungerer alleges that it purchased and redistributed diacetyl from *Citrus*, which in turn had purchased the diacetyl from Chemtura and/or Chemtura Canada.  According to the Ungerer proof of claim, Ungerer has been named as a defendant in 2 lawsuits alleging that exposure to diacetyl caused respiratory illness. Chemtura is also named as a defendant by the underlying plaintiffs in at least 1 of these actions.  The Ungerer proof of claim asserts indemnity and contribution claims against Chemtura arising from those 2 lawsuits and "for any other action that may be hereafter filed against or served upon, for unknown actions that have been filed against or served upon, or for any future actions against Ungerer arising out of allegations relating to exposure to Diacetyl."[9]

The 2 lawsuits brought against Ungerer involve 7 underlying Tort Plaintiffs. With respect to 5 of the 7 underlying Tort Plaintiffs' claims, Ungerer has *yet to incur any obligation to such plaintiffs*.  With respect to the remaining 2 underlying Tort Plaintiffs' claims, Ungerer has made payments under settlement agreements.  All of the underlying Tort Plaintiffs relating to the unliquidated portion of the Ungerer proof of claim have filed their own individual proofs of claim against Chemtura in these chapter 11 cases. The Debtors objected to the unliquidated portion of the Ungerer proof of claim, but have not objected to the portions of the Ungerer proof of claim that were based on actual settlement payments.

---

[9]    Ungerer Proof of Claim ¶ 4.

*Flavor Concepts (Proof of Claim No. 13952)*

Flavor Concepts is a supplier of specialty flavor products, some of which allegedly contained diacetyl manufactured and/or sold by Chemtura and Chemtura Canada.  According to the Flavor Concepts proof of claim, Flavor Concepts was named as a defendant in 3 lawsuits in which certain plaintiffs "claimed personal injuries arising out of exposure to the Debtor's products."[10]  Flavor Concepts entered into settlement agreements (the **"Flavor Concepts Settlements"**) with all of Tort Plaintiffs in the three lawsuits.  The Flavor Concepts Settlements, 2 governed by Missouri law and 1 by Colorado law, release and forever discharge Flavor Concepts and certain other entities from liability, but do not release Chemtura.  Here too, Chemtura contends that claims for contribution or indemnity based on these past settlements must be disallowed based on state law—as contrasted to 502(e)(1)(B)—grounds.  Chemtura argues (as with the Campbell Settlement) that: "Because [the Flavor Concepts Settlements] do not extinguish Chemtura's liability to these tort plaintiffs, Flavor Concepts is barred from seeking contribution from Chemtura for these liquidated settlements."[11]

*Palorome (Proof of Claim No. 9448)*

Polarome is a distributor and supplier of, among other things, specialty flavor ingredients to resellers and end users.  According to the Polarome proof of claim, Polarome has been named as a defendant in at least 16 lawsuits brought by Tort Plaintiffs, involving a total of 40 underlying plaintiffs.  Polarome asserts claims for contribution and indemnification against Chemtura for all pending and future litigation arising from diacetyl.  It appears that 33 of the 40 underlying Tort Plaintiffs for which

---

[10]     Flavor Concepts Proof of Claim ¶ 3.

[11]     Obj. to Flavor Concepts Proof of Claim ¶ 11.

Polarome seeks indemnity have filed their own individual proofs of claim against Chemtura in these chapter 11 cases.

The Polarome proof of claim originally asserted indemnity and contribution claims against Chemtura for all past, pending, and future diacetyl related litigation, irrespective of whether Chemtura is or was a named defendant in such litigation. On February 2, 2010, the Debtors objected to the Polarome proof of claim,[12] asserting that Polarome failed to allege sufficient facts or provide the information necessary to support a finding that any of the Debtors is legally liable to Polarome. Polarome filed its response to that objection on February 16, 2010,[13] and the Debtors and Polarome were able to resolve that objection by stipulation.[14] Under the stipulation, Polarome agreed to withdraw with prejudice its claims against the Debtors for any amounts Polarome already had paid or agreed to pay on account of claims by plaintiffs asserting injuries related to diacetyl, and to provide Chemtura with supplemental information regarding Polarome's pending diacetyl litigation.

*Spartan (Proof of Claim No. 11186)*

Spartan is a manufacturer of specialty maintenance products, such as cleaners and disinfectants. Chemtura filed a third-party complaint against Spartan in the Campbell Litigation, and Spartan filed a counterclaim against Chemtura seeking contribution for any diacetyl related liability. The Campbell Litigation involves 2 plaintiffs. Both *Campbell* plaintiffs have filed their own individual proofs of claim against Chemtura in these chapter 11 cases.

---

[12]     *See* ECF #1881.

[13]     *See* ECF #1983.

[14]     I authorized the Debtors to enter into the stipulation with Polarome by Order dated July 7, 2010, ECF #3105.

*The Debtors' Objections*

The Debtors have objected to the Contribution Claims on two grounds. First, to the extent that Corporate Claimants have yet to incur any obligation to some of the Tort Plaintiffs, the Debtors argue that the unliquidated and contingent portions of the Contribution Claims (the **"Unliquidated Contribution Claims"**) should be disallowed and expunged under section 502(e)(1)(B) of Code. Second, the Debtors argue that although Citrus and Flavor Concepts have incurred obligations to certain Tort Plaintiffs under the Campbell Settlement and the Flavor Concepts Settlements, respectively, those settlements did not, as a matter of applicable state law, preserve their rights to seek indemnity or contribution from Chemtura.

<u>Discussion</u>

<u>I.</u>

<u>Disallowance under Section 502(e)(1)(B)</u>

Section 502(e)(1) of the Code provides, in relevant part, that:

> [T]he court shall disallow any claim for reimbursement or contribution of any entity that is liable with the debtor … to the extent that—
>
>> (B) such claim for reimbursement or contribution is contingent as of the time of allowance or disallowance of such claim….[15]

Three elements must be met for a claim to be disallowed under section 502(e)(1)(B):

> (1) the claim must be for reimbursement or contribution;

---

[15]    11 U.S.C. § 502(e)(1).

-10-

(2) the party asserting the claim must be liable with the debtor on the claim of a third party; and

(3) the claim must be contingent at the time of its allowance or disallowance.

The Corporate Claimants do not contest the first element, and in fact, Citrus expressly admits that the Debtors have satisfied the first element.[16]  And the Debtors argue that the Unliquidated Contribution Claims also meet the remaining two elements of section 502(e)(1)(B).  I agree, with the exception of the claims for litigation defense costs, which I'll discuss below.

*Element 2: Co-liability*

The Corporate Claimants assert that they are not co-liable with the debtors on the underlying claims brought by the Tort Plaintiffs.  They argue[17] that:

(a) the Debtors' proposed plan of reorganization creates a diacetyl reserve that negates the "liable with" prong of 502(e)(1)(B);

(b) co-liability can not be established where several of the Tort Plaintiffs did not file a proof of claim before the bar date;

(c) the "liable with" prong requires that the Debtors establish that "the successful prosecution of a claim of [a Tort Plaintiff] against [a

---

[16]    "Citrus freely admits that the Citrus PoC seeks claims for 'reimbursement or contribution' from the Debtors . . . .  Accordingly, Citrus does not dispute that the Debtors have satisfied the first . . . element under section 502(e)(1)(B)."  Citrus Response ¶ 19 (internal citations omitted).

[17]    Only Citrus and Polarome filed substantive responses.  But Citrus joined Polarome's response, and Ungerer and Spartan joined Citrus's response.  As such, I've considered the arguments as if they were actually made by all of the Corporate Claimants.

Corporate Claimant] would *automatically* result in the Debtors being liable to such underlying tort plaintiff as well;"[18] and

      (d) co-liability cannot be established with respect to defense costs incurred by the Corporate Claimants in their efforts to defend against diacetyl related litigation.

*Plan Reserve*

Polarome argues that because the Debtors' proposed plan of reorganization would create a diacetyl reserve, "Chemtura has eliminated the risk of any competition between a creditor and his/her guarantor for the limited proceeds in the estate, as well as any risk of the 'double-dipping' that is at the heart of the Congressional intent underlying §502(e)(1)(B)."[19]  However, I must start with the actual language of the Code.[20]  And upon textual analysis, it is obvious that section 502(e)(1)(B) does not make allowance dependent upon the ultimate provisions of any reorganization plan.

Moreover, Polarome's understanding of the Debtors' proposed plan and in particular, the mechanics of the diacetyl reserve, is flawed.  Under the proposed plan, the Contribution Claims, to the extent they are not expunged, and the claims of the underlying Tort Plaintiffs are classified together as "Diacetyl Claims," and *all Diacetyl Claims* are entitled to a distribution from the diacetyl reserve.  And to the extent that the Contribution Claims are not expunged, the Debtors would be required to fund the diacetyl

---

[18]    Citrus Response ¶ 24 (italics added).

[19]    Polarome Response ¶ 13.

[20]    *See, e.g., In re General Motors Corp.,* 407 B.R. 463, 486 (Bankr. S.D.N.Y.2009) ("As usual, the Court starts with textual analysis"), *appeal dismissed and aff'd,* 428 B.R. 43 (S.D.N.Y. 2010), and 430 B.R. 65, (S.D.N.Y. 2010); *In re DBSD North America, Inc.,* 419 B.R. 179, 205 (Bankr. S.D.N.Y. 2009) (same); *Alta Partners Holdings LDC v. Credit Suisse First Boston LLC (In re Global Crossing Ltd.),* 385 B.R. 52, 66 (Bankr. S.D.N.Y. 2008) (same).

reserve based on the amount of underlying Tort Plaintiff claims *and* Contribution Claims.
Thus, to the extent it matters, the creation of a diacetyl reserve does not eliminate the risk
of double-dipping, nor does it defeat co-liability.

*Filing of Proof of Claim*

Next, Citrus argues (though without citation to any supporting cases) that co-
liability cannot be established in those instances where the Tort Plaintiffs did not file a
proof of claim before the bar date, because in that instance the Debtors do not face the
possibility of paying out twice on a single underlying claim.  But once more, the text of
section 502(e)(1)(B) contains no such limitation.  In the absence of statutory ambiguity,
an absurd result, or a result demonstrably at odds with the purposes of the statute, this
first consideration is by itself dispositive.  Additionally, numerous courts have dealt with
this argument and rejected it.[21]  In simple terms, section 502(e)(1)(B) is applicable
whether the underlying claimant files a proof of claim or not.

Such a result may seem harsh at first blush because without the filing of a proof of
claim, the underlying Tort Plaintiff could not receive a distribution from the Debtors,
which the Corporate Claimant could otherwise use as an offset if found liable to the Tort

---

[21]    *See e.g., In re APCO Liquidating Trust*, 370 B.R. 625, 635 (Bankr. D. Del. 2007) (Shannon, J.)
("Nonetheless, the failure of KDHE to file a claim does not alter the co-liability of the Debtors and
the City to KDHE."); *In re Lull Corp.*, 162 B.R. 234, 237-38 (Bankr. D. Minn. 1993) (Dreher, J.)
("*Lull*") ("[S]ection 502(e) does not require that a proof of claim be filed in the proceeding to be
liable with the debtor."); *In re Wedtech Corp.*, 85 B.R. 285, 290 (Bankr. S.D.N.Y. 1988)
(Buchman, J.) ("*Wedtech*") ("Contrary to claimants' argument that the co-liability of debtor and
claimant requirement of § 502(e)(1)(B) permits that section to apply only where the underlying
plaintiff has filed a claim in the bankruptcy case and that claim has been allowed, the statutory
language of § 502(e)(1)(B) contains no such requirement.  In enacting the provision, Congress
merely provided for disallowance of contingent claims for reimbursement filed by persons liable
with the debtor.  To be sure, the legislative history concerning § 502(e) indicates that a principal
purpose of the entire subsection is to prevent a double payment by the estate, and there can be no
such double payment if the plaintiff fails to file a claim. But the language of § 502(e)(1)(B) is,
unlike § 502(e)(1)(A), not so limited.  That § 502(e)(1)(A), in mandating disallowance of claims
for contribution to the extent that the creditors' claims against the estate are disallowed, does
contain such a requirement indicates that Congress knew how to enact such a provision.").

-13-

Plaintiff in future litigation.  However, one inclined to have a perception of inequity must take into Code section 501(b),[22] and Bankruptcy Rule 3005(a).[23]  Those provisions provide that if a creditor does not timely file a proof of claim, an entity that is liable to such creditor with the debtor may file a proof of such claim within 30 days after the claims bar date.  Thus, to the extent that Citrus or any of the other Corporate Claimants were actually interested in ensuring preservation of its setoff rights, it could have filed a surrogate proof of claim.

*"Liable With"*

Next, Citrus argues that all of the relevant cases cited by the Debtors "demonstrate that the term 'liable with' means that the successful prosecution of the underlying claim against one party *automatically* results in liability of another party to the underlying claimant with a resultant right to seek contribution or indemnity."[24]  In other words, Citrus asserts that for co-liability to exist, "some additional nexus must exist as between co-defendants in the underlying lawsuit."[25]  But here too, I cannot agree.

Once more, I start with textual analysis.  Upon doing so, I find this argument flawed, because it's unsupported by the text of section 502(e)(1)(B) itself, which does not include any requirement that a debtor's liability be automatic.

---

[22]    11 U.S.C. § 501(b) ("If a creditor does not timely file a proof of such creditor's claim, an entity that is liable to such creditor with the debtor … may file a proof of such claim.").

[23]    Fed. R. Bankr. P. 3005(a) ("If a creditor does not timely file a proof of claim under Rule 3002(c) or 3003(c), any entity that is or may be liable with the debtor to that creditor … may file a proof of the claim within 30 days after the expiration of the time for filing claims prescribed by Rule 3002(c) or Rule 3003(c) whichever is applicable. No distribution shall be made on the claim except on satisfactory proof that the original debt will be diminished by the amount of distribution.").

[24]    Citrus Response ¶ 23 (italics added).

[25]    *Id.* ¶ 23.

Moreover, by adding the word "automatically" to the definition of "liable with," Citrus runs afoul of the caselaw that interprets co-liability broadly.[26]  For example, in *Wedtech,* Judge Buschman of this Court held that "the co-liability requirement is to be interpreted to require a finding that the causes of action in the underlying lawsuit assert claims upon which, if proven, the debtor *could be* liable but for the automatic stay."[27]

*Amatex* is directly on point.[28]  In that case, the debtor, a former manufacturer of products containing asbestos, objected to proofs of claims for "unliquidated sums for which the respective claimants may be liable jointly with the Debtor on asbestosis claims and concerning which asbestosis claimants consequently may have rights of contribution or indemnity against the Debtor."[29]  Importantly, the underlying tort claims had not been adjudicated; no judgment had been entered holding the debtor and the contribution claimants jointly and severally liable for the asbestos-related injuries that would there give rise to a claim of contribution.[30]  And the contribution claimants did not allege any of their own injuries or damages caused by the debtor, as opposed to the claims for contribution and reimbursement.[31]  The court granted the debtor's motion to expunge the

---

[26]    *See e.g., Wedtech,*, 85 B.R. at 290; *Lull*, 162 B.R. at 237 ("The co-liability does not need to be judicially established.  Nor must the liability be contractually established . . . . Under this broad standard, the liability can be statutory.") (internal citations omitted); *In re Amatex Corp.*, 110 B.R. 168, 171 (Bankr. E.D. Pa. 1990) (Scholl, J.) ("*Amatex*") ("Congress clearly meant to include all situations wherein indemnitors or contributors could be liable with the debtor within the scope of § 502(e)(1)(B).").; *In re Baldwin-United Corp.*, 55 B.R. 885 (Bankr. S.D. Ohio 1985) (Newsome, J.) ("The phrase 'an entity that is liable with the debtor' is broad enough to encompass any type of liability shared with the debtor, whatever its basis.  Had Congress intended to limit the section to contractual claims it could easily have written 'entity that is contractually liable with the debtor.'").

[27]    *Wedtech,* 85 B.R. at 290 (emphasis added).

[28]    *Amatex*, 110 B.R. at 168.

[29]    *Id*. at 168-69.

[30]    *Id*. at 169.

[31]    *Id*.

contribution claims based on section 502(e)(1)(B).  It stated "Congress clearly meant to include *all situations* wherein indemnitors or contributors could be liable with the debtor within the scope of § 502(e)(1)(B)."[32]

*Costs of Defense*

Under the inclusive language of section 502(e)(1)(B), and the broad interpretations of co-liability in the caselaw, the Debtors have satisfied the co-liability element with respect to the great bulk of the Unliquidated Contribution Claims.  They have failed to do so, however, in one respect.  To the extent the Corporate Claimants are asserting claims for the costs of defending diacetyl actions against the underlying Tort Plaintiffs, I rule that the Debtors have not established co-liability.  Although such claims for defense reimbursement have some trappings of a traditional contribution claim, they differ from the remainder of the Contribution Claims in that they don't have their origins in a primary liability to the underlying Tort Plaintiff.  As the Debtors' counsel admitted at oral argument, "obviously the amounts [the Corporate Claimants] owe to their defense counsel are not amounts that they owe to the [Tort Plaintiffs]."[33]

For the avoidance of doubt, I note that I'm not now making a determination as to whether the Debtors are actually liable to the Corporate Claimants on account of defense costs.  That matter isn't presently before me.  Making such a determination would at least seemingly require consideration of various states' laws, none of which has been briefed or argued.  I'm holding now simply that section 502(e)(1)(B) is not a bar to such claims.

---

[32]     *Id*. at 171 (emphasis added).

[33]     *See* 8/4/2010 Hrg. Tr. at 61.

-16-

*Element 3:  Contingency*

In its papers, Polarome argues that the Unliquidated Contribution Claims are not

contingent, but are merely unliquidated.  Polarome cites several cases as authority to

support that contention, though only one of them, *In re RNI Wind Down Corp.*,[34] actually

considered whether a claim was contingent for section 502(e)(1)(B) purposes, and is

sufficiently arguably on point.  Although the *RNI* court ultimately overruled an objection

to the claim to the extent it remained after the more relevant elements of the claim had

been waived, *RNI* involved a dramatically different set of facts, and its analysis actually

supports the Debtors.

In *RNI*, a corporate officer who'd been named as a defendant in a civil action

brought by the SEC filed a proof of claim against the debtors' estate, seeking to enforce

his right of advancement, under the company's certificate of incorporation and bylaws,

for his costs of defense, after he'd executed an undertaking to repay amounts advanced if

it were ultimately determined that he wasn't entitled to indemnification.[35]  In a well-

reasoned opinion, with which I fully agree, Judge Sontchi overruled section 502(e)(1)(B)

objections to that claim, finding that of the three requirements for 502(e)(1)(B)

disallowance, only the "reimbursement" requirement had been satisfied, and that the

"contingent" and "co-liable" requirements had not been.

But *RNI* involved facts very different from those here.  It did not involve a claim

for contribution or indemnity for amounts paid to a third party (there the SEC; here Tort

Claimants) upon a finding of wrongful conduct.  Rather, it involved a claim simply for

---

[34]    369 B.R. 174 (Bankr. D. Del. 2007) (Sontchi, J.) ("*RNI*").

[35]    *Id.* at 180-81.

-17-

costs of defense, which I've already ruled[36] may likewise be recovered here.

Significantly, the claimant in *RNI* had *waived* any claims he might have for amounts he

might have to pay on the underlying claims (there, by the SEC).[37]  The right to payment

that Judge Sontchi found to be "unliquidated but not contingent" was the right to the

*advancement of those costs of defense*, and not the right to *contribution or indemnity for*

*amounts ultimately paid to a third party*—the circumstance that would be relevant here.[38]

Judge Sontchi merely found (understandably, given appropriate analysis) that the right to

advancement was a then-existing right (under the certificate of incorporation, bylaws and

Delaware law), subject only to uncertainty at the time as to just how much the defense

costs would turn out to be.  Although the *RNI* estate might thereafter have a separate right

in the future to establish a separate cause of action against the corporate affiliates to

secure repayment of amounts advanced, that separate right didn't affect his right to

advancement at the time.[39]

        In fact, Judge Sontchi actually used claims for contribution as an example of what

would satisfy the contingency elements.  He stated that "the claims [in *RNI*] are

fundamentally different from claims for contribution (such as under CERCLA) where the

---

[36]        *See* page 16 above.

[37]        *RNI*, 369 B.R. at 183 ("Mr. Feldman has waived his right to indemnification for any losses
            incurred as a result of the underlying claims other than for reimbursement of attorneys' fees and
            expenses.").

[38]        Judge Sontchi recognized that "indemnification and advancement are distinct but related
            concepts."  *Id.* at 185.  In an opinion some years ago, I discussed at length the distinctions between
            advancement and indemnification, noting that they are "legally quite distinct types of legal rights."
            *See In re Adelphia Communications Corp.*, 323 B.R. 345, 375-76 (Bankr. S.D.N.Y. 2005).

[39]        *See RNI*, 369 B.R. at 187 ("The fact that the Debtors have a contingent and unliquidated claim
            against Mr. Feldman for return of the advanced funds to which Mr. Feldman may have little or no
            defense except insolvency is insufficient, as a matter of law, to render Mr. Feldman's claim for
            pre-indemnification advancement of litigation related expenses as contingent.").

liability itself does not arise unless and until the payment is made to the third party."[40]

His reasoning in that regard conformed to other cases that had considered contingency

under section 502(e)(1)(B).[41]

Thus, while we all understand and agree that there is a distinction between

"contingent" and unliquidated, that distinction isn't material here.  The unliquidated but

non-contingent costs of defense here still result in a potentially allowable claim, but the

claims for contribution in the event that a Tort Claimant succeeds against Corporate

Claimants are still contingent, and satisfy this prong of the 3-part test for establishing

502(e)(1)(B) disallowance.

## II.

### Disallowance By Reason of State Law

As noted, under the Campbell Settlement and Flavor Concepts Settlements, Citrus

and Flavor Concepts actually made payments to third parties on diacetyl claims.

Although the Debtors don't contend that contribution claims based on such payments are

disallowable section 502(e)(1)(B), they object to the contribution claims based on those

settlement payments on state law grounds.

*The Campbell Settlement*

Illinois law "prohibits a settling tortfeasor from recovering contribution from

another tortfeasor whose liability is not extinguished by the settlement."[42]  Citrus

acknowledges that the Campbell Settlement did not extinguish the Debtors' liability to

---

[40]      *Id*. at 184.

[41]      *See e.g., In re Drexel Burnham Lambert Group, Inc*., 148 B.R. 982, 987 (Bankr. S.D.N.Y. 1992)
(Conrad, J.) ("The liability has not been determined in the underlying suit against the Claimants
who are "liable with" Drexel, and payment has not been made to the plaintiff in the underlying
action.  Nor has there been any payment based on a settlement. Thus, the claim is contingent.").

[42]      *In re Guardianship of Babb*, 162 Ill. 2d 153, 172, 642 N.E.2d 1195, 1204 (1994).

the *Campbell* plaintiffs. In fact, Citrus acknowledges that it is not entitled to contribution from the Debtors on account of the Campbell Settlement.[43] However, Citrus asserts that it is nevertheless entitled to *indemnity* on account of the Campbell Settlement.

Though not in its papers, in oral argument counsel for Citrus cited authority, *American National Bank v. Columbus-Cuneo-Cabrini Medical Center*, to support its contention.[44] Relying on *American National Bank,* Citrus argued that when a settlement does not extinguish the liability of a joint tortfeasor, even though the contribution statute in Illinois eliminates claims for contribution and even equitable indemnity, a claim for "implied indemnity" might remain.

In *American National Bank*, a hospital was sued, along with several doctors, as a result of a negligently performed surgical procedure.[45] The plaintiffs alleged that the hospital was vicariously liable for the acts of the doctor defendants—based on agency doctrine, by reason of a principal-agent relationship.[46] In that context, the *American National Bank* court ruled that: "[we] therefore hold that common law implied indemnity was not abolished by the Contribution Act *in quasi-contractual relationships involving vicarious liability*"[47]—though it reiterated that, in light of the Illinois Joint Tortfeasor Contribution Act, equitable indemnity, a remedy based in tort, was no longer available where a settlement does not extinguish the liability of a joint tortfeasor.[48]

---

[43]    Citrus Response ¶ 42 ("Citrus does not dispute that under the Illinois Joint Tortfeasor Contribution Act ("IJTCA"), Citrus is not entitled to contribution from the Debtors in the Campbell Settlement.").

[44]    *See* 8/4/2010 Hrg. Tr., 68 (citing *American Nat. Bank and Trust Co. v. Columbus-Cuneo-Cabrini Medical Center*, 154 Ill.2d 347, 609 N.E.2d 285 (1992) (**American National Bank**")).

[45]    *American National Bank,* 154 Ill.2d at 348.

[46]    *Id.* at 349.

[47]    *Id.* at 354 (emphasis added).

[48]    *Id.* at 351.

Here, however, common law implied indemnity is not an available remedy,

because there has been no evidence or allegation that a principal-agent or quasi-

contractual relationship exists between Citrus and Chemtura.  Thus, Citrus must rely on

either contribution or equitable indemnity, which it freely admits are not available

remedies.

*The Flavor Concepts Settlements*

As noted in the Findings of Fact section above, the Flavor Concepts Settlements

actually encompass three separate settlements, 2 under the law of Missouri and 1 under

the law of Colorado.  None of the Flavor Concepts Settlements extinguished the Debtors'

liability to the underlying Tort Plaintiffs.

With respect to the settlement in the Missouri litigation, *Wibbenmeyer, et al. v.

Aldrich Chemical Co.,* the underlying Tort Plaintiff did not file a proof of claim against

any of the Debtors.  As a result, Flavor Concepts argues that "[b]ecause the bar date for

these claims has passed, the *Wibbenmeyer* plaintiffs are forever barred from making a

claim against Debtors, and Debtors' liability to the *Wibbenmeyer* plaintiffs is

extinguished."[49]  Therefore, Flavor Concepts argues, the Debtors are liable for

contribution on account of the *Wibbenmeyer* settlement.

In support of its argument, Flavor Concepts cites to *Clark's Resources, Inc. v.

Ireland,*[50] where one of Missouri's intermediate appellate courts considered a situation

where a statute of limitations had passed.  In *Clark's Resources*, the parents of a son

killed in a bar fight settled a wrongful death action against the bar owner under a

---

[49]    Flavor Concepts Response ¶ 5.

[50]    *See Clark's Resources, Inc. v. Ireland*, 142 S.W.3d 769 (Mo. App. E.D. 2004) ("***Clark's
Resources***").

settlement that didn't discharge the liability of anyone else.[51]  Thereafter, the bar owner

filed a complaint seeking contribution from a patron involved in the fight, whom the

parents hadn't sued.  But by that time it did so (about 5 years after the fight), the 3-year

statute of limitations had run on the underlying tort causes of action.[52]  While the newly-

sued patron argued that "a settling tortfeasor can seek contribution *only* from another

tortfeasor whose liability *he has discharged* in the settlement agreement,"[53]  the *Clark's*

*Resources* court disagreed.  It held that the Uniform Comparative Fault Act "contains no

such limitation on the manner in which the non-settlor's liability is extinguished:

contribution is available 'if the liability of the person against whom contribution is sought

*has been* extinguished . . . .'"[54]  The passage of the statute of limitations extinguished the

liability of the patron, just as an express discharge of the patron would have.

    Here, Flavor Concepts argues that because the *Wibbenmeyer* plaintiffs did not file

a proof of claim in these cases before the bar date, Chemtura's liability to them has been

extinguished, just as the parents' claims against the bar patron were extinguished by the

statute of limitations in *Clark's Reso*urces.   Therefore, Flavor Concepts argues, it is

entitled to contribution from Chemtura.

    But Flavor Concepts' reasoning in this regard is imperfect, in at least two

respects.  First, Flavor Concepts correctly recognized at oral argument that "the claim of

the *Wibbenmeyer* plaintiff, who has not filed a proof of claim before the bar date, *will be*

extinguished upon confirmation of the plan."[55]  (This was of course correct because in a

---

[51]    *Id.* at 770.

[52]    *Id.*.

[53]    *Id.* at 771 (emphasis in original).

[54]    *Id.* (citing section 4(b) of the Uniform Comparative Fault Act) (emphasis added).

[55]    8/4/2010 Hrg. Tr. 78 (emphasis added).

chapter 11 case a claim is not discharged—or extinguished in the vernacular of

contribution law—until a plan is confirmed.)  Claims' validity are determined as of the

time the bankruptcy case was filed, and confirmation of this plan had not then taken

place, if it ever will.

Second, while claims not filed before the bar date are generally extinguished, they

aren't always.  By statute, distributions may be made on tardily filed claims in chapter 7

cases, under sections 726(a)(2)(C) and 726(a)(3) of the Code.  And under appropriate

circumstances, late filed claims may be considered in chapter 11 cases like these for

excusable neglect.[56]  One cannot legitimately regard the passage of a bankruptcy claims

bar date to be equivalent, or analogous, to the passage of time under a statute of

limitations.

Thus, *Clark's Resources* is distinguishable.  The factual predicate upon which it

was based here is lacking.

Finally, Flavor Concepts argues that its remaining claims should not be expunged

until such time as I rule on whether the relevant underlying Tort Plaintiffs have a claim

against the Debtors.  Presumably, Flavor Concepts relies on a theory similar to that which

it argued with respect to the *Wibbenmeyer* plaintiffs.

The other settlements are governed by Colorado law, not Missouri law, but I

assume, without deciding, that the Colorado courts would rule in accordance with *Clark's

Resources* where an underlying tort claim was likewise barred by the statute of

limitations.  But any such holding would be distinguishable for the same reasons that I

found *Clark's Resources* to be distinguishable here, and for one additional one as well;

---

[56]    *See, e.g., Pioneer Inv. Services Co. v. Brunswick Assocs. Ltd P'ship,* 507 U.S. 380, 388 (1993).

here the underlying Tort Plaintiffs in the Colorado Flavor Concepts Settlements *did* file proofs of claim.

Thus, I conclude that Flavor Concepts has not established a contribution claim on account of any of the Flavor Concepts Settlements.

<u>Conclusion</u>

For the foregoing reasons, I conclude that the Unliquidated Contribution Claims are contingent claims for reimbursement or contribution of an entity that's liable with the Debtors to a third party creditor, and thus that they must be disallowed under section 502(e)(1)(B). Therefore, the Debtors' 502(e)(1)(B) objections to the Unliquidated Contribution Claims are sustained. I also conclude that the portions of the Contribution Claims that are based on the Campbell Settlement and the Flavor Concepts Settlements fail to satisfy applicable state law. Accordingly, the Debtors' objections to those claims are also sustained.

The Debtors are to settle an order, on no less than 2 business days' notice by hand, fax or e-mail (or 7 calendar days' notice by mail), in accordance with this Decision. The time to appeal the resulting order will run from the date of its entry, and not the date of this decision.

Dated: New York, New York
      September 7, 2010

    */s/ **Robert E. Gerber***
    United States Bankruptcy Judge