Shawn M. Riley
Paul W. Linehan
Richard W. Cline
McDONALD HOPKINS LLC
600 Superior Avenue, East
Suite 2100
Cleveland, OH 44114-2653
Telephone:  (216) 348-5400
Facsimile:  (216) 348-5474

*Counsel for Spartech Polycom Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| CHEMTURA CORPORATION, *et al.*,[1] | Case No. 09-11233 (REG) |
| Debtors. | Jointly Administered |

**SPARTECH POLYCOM INC.'S OBJECTION TO THE DEBTORS' MOTION FOR AN ORDER ESTABLISHING A DISTRIBUTION RESERVE AMOUNT WITH RESPECT TO DISPUTED CLAIMS IN CONNECTION WITH CONFIRMATION OF THE JOINT CHAPTER 11 PLAN OF CHEMTURA CORPORATION, ET AL.**

Spartech Polycom Inc., on behalf of itself and all affiliates (collectively referred to as "Spartech"), hereby submits their objection (this "Objection") to the Debtors' Motion for an Order Establishing a Distribution Reserve Amount with Respect to Disputed Claims in Connection with Confirmation of the Joint Chapter 11 Plan of Chemtura Corporation, *et. al.*,

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal taxpayer-identification number, are: Chemtura Corporation (3153); A&M Cleaning Products, LLC (4712); Aqua Clear Industries, LLC (1394); ASCK, Inc. (4489); ASEPSIS, Inc. (6270); BioLab Company Store, LLC (0131); BioLab Franchise Company, LLC (6709); Bio-Lab, Inc. (8754); BioLab Textile Additives, LLC (4348); CNK Chemical Realty Corporation (5340); Crompton Colors Incorporated (3341); Crompton Holding Corporation (3342); Crompton Monochem, Inc. (3574); GLCC Laurel, LLC (5687); Great Lakes Chemical Corporation (5035); Great Lakes Chemical Global, Inc. (4486); GT Seed Treatment, Inc. (5292); HomeCare Labs, Inc. (5038); ISCI, Inc. (7696); Kem Manufacturing Corporation (0603); Laurel Industries Holdings, Inc. (3635); Monochem, Inc. (5612); Naugatuck Treatment Company (2035); Recreational Water Products, Inc. (8754); Uniroyal Chemical Company Limited (Delaware) (9910); Weber City Road LLC (4381); and WRL of Indiana, Inc. (9136).

{2337807:}

Docket No. 3779 (the "Motion"). In support of this Objection, Spartech respectfully states as follows:

### Preliminary Statement

1. Spartech objects to the entry of an order approving the Motion because the procedures contemplated by the Debtors are contrary to the provisions of 502(c) of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code") and the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). The overall nature of the Motion is inequitable and grossly unfair to creditors; even the allotted notice period of four business days to file an objection to the Motion is unreasonable.

2. The primary objective of the Motion is to vest the Debtors with the discretion to structure the Disputed Claims Reserve[2] to their own advantage and convenience. First and foremost, the amount of funds that the Debtors propose to allocate for the Disputed Claims Reserve is preposterously low and will essentially deprive creditors of their ability to recover even when the Disputed Claim is resolved. The Debtors propose establishing the Disputed Claims Reserve in the amount of $47.85 million, when the full amount of the Disputed Claims is approximately $468 million. The Debtors are valuing Claims at about 10% of their stated value. In effect, the Debtors' proposed methodology will operate by taking away what is owed to creditors and giving it to equity holders, thereby treating holders of Disputed Claims disparately by allowing recovery of less than that of other similarly situated creditors. Moreover, the Debtors propose no alternative remedies for holders of Disputed Claims. Therefore, once a Disputed Claim is Allowed, a creditors only recourse is to obtain any available distribution from the Disputed Claims Reserve. The Disputed Claims Reserve as proposed is grossly unfair and only works to the advantage of the Debtors. The Debtors are attempting to circumvent the

---

[2] All capitalized terms not otherwise defined herein have the meanings given to them in the Motion and/or Plan.

proper procedures for allowance and disallowance of Claims, which should not be tolerated by this Court. For the following reasons, Spartech requests that this Court either deny the Motion in its entirety, set aside a Disputed Claims Reserve in the full amount of the Disputed Claims, or set aside a separate reserve for Spartech in the full amount of their proof of claim.[3]

### Background

3. Spartech submitted its Proof of Claim on October 30, 2009, in accordance with the Debtors' Proof of Claim Bar Date. The Proof of Claim verifies an unsecured claim of $10,929,722.43 and an administrative priority claim of $293,979.35. A significant portion of Spartech's Proof of Claim concerns pending litigation in the 17th Judicial District of Tarrant County, Texas.[4] The genesis of the State Litigation and Spartech's Proof of Claim is Great Lakes' breach of contract. More specifically, the Debtors and Spartech entered into a Toll Manufacturing and Sales Agreement on or about September 6, 2002 (the "Toll Agreement"). Pursuant to the Toll Agreement, Spartech was granted exclusive rights to toll manufacture various finished products for Great Lakes. Great Lakes breached the Toll Agreement causing Spartech to sustain significant damages.

4. To date, the Debtors have not filed an objection to Spartech's Proof of Claim, thus Spartech's Proof of Claim is currently valid in its full amount.

---

[3] Spartech filed two proofs of claim. The first listed Chemtura Corporation ("Chemtura") as the debtor and the second listed Great Lakes Chemical Corporation ("Great Lakes") as the debtor. Spartech filed the two proofs of claim out of an abundance of caution because Spartech had a contract with Great Lakes, who was succeeded by Chemtura. Both proofs of claim are for approximately the same amount, the slight difference accounts for the amount scheduled by the Debtors versus Spartech's invoices for payment. For purposes of this Objection, Spartech refers to the proof of claim identified as number 10812 (the "Proof of Claim"), filed in the total amount of $11,223,701.78, consisting of $10,929,722.43 in unsecured claims and $293,979.35 in administrative priority claims.

[4] On October 12, 2007, Spartech commenced an action against Great Lakes in the 17th Judicial District of Tarrant County, Texas, asserting that Great Lakes breached certain provisions of a contract that had been previously entered into between the parties (the "State Litigation"). Spartech has been granted summary judgment on some of its claims in the State Litigation. Spartech will be filing a motion for relief from stay seeking an opportunity to fully resolve the State Litigation in Texas State Court.

5. The Debtors filed the Joint Chapter 11 Plan of Chemtura Corporation, *et al.* dated August 4, 2010 (the "Plan"). Article VIII of the Plan contemplates the creation of the Disputed Claims Reserve for the purpose of addressing contingent, unliquidated, and disputed claims which are not yet Allowed, other than Diacetyl claims and Environmental claims (the "Disputed Claims").

6. The Motion seeks entry of an order pursuant to sections 105(a), 502(c) and 1142(b) of the Bankruptcy Code approving the amount of the Disputed Claims Reserve to be established pursuant to Article VIII of the Plan.

### Debtors' Proposed Procedures

7. In the Motion, the Debtors seek to establish a Disputed Claims Reserve with respect to the Disputed Claims. (Motion, paragraph 4).

8. There are approximately 2,250 Disputed Claims in the estimated asserted amount of $468 million. (Motion, paragraph 9).

9. The Debtors seek Court authority to establish a Disputed Claims Reserve in the amount of $47.8 million, which is approximately 10% of the total amount of Disputed Claims. (Motion, paragraph 10).

10. The Disputed Claims Reserve will be the only source of funding for Disputed Claims that ultimately become Allowed. (Motion, paragraph 5).

11. Despite the fact that the Disputed Claims Reserve covers only 10% of the amount of Disputed Claims, the Debtors claim that this amount includes a 20% "cushion" over and above the Debtors' estimate of the reasonable high-end aggregate valuation of Disputed Claims. (Motion, paragraph 13).

{2337807:}                                                    4

**Response to Debtors' Motion**

**A.    The Debtors Have Not Met Their Burden in Objecting to the Proof of Claim.**

12.    The Debtors attempt to circumvent the requirements set forth in the Bankruptcy Code and Rules.  Bankruptcy Rule 3007 prescribes the procedure for making an objection pursuant to § 502(a).  Fed. R. Bankr. P. 3007.  An objection is to be in writing and must be filed. *Id*.  An objection is a "contested matter" governed by Bankruptcy Rule 9014, unless a counterclaim is joined with the objection, in which event it becomes an adversary proceeding. *Id.*

13.    There are no exceptions to this requirement, especially one that the Debtors are attempting to ascribe to - filing a Motion establishing a reserve amount that is completely inadequate and deprives creditors of an appropriate recovery.   While the Motion does not do this on its face, the result of the procedures will do just that. The Debtors cannot simply ignore and fail to address the merits of the Disputed Claims.  The Debtors in effect are attempting to reduce Claims by 90% on the back end without following any of the governing rules.

14.    The procedures set forth in the Bankruptcy Rules are clear - a proof of claim that is executed and filed in accordance with the Federal Rules of Bankruptcy Procedure constitutes *prima facie* evidence of the validity and amount of the claim.  Fed R. Bankr. P. 3001(f). Spartech's Proof of Claim was timely filed and executed in accordance with the Bankruptcy Rules and Bankruptcy Code and accordingly, constitutes *prima facie* evidence of the validity and amount of the claim.  The Proof of Claim was not filed as an unliquidated claim but in the stated amount of $11,223,701.78.  Furthermore, Spartech alleged facts and submitted documentation to sufficiently support their claim.   Spartech's success in the State Litigation further supports Spartech's Proof of Claim.

15. Once a claim has been filed, the claim is deemed valid. *In re SemCrude, L.P.*, 416 B.R. 399, 403 (Bankr. D. Del. 2009). The burden then shifts to the party objecting to the claim to present proof that the claim is invalid. *Id.* The Debtors have not filed an objection to Spartech's Proof of Claim to date, nor did they state grounds for an objection in the Motion, and therefore the Debtors have not even begun to satisfy their burden to present proof that the claim is invalid. Moreover, even objecting to a claim does not deprive the claim of its presumptive validity; rather, the evidentiary presumption remains in effect notwithstanding a claim objection. *In re Goodell,* No. 05-16948, 2006 WL 23568, * at 2. (Bankr. E.D. Pa. Jan. 4, 2006).[5]

16. Spartech's Proof of Claim describes each component of Spartech's claim and provides the basis for the amounts set forth therein. Spartech's Proof of Claim should be Allowed as filed because the Debtors have not met their burden of providing any evidence to the contrary. A creditor with a smaller Disputed Claim would not be as adversely affected as Spartech because Spartech's Proof of Claim is for over 20% of the Disputed Claims Reserve. The Debtors should not be allowed to arbitrarily reduce or wipe out Spartech's claim by not providing sufficient funds. In accordance with section 502(a) of the Bankruptcy Code, if the Debtors are to set a Disputed Claims Reserve, it either must be for the full amount of the Disputed Claims or a separate reserve must be established for the full amount of Spartech's Proof of Claim.

B. **Estimation Procedures Proposed by the Debtors Are Fundamentally Unfair and One-Sided.**

    1. *The Debtors' Estimated Procedures Contradict the Very Purpose of Section 502(c).*

17. The proposed Disputed Claims Reserve in the amount of $47.85 million is not only outrageously low and inappropriate but also is wholly insufficient to satisfy the pool of

---

[5] The case is attached as Exhibit A.

{2337807:}    6

Disputed Claims. The Debtors' one sided estimation procedures contradict the underlying purpose of section 502(c) — the promotion of fair distribution to creditors.

18. While section 502(c) of the Bankruptcy Code permits this Court to estimate contingent or unliquidated claims, this discretion is not without boundaries. Section 502(c) is designed "to promote a fair distribution to creditors through a realistic assessment of certain claims." *In re Enron Corp.,* No. 01-16034, 2006 WL 544463, at *3 (Bankr. S.D.N.Y. January 17, 2006),[6] citing *In re Continental Airlines,* 981 F.2d 1450, 1461 (5th Cir. 1993). To that end, courts have held that for claim estimation purposes, "claims are to be appraised on the basis of what would have been a fair resolution of the claims in absence of bankruptcy." *Owens Corning v. Credit Suisse First Boston,* 322 B.R. 719, 722 (D. Del. 2005).

19. Furthermore, courts have held that given the impact that estimation may have on a claimant's rights, in determining whether estimation procedures are proper, courts evaluate whether the procedures meet general due process requirements. *In re Adelphia Bus. Solutions, Inc.,* 341 B.R. 415, 422-23 (Bankr. S.D.N.Y. 2003). Due process is not an inflexible standard but requires a balancing of interests and a recognition of the circumstances at issue. *In re Hoffinger Indus., Inc.,* 307 B.R. 112, 117 (Bankr. E.D. Ark. 2004); *Beatrice Co. v. Rusty Jones, Inc. (In re Rusty Jones, Inc.),* 153 B.R. 535, 536-539 (N.D. Ill. 1993).

20. The Debtors claim that they are balancing the interests of the creditors by "funding the Disputed Claims Reserve with substantially less than the full asserted amount of the Disputed Claims, but in an amount that still reflects the Debtors' reasonable high-end estimate of such Claims actual value, plus a cushion of 20 percent." (Motion, paragraph 7). Further, the Debtors assert there is sufficient value to provide reasonable assurance that all Disputed Claims, if and when allowed, will receive the same proportion of Cash and New Chemtura Stock that

---

[6] Attach as Exhibit B.

they would have received if they had been Allowed on the Distribution Date. (Motion, paragraph 6). The Debtors note, however, that the Disputed Claims holders only recourse will be to the undistributed cash and New Chemtura Stock held in the Disputed Claims Reserve. (Motion, paragraph 5).

21. The likely outcome of the Debtors' proposed procedures is contrary to the purpose of section 502(c). The Debtors are setting aside approximately 10% of the total amount of the Disputed Claims. Without much explanation, the Debtors have lumped together approximately 2,250 dissimilar Claims and in effect applied a 90% reduction of the stated value of those Claims without any regard whatsoever to the individual merits of those Claims. Spartech's Proof of Claim alone accounts for approximately 25% of the proposed Disputed Claims Reserve. This not only grossly limits the potential recovery amount of each Disputed Claim, but the Debtors' proposed method unfairly leverages the Debtors against the creditors as it will ultimately result in a race of the creditors to settle and obtain a portion of the limited pool of funds before the Disputed Claims Reserve is completely disbursed.

22. Furthermore, the Debtors are seeking to alter the priority and the distribution scheme under the Bankruptcy Code. The Debtors contend "that the proposed Disputed Claims Reserve amount represents a reasonable compromise, taking into account, both the desire of equity holders to obtain as large a distribution as possible in the immediate term and the potential concerns of claimants subject to the hard cap Disputed Claims Reserve regarding its adequacy." (Motion, paragraph 15). The absolute priority rule requires that unsecured creditors receive the present value of their claims prior to the retention of any equity interest in the estates by shareholders or owners. 11 U.S.C. § 1129(b)(2)(B). Preserving property on account of a claim junior to a senior class is in violation of the "absolute priority" rule. 11 U.S.C.A.

§ 1129(b)(2)(B)(ii). The Debtors' proposed methodology will end with a result that does not conform to standards set forth in the Bankruptcy Code.

23. Contrary to the Debtors assertion, the Debtors' proposed procedures do not equate to a fair balancing of interests and do not provide for adequate due process. The likely result is that even if Spartech's Claim becomes an Allowed claim, Spartech will not be able to recover its stated claim. Furthermore, the Disputed Claims Reserve as proposed may end up violating the absolute priority rule and completely lacks the striking of any fair balance between creditor protection and debtor relief. In this case, the equitable balance is severally skewed in favor of the Debtors.

### 2. *The Debtors' Method of Estimation Is Not Proper.*

24. Bankruptcy courts are free to use the best method available to it under the circumstances to value the claim. *Addison v. Langston (In re Brints Cotton Mktg., Inc.),* 737 F.2d 1338, 1341 (5th Cir. 1984). It is unclear in this case what method the Debtors used. The Debtors claim that they analyzed each claim with an eye toward estimating each claim at a value that, to the best of the Debtors' knowledge, reflect potential liability at a reasonable "high-end" estimate. (Motion, paragraph 11).

25. In *In re Enron Corp,* supra, at pg *7, the court reviewed the applicable standards for estimating a claim. The court noted that it must apply the legal rules which govern the ultimate value of the claim, which ordinarily requires the application of state law. *Id.* Courts utilize various procedures to estimate the value of the claim. In *In re Brints,* supra at 1341, the Bankruptcy Court conducted a trial. In *In re Thomson McKinnon Sec., Inc.,* 143 B.R. 612, 619 (Bankr. S.D.N.Y. 1992), the Bankruptcy Court estimated a claim after each side had an opportunity to present a witness.

26. In this case, the Debtors, by setting up a Disputed Claims Reserve at 10% of the stated Claims, are in effect attempting to estimate Claims. They, however, offer no explanation on how they established the Disputed Claims Reserve at $39.85 million plus a 20% cushion for a total Disputed Claims Reserve of $47.85 million, other than stating "that their professionals employed an entirely bottom-up process" and "have dedicated countless hours to the analysis of individual Claims, including dozens of conference calls and numerous meetings." (Motion, paragraphs 10, 12).

27. There has been no testimony submitted or documentation provided. Spartech respectfully requests that the proper methods be utilized for the estimation of their Proof of Claim or that the Debtors set aside the full value of Spartech's Proof of Claim.

    3.    *The Debtors Have Not Established That Estimation of the Claims Is Required to Avoid Undue Delay.*

28. The Debtors bear the burden of establishing that the estimation of a claim is necessary to avoid undue delay. *In re Dow Corning Corp.,* 211 B.R. 545, 562-74 (Bankr. E.D. Mich. 1997). In particular, as recognized by the court in *Dow Corning*, "when dealing with a motion for estimation, a court starts with a baseline knowledge of what is involved with liquidating a claim. Therefore, the party moving for estimation must show that the normal mode of liquidating the claim would create undue delay in the bankruptcy process." *Id.* at 573.

29. The duty to estimate, however, is not mandatory until the court determines that liquidation of the claim outside of the Bankruptcy Court would unduly delay the bankruptcy proceeding. *In re Apex Oil Co.,* 107 B.R. 189, 193 (Bankr. E.D. Mo. 1989). "From the plain language of 502(c), it is clear that estimation does not become mandatory merely because liquidation may take longer and thereby delay the administration of the case. Liquidation of a claim, in fact, will almost always be more time consuming than estimation. Nonetheless,

bankruptcy law's general rule is to liquidate, not estimate. For estimation to be mandatory, then the delay associated with liquidation must be undue." *Dow Corning Corp.*, supra at 560-61.

30. As a result, the Debtors are required to make a showing of undue delay at the time they seek to estimate their Claims, including Spartech's Claims — the Debtors cannot simply decide that estimation is necessary. Thus, the key consideration here is whether resolving the Disputed Claims would unduly delay the Debtors' Chapter 11 reorganization. The Debtors have not sufficiently met their burden and fail to even address the issue in the Motion.

WHEREFORE, for the forgoing reasons, Spartech requests that this Court deny the Motion in its entirety, or in the alternative that the Court set a Disputed Claims Reserve for the full amount of the Disputed Claims or a separate reserve for the full amount of Spartech's Proof of Claim.

September 10, 2010                                   Respectfully submitted,

/s/ Shawn M. Riley
Shawn M. Riley (OH 0037235)
Paul W. Linehan (OH 0070116)
Richard W. Cline (OH 0068560)
McDONALD HOPKINS LLC
600 Superior Avenue, East
Suite 2100
Cleveland, OH 44114-2653
Telephone: (216) 348-5400
Facsimile: (216) 348-5474
E-mail: sriley@mcdonaldhopkins.com
           plinehan@mcdonaldhopkins.com
           rcline@mcdonaldhopkins.com

COUNSEL FOR SPARTECH POLYCOM INC.