eUNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------x
                                 :

In re                           :          Chapter 11
                                   :

CHEMTURA CORPORATION, *et al.*,   :          Case No. 09-11233 (REG)
                                   :

                  Debtors.       :          (Jointly Administered)
                                   :

-----------------------------------------------------------------x

BENCH DECISION[1] AND ORDER ON REQUEST
FOR RULE 8005 RELIEF[2]

APPEARANCES:

KIRKLAND & ELLIS LLP
*Attorneys for the Debtors and Debtors-in-Possession*
601 Lexington Avenue
New York, NY 10022
By:    M. Natasha Labovitz, Esq. (argued)
       Craig A. Bruens, Esq.
       Richard M. Cieri, Esq.

AKIN, GUMP, STRAUSS, HAUSER & FELD LLP
*Counsel for the Official Committee of Unsecured Creditors*
One Bryant Park
New York, NY 10036
By:    Philip C. Dublin, Esq.

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
*Counsel for the Official Committee of Equity Security Holders*
Four Times Square
New York, NY 10036
By:    George A. Zimmerman, Esq. (argued)
       Jay M. Goffman, Esq.

---

[1]     I use bench decisions to lay out in writing decisions that are too long, or too important, to dictate in open court, but where the circumstances do not permit more leisurely drafting or more extensive or polished discussion. Because they often start as scripts for decisions to be dictated in open court, they typically have a more conversational tone. In some instances in this decision, I use species of shorthand to describe more nuanced concepts or claims by parties; my more precise descriptions of those things elsewhere control, and this discussion is without prejudice to rights any party might have in further proceedings or on appeal with respect to such matters.

[2]     Subject to cite checking and other technical corrections.

JONES DAY
*Attorneys for the Ad Hoc Committee of Bondholders*
222 East 41st Street
New York, NY 10017
By:     Richard L. Wynne, Esq.

BUCHALTER NEMER
*Attorneys for Pentair*
18400 Von Karman Avenue
Suite 900
Irvine, CA 92612
By:     Steven Brower, Esq. (argued)

-and-

1000 Wilshire Boulevard
Suite 1500
Los Angeles, CA 90017
By:     Austin K. Barron, Esq.

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
*Attorneys for Claimants Kurt and Amy Stetler*
5260 North Palm Avenue, Suite 300
Fresno, CA 93704
By:     William M. Woolman, Esq. (argued)

ROBERT E. GERBER
UNITED STATES BANKRUPTCY JUDGE

In this contested matter in the jointly administered chapter 11 cases of Chemtura
and its affiliates, Pentair Water Pool and Spa Inc. ("**Pentair**") moves for "appropriate
injunctive relief" under Fed. R. Bankr. P. 8005 pending Pentair's "appeal or other
challenge" to my order colloquially referred to by Pentair and the Debtors as the
"**Reserve Order**," or the "**Disputed Claims Reserve Order**"[3]—"and/or certain pending
related orders." Pentair does not seek to stay the effectiveness of the Plan.[4] But to avoid
the risk of equitable mootness on issues it wishes to raise on appeal, Pentair seeks what
has been fairly characterized as (1) a mandatory injunction requiring an additional
$20 million in value to be put into the Disputed Claims Reserve, discussed below, and
(2) a stay of the distributions to equity security holders of $20 million worth of value to
which, based on my TEV findings, they'd otherwise be entitled.

The Debtors, joined by the Official Creditors' Committee, Ad Hoc Committee of
Bondholders, and the Equity Committee (whose constituency would be prejudiced most
be Pentair's requests), oppose the motion in each of its possible variants.

---

[3]    Order Establishing a Distribution Reserve Amount with respect to Disputed Claims, ECF #4383.

[4]    The Equity Committee fears otherwise (see Equity Committee Response ¶ 4), based on the very
last substantive sentence in Pentair's brief. *See* Pentair Br. at 11 ("Accordingly, given the gravity
of the issues and the lack of actual harm, Pentair respectfully requests that if this Court denies this
emergency motion, it continue the present stay on the effectiveness of the confirmation order until
the District Court can rule on Pentair's request for relief, and in any event until at least 12:00 noon
on Tuesday, November 9, 2010."). But I didn't read Pentair's papers as actually seeking, much
less justifying, a stay of the Confirmation Order in its entirety. Pentair's papers are notably devoid
of any showing of an entitlement to such relief. Pentair does not seek to appeal the Confirmation
Order. And on this record, with the enormous harm to so many parties, any material stay of the
effectiveness of the Confirmation Order would be unthinkable. If the request were even
considered, the necessary bond, in this case with a TEV of $2.05 billion, would have to run in the
hundreds of millions of dollars.

Pentair's motion is denied.  Pentair has failed to meet the requirements for relief under Fed.R.Bankr.P. 8005, and especially for a mandatory injunction.

I also have considered, and ultimately rejected, whether the posting of a bond of sufficient size might permit the requested relief.  While I initially thought it could, I've come to the view that such wouldn't be adequate under the law, and that, even with a bond, granting the relief at all would be unduly prejudicial to equity security holders (the majority of whom are "retail" or "mom and pop" shareholders, who would legitimately be looking for their Plan entitlements), and that the bond would not sufficiently help them.  In any event, Pentair's counsel has acknowledged, understandably, that he could not advise his client to post a bond in any substantial size, in light of the uncertain prejudice his client might ultimately suffer if the Disputed Claims Reserve remains as is, and with the risk-reward imbalance that such a decision would entail.

The following are my Findings of Fact, Conclusions of Law, and bases for the exercise of my discretion in connection with this determination.

<u>Findings of Fact</u>

Familiarity with the background facts underlying Pentair's motion is assumed.  As described more fully in the *Confirmation Decision*,[5] creditors in this case will get a combination of cash and Reorganized Chemtura stock in satisfaction of their allowed claims.  Equity holders will receive a modest distribution based on the TEV that I found, after satisfaction of the creditors' allowed claims and after reserves are established to satisfy the disputed claims.

---

[5]    *See In re Chemtura Corp.*, ---B.R.---, 2010 WL 4272727 (Bankr. S.D.N.Y. 2010).

The Debtors' chapter 11 plan of reorganization (the "**Plan**") establishes a reserve (the "**Disputed Claims Reserve**") for the benefit of holders of general unsecured claims that remain disputed as of the Effective Date.  To the extent such claims are allowed after the Effective Date, they'll be paid out of the Disputed Claims Reserve, funded by a mixture of stock in Reorganized Chemtura and cash.

A.  *Original Disputed Claims Reserve Motion*

On September 3, the Debtors moved for an order establishing and setting the size of the Disputed Claims Reserve, based on their estimates of their likely exposure on the disputed claims, taking into account the strengths and weaknesses of those claims and, where applicable, the extent to which those claims might be satisfied by insurance.[6]  Four claimants objected to the proposed size of the Disputed Claims Reserve, including Pentair.  In substance, the objectors argued that, for the purpose of establishing the reserve, their claims were underestimated, and as a result, the amount of the Disputed Claims Reserve, in aggregate, would be insufficient to pay these unsecured creditors what they are due under the Plan.  Many more did not object.  At a hearing on September 21, the motion was granted with respect to those who didn't object,[7] and I gave individual attention to the needs and concerns of those who did—providing for an array of mechanisms, including approving agreements between the Debtors and the affected creditor, granting expedited consideration to motions to disallow an affected claim, or

---

[6]       *See* Debtors' Motion for an Order establishing a Disputed Claims Reserve, ECF # 3779.

[7]       *See* 9/21/10 Hrg. Tr. at 205.

teeing the claim up for an estimation hearing under section 502(c) of the Code.[8]  The

Disputed Claims Reserve Order, signed on October 29, was the result.[9]

Two of the claims that were ultimately covered by the Disputed Claims Reserve

Order were those filed by Pentair and a family colloquially referred by the parties as the

Stetlers.  One of the Stetlers suffered serious injuries from an accident involving an

allegedly defective pool filter.  They sought damages from Chemtura and Pentair, which

had bought one of Chemtura's lines of business, and had secured a contractual

indemnification from Chemtura for any losses Pentair might suffer in a litigation such as

this one.  The Stetlers seek a very sizeable sum from Chemtura and Pentair—$39 million.

Chemtura believes that the Stetlers' claim is covered by insurance, and while Pentair

doesn't necessarily disagree, Pentair wants protection in case it isn't.

Because Chemtura believes the Stetlers' claim to be covered by insurance,

Chemtura proposed to allocate no value into its Disputed Claims Reserve to cover the

Stetlers' claim, though the Stetlers could still share in the Disputed Claims Reserve with

other claimants if their lawsuit turned out to be successful, and if any recovery on their

part turned out to be uninsured.  The Stetlers failed to object to the Disputed Claims

Reserve motion.  As previously noted, I granted the Debtors' Disputed Claims Reserve

motion against those who didn't object to it at the September 21 hearing.

*B.  Stetlers' Motion for Reconsideration*

The Stetlers subsequently sought relief from the order (in the form of an untimely

objection to the Disputed Claims Reserve) on October 7, 2010, which was heard on

---

[8]    *See* 9/21/10 Hrg. Tr. at 251-54.

[9]    *See* Order Establishing a Distribution Reserve Amount with respect to Disputed Claims, ECF #
4383.

October 25. I construed the Stetlers' motion as motion for reconsideration under Fed. R.

Bankr. P. 9024 and Fed. R. Civ. P. 60(b), which Fed. R. Bankr. P. 9024 incorporates.

But after finding that the Stetlers had failed to show excusable neglect for waiting almost

a month to file their Disputed Claims Reserve objection, and that granting the relief

sought would prejudice the estate, creditors, and equity holders, I denied Rule 60(b)

relief.[10]

### C. Debtors' 502(e) Objection to Pentair's Proofs of Claim

Pentair did object to the Disputed Claims Reserve motion, thereby preserving its

rights to the extent that its claim, for indemnification, might be allowed. But on

September 27, the Debtors objected to Pentair's indemnification/contribution claim under

section 502(e) of the Code,[11] which generally requires the disallowance of claims for

reimbursement or contribution by entities liable with the debtor to the extent that they are

contingent as of the time of their allowance or disallowance.[12] For reasons that I dictated

into the record at the hearing on October 25, I disallowed Pentair's claim for

indemnification for any amounts Pentair might later have to pay the Stetlers under section

502(e), though I noted that Pentair's claim for reimbursement of its costs of defending

against the Stetlers' claim—approximately $2 million—could not be disallowed under

section 502(e).[13] I also rejected Pentair's argument that its claim should be reserved for

in full because it had contingent subrogation rights to the Stetlers' claim under section

---

[10]     *See* 10/25/10 Hrg. Tr. at 54-55.

[11]     *See* Debtors' Objection to the Proofs of Claim filed by Pentair, ECF # 4132.

[12]     *See In re Chemtura Corp.,* 436 B.R. 286 (Bankr. S.D.N.Y. 2010) (the "***502(e) Decision***")
         (disallowing similar claims under section 502(e)).

[13]     *See* 10/25/10 Hrg. Tr. at 53.

509 because "[Pentair's] failure to have actually made out a payment to the Stetlers makes subrogation not applicable yet, if it ever will be."[14]

Ultimately, the Debtors were required to reserve $2 million for Pentair's defense costs, and to place that amount in a segregated reserve. But with the remainder of Pentair's claim having been disallowed, I declined to make the Debtors reserve for the disallowed amounts. Pentair disagrees with that ruling, and wishes to reverse it on appeal.

Other facts, and mixed questions of fact and law, will be discussed in appropriate context below.

### Discussion

### I.

### Reconsideration

As a threshold matter, the Equity Committee notes, quite fairly, that what Pentair is effectively seeking is reconsideration of my earlier orders setting the size of the Disputed Claims Reserve, without satisfying the requirements of Fed.R.Bankr.P. 9023 and 9024, which make Fed.R.Civ.P. 59 and 60 applicable in cases under the Code.[15]  At the hearing on October 25, I considered (and ultimately rejected) Pentair's and the Stetlers' contentions as to the size of the Disputed Claims Reserve.  I stated:

> Secondly, I find prejudice to the estate and
> especially to other creditors and equity holders.  If
> the relief that's sought here were granted, millions
> would be held back in reserves to satisfy this claim.
> The reserve is already big enough to cover it apart
> from the insurance.  And we all agree that

---

[14]     10/25/10 Hrg. Tr. at 57.

[15]     Similarly, the Equity Committee notes the failure to comply with S.D.N.Y. Local Bankruptcy Rule 9023-1 (requiring a party moving for reargument to set forth "concisely the matters or controlling decisions which counsel believes the Court has not considered").

> liquidating this claim if it's not settled is going to be
> a lengthy process.  It's not fair to all of the other
> creditors and equity holders in this case to have the
> delays in getting their distributions that would be
> occasioned by a late request at this time.[16]

The Equity Committee is quite right in its observation that if I were to grant the relief Pentair requests here—supplemental funding of the Disputed Claims Reserve when I already decided the Disputed Claims Reserve's appropriate size—it would be in the nature of reconsideration of that earlier decision.

Caselaw under Civil Rule 59(e) provides that "[a] motion to alter or amend a judgment pursuant to Fed.R.Civ.P. 59(e) may be based upon (1) an intervening change in the controlling law, (2) the availability of new evidence, (3) to correct manifest errors of law or fact upon which the judgment is based, or (4) to prevent manifest injustice.[17]  No showing of any of those types has been made here; indeed, Pentair hasn't even tried to do so.

Given the importance of this controversy to Chemtura's stakeholders and my desire to give the district court, if a district court also considers these issues, the benefit of my thinking on matters of bankruptcy law, I'm discussing the Fed.R.Bankr.P. 8005 issues (and mandatory injunction issues) below.  But I must say that I am very troubled by the notion that under the rubric of Bankruptcy Rule 8005 relief, I'd be undoing my decision on a matter over which I already ruled, with considerable thought at the time.  I think that the Equity Committee is right that this ground alone warrants denial of the relief that Pentair seeks here.

---

[16]     10/25/2010 Hrg. Tr. at 55-56 (court reporter's transcription errors corrected).

[17]     *Martin v. Enron Corp.* (*In re Enron Creditors Recovery Corp.*), 378 B.R. 54, 56-57 (Bankr. S.D.N.Y. 2007) (Gonzalez, C.J.).

<u>II.</u>

<u>The Injunction Requests</u>

Fed.R.Bankr.P. 8005 provides, in relevant part:

> A motion for a stay of the judgment, order, or
> decree of a bankruptcy judge, … or for other relief
> pending appeal must ordinarily be presented to the
> bankruptcy judge in the first instance.
> Notwithstanding Rule 7062 but subject to the power
> of the district court and the bankruptcy appellate
> panel reserved hereinafter, the bankruptcy judge
> may suspend or order the continuation of other
> proceedings in the case under the Code or make any
> other appropriate order during the pendency of an
> appeal on such terms as will protect the rights of all
> parties in interest.  A motion for such relief, or for
> modification or termination of relief granted by a
> bankruptcy judge, may be made to the district court
> …, but the motion shall show why the relief,
> modification, or termination was not obtained from
> the bankruptcy judge.  The district court … may
> condition the relief it grants under this rule on the
> filing of a bond or other appropriate security with
> the bankruptcy court.

The request before me here differs from the more common applications we

bankruptcy judges hear in which a prospective appellant seeks to stay the effectiveness of

an order—most commonly, a confirmation order or an order authorizing a 363 sale—and

in which the request is in substance for an injunction prohibiting a specified act.  Pentair

doesn't seek to block the effective of the Confirmation Order.  Here, under the authority

of Fed.R.Bankr.P. 8005, Pentair seeks "other relief pending appeal," by means of "any

other appropriate order."

One of the types of relief Pentair requests (or that's the consequence of Pentair's

second request) is a traditional injunction that's prohibitory in nature; it would prohibit

distributions to Chemtura stockholders of much of their present entitlements under the

Plan. That requires consideration of the traditional "stay" cases under Fed.R.Bankr.P. 8005.

The other type of relief Pentair requests is in the nature of a mandatory injunction—directing Chemtura to put an additional $20 million in value into the Disputed Claims Reserve.[18] That requires analysis of the mandatory injunction doctrine in the Second Circuit.

I consider these in turn.

*A. Stay of Traditional Type*

Though the factors that must be satisfied have been stated in slightly different ways, and sometimes in a different order, it is established that to get a stay pending appeal under Rule 8005, a litigant must demonstrate that:

> (1) it would suffer irreparable injury if a stay were denied;
>
> (2) there is a substantial possibility, although less than a likelihood, of success on the merits of movant's appeal;
>
> (3) other parties would suffer no substantial injury if the stay were granted; and that
>
> (4) the public interest favors a stay.[19]

The decision as to whether or not to grant a stay of an order pending appeal lies within the discretion of the court.[20] The burden on the movant is a "heavy" one.[21] To be

---

[18]    Pentair's original request for $39 million in supplemental funding was reduced to $20 million at oral argument.

[19]    *See, e.g., Hirschfeld v. Bd. of Elections,* 984 F.2d 35, 39 (2d Cir.1992); *In re DJK Residential, LLC,* 2008 WL 650389 (S.D.N.Y. Mar. 7, 2008) (Lynch, J., then on the district court) ("*DJK*"); *In re WestPoint Stevens, Inc.,* No. 06 Civ. 4128, 2007 WL 1346616, at *4 (S.D.N.Y. May 9, 2007) (Swain, J.) ("*WestPoint Stevens*"); *In re General Motors Corp.,* 409 B.R. 24 (Bankr. S.D.N.Y. 2009) (Gerber, J.) (the "*GM Stay Decision*"), *decision denying stay adhered to,* 2009 WL 2033079 (S.D.N.Y. Jul. 9, 2009) (Kaplan, J.).

successful, the party must "show satisfactory evidence on all four criteria."[22]  And if the

movant "seeks the imposition of a stay without a bond, the applicant has the burden of

demonstrating why the court should deviate from the ordinary full security

requirement."[23]

While, as Judge Lynch noted in *DJK,* the Second Circuit BAP has held that

failure to satisfy any prong of the 4-part test "will doom the motion,"[24] the Circuit and

more recent cases have engaged in a balancing process with respect to the four factors, as

---

[20]      *See, e.g., In re Overmyer,* 53 B.R. 952, 955 (Bankr.S.D.N.Y.1985) ("A motion for a stay pending
           appeal, as authorized under Bankruptcy Rule 8005, is discretionary.").

[21]      *See, e.g., DJK,* 2008 WL 650389 at *2; *see also United States v. Private Sanitation Indus. Ass'n of
           Nassau/Suffolk, Inc.,* 44 F.3d 1082, 1084 (2d Cir. 1995).

[22]      *In re Turner,* 207 B.R. 373, 375 (2d Cir. BAP 1997) ("***Turner***") (citations and internal quotation
           marks omitted).

[23]      *DJK,* 2008 WL 650389 at *2; *WestPoint Stevens,* 2007 WL 1346616, at *4.

           In its brief, and without attention to the amendment of Fed.R.Bankr.P. 7062 and 9014 in 1999,
           Pentair quotes a 1988 decision by former Judge Berk of this Court stating that "[i]n general, a stay
           is 'available as of right, subject only to the condition that a satisfactory bond be filed.'"  *See*
           Pentair Br. at 3, citing *In re Brown's Hotel,* 93 B.R. 49, 53 (Bankr. S.D.N.Y. 1988) ("***Brown's
           Hotel***"), citing 9 Moore's Federal Practice ¶ 208.02 at 8-5 (2d ed. 1988).  Likewise, Pentair says
           that Fed.R.Civ.P. 62 is "made applicable here by Fed.R.Bankr.P. 7062."  Pentair Br. at 3.

           Each of these is now an inaccurate statement of the law applicable to appeals, like this one, from
           orders in contested matters, as contrasted to those from judgments in adversary proceedings.
           Comments of the type Judge Berk made in *Brown's Hotel*, which had their origin in plenary action
           jurisprudence in cases where Civil Rule 62 was applicable, were superseded by Bankruptcy Rules
           amendments in 1999.  In 1999, Bankruptcy Rule 9014, which governs contested matters (as
           contrasted to adversary proceedings), was amended to provide that Civil Rule 62 would no longer
           apply in contested matters, and Bankruptcy Rule 7062 (which Pentair erroneously stated applies
           here) was amended to make Civil Rule 62 applicable only in adversary proceedings.

           *See, e.g.*, Fed.R.Bankr.P. 9014 Advisory Committee Notes, 1999 Amendments ("This rule is
           amended to delete Rule 7062 from the list of Part VII rules that automatically apply in a contested
           matter.  Rule 7062 provides that Rule 62 F.R.Civ.P., which governs stays of proceedings to
           enforce a judgment, is applicable in adversary proceedings.  *The provisions of Rule 62, including
           the ten-day automatic stay of the enforcement of a judgment provided by Rule 62(a) and the stay
           as a matter of right by posting a supersedeas bond provided in Rule 62(d), are not appropriate for
           most orders granting or denying motions governed by Rule 9014.*") (emphasis added).  *See also*
           10 *Collier* ¶ 7062.03 (15th ed. rev.).

[24]      *DJK*, 2008 WL 650389 at *2, citing *Turner*, 207 B.R. at 375.

opposed to adopting a rigid rule.[25]  As in the *GM Stay Decision*,[26] I'll assume, without

deciding, that the balancing approach is the more appropriate.

   *(1) Irreparable Injury*

   Turning first to the requirement of irreparable injury, this issue turns on whether

the risk of an inability to overturn my order, by reason of the equitable mootness doctrine

that is applied in connection with bankruptcy appeals, constitutes irreparable injury.  As

in the *GM Stay Decision*,[27] I assume, without being the one who'll ultimately decide, that

after the Plan goes effective and stock has been issued, there's at least a very high

probability that the appeal will be dismissed as moot.  Thus we have a claim of

irreparable injury not in the business sense, but as a result of a potential loss of the

opportunity to secure appellate review.

   While a "majority of courts have held that a risk of mootness, standing alone,

does not constitute irreparable harm,"[28] I looked at the matter a little differently in the

*GM Stay Decision*, where I agreed with an earlier decision by District Judge Lewis

Kaplan in *St. Johnsbury Trucking*.[29]  In *GM,* I held, as Judge Kaplan did in *St. Johnsbury

Trucking*, that the threat of equitable mootness was enough to satisfy the requirement of

showing *some* irreparable injury—"enough to get on the scoreboard with respect to this

issue."[30]

---

[25]    *See GM Stay Decision*, 409 B.R. at 30.

[26]    *See id.*

[27]    *See id.* at 30-31.

[28]    *See In re Adelphia Communications Corp.*, 361 B.R. 337, 347 & n. 39 (S.D.N.Y. 2007)
        ("**Adelphia Stay Decision**") (citing cases).

[29]    185 B.R. 687, 690 (S.D.N.Y. 1995).

[30]    *GM Stay Decision,* 409 B.R. at 31.

But here again, as in the *GM Stay Decision*, how much that kind of "irreparable injury" should be weighed—and especially how it should be weighed against different kinds of injury that others would suffer—is a very different question. Here there is no irreparable injury other than the potential loss of appellate rights under mootness doctrine. In fact, I don't think that there's any material prejudice to Pentair at all.

The Disputed Claims Reserve will be funded with $41.85 million that any holder of a disputed claim, including Pentair, will be able to look to once its claim is resolved. I fixed the size of the Disputed Claims Reserve after a focused inquiry, and the Disputed Claims Reserve was set at 20% above the Debtors' high-end estimate of their liability. What a creditor's claim was estimated at by the Debtors, for purposes of establishing the overall Disputed Claims Reserve funding, does not affect any individual creditor's ability to share in the Disputed Claims Reserve. Thus, even if Pentair's claim should ultimately exceed the segregated claim amount, Pentair will have access to remaining funds in the Disputed Claims Reserve.

### (2) Possibility of Success on the Merits

The next factor is colloquially referred to as "likelihood of success" or "possibility of success." It's been more precisely articulated by the Circuit as "whether the movant has demonstrated a substantial possibility, although less than a likelihood, of success on appeal."[31]

Pentair's notices of appeal (or, more to the point, the statements of the issues to be presented that are required under Fed.R.Bankr.P. 8006 when the appellate record is designated) haven't been filed yet. But I sense, from the briefs on this motion and

---

[31]    *LaRouche v. Kezer,* 20 F.3d 68, 72 (2d Cir. 1994), citing *Hirschfeld v. Board of Elections,* 984 F.2d 35, 39 (2d Cir. 1993) (internal quotation marks omitted).

-14-

remarks at oral argument, that Pentair may appeal the Disputed Claims Reserve Order, the order disallowing most of Pentair's claim under Code section 502(e), and/or the order denying the Stetlers' motion for 60(b) relief. While I don't consider myself infallible, I nevertheless agree with the Debtors, the Equity Committee, and the other constituencies who have weighed in on Pentair's motion that Pentair's chances of success on the merits of its possible appeals are very weak.

As to the first potential appeal, on the motion that led to the Disputed Claims Reserve Order, Pentair argued that "a separate reserve should be established in the full amount of Pentair's claims." I ordered just that, giving Pentair the exact relief it requested. The problem, from Pentair's perspective, is that the "full amount of Pentair's claims" was reduced after disallowance under section 502(e)—a matter related to Pentair's second issue, discussed below. I declined to disallow Pentair's claims to the extent of $2 million, and the Debtors funded the requested reserve—a separate reserve— in that amount. I can't see how Pentair can successfully appeal from the Disputed Claims Reserve order—much less be a "party aggrieved," as bankruptcy appellate doctrine requires—under those circumstances.

As to the second potential appeal, from the section 502(e) disallowance of Pentair's indemnification claims,[32] my order disallowing Pentair's claim was the natural consequence of the earlier *502(e) Decision*, involving different parties; earlier caselaw in this district, most notably *Wedtech*[33] and *Drexel Burnham*;[34] and, most importantly,

---

[32]     In this connection, it will be remembered that the contingent claim component of Pentair's claim was disallowed, but its defense costs claim, in the amount of $2 million, was not disallowed, and that $2 million will be put in a separate reserve.

[33]     *In re Wedtech Corp.,* 85 B.R. 285, 290 (Bankr. S.D.N.Y. 1988).

[34]     *In re Drexel Burnham Lambert Group, Inc.,* 148 B.R. 982, 987 (Bankr. S.D.N.Y. 1992).

textual analysis, the plain language of section 502(e), and pronouncements by the

Supreme Court that direct the lower courts to read statutes in accordance with their plain

meaning.  Pentair argued for a "solvent debtor" exception to 502(e), which was

unsupported by the Code, and Pentair's section 509 subrogation contention was likewise

unsupported by the Code—since as Pentair acknowledged in oral argument, Pentair

hasn't yet made a payment that would give it rights of subrogation.  The weakness in

Pentair's position doesn't result as much from Pentair's reliance on decisions from

bankruptcy courts in Ohio or Tennessee to trump the authority in this Circuit; it's more

from Pentair's need, in order to prevail, to disregard, or rewrite, the unambiguous

language of the Code.  As I noted previously, I believe that the chances of an appellate

court reversing on the 502(e) issue—reading the Code or the caselaw in this district and

elsewhere any differently that I did—are remote.

As to the third potential appeal, Pentair might appeal my denial of 60(b) relief to

the Stetlers.  But even assuming that Pentair had the standing to raise that issue, I have

grave doubts that I'd be reversed for an abuse of discretion, or for clearly erroneous

findings on a mixed question of fact and law, when finding that the Stetlers had failed to

show excusable neglect for failing to object, or to request additional time to respond, after

they undisputedly got notice of the motion that led to the order from which they sought

60(b) relief.

### (3) Injury to Other Parties

The third factor is injury to other parties, in this case to Chemtura's other

creditors and, particularly, its equity security holders.  Here Pentair is not asking for a

stay of the effectiveness of the Confirmation Order, so the potential injury to them is not

as gargantuan as it would be if a stay of Plan effectiveness were sought, or as the injury

was when I considered somewhat similar issues involving the requested stay of the 363

sale in the *GM Stay Decision*. But the requested stay will have a serious effect on

Chemtura equity holders. They will lose, for the duration of the appellate process and, at

least possibly, the duration of the Stetlers litigation, $20 million of the value—about 40%

of the total value—to which I've previously ruled that they're entitled, for the benefit of a

single litigant whose legitimate needs and concerns have already been protected.

While their distribution is frozen, equity holders' stock—roughly 86% of the

$20 million that's the subject of Pentair's request—will be subject to the vagaries of

market movement at a time when the financial markets have had dramatic movements up

and down. I can't predict, of course, in which direction they'll move in the months or

years ahead. But having been around for the last several years, I've seen major drops in

the market, not just in 2008 but even earlier in 2010.

Additionally, of course, even with respect to the cash component of the requested

reserve, equity holders will suffer the opportunity cost of being delayed their

distributions.

*(4) Public Interest*

Last, I'm directed to consider the public interest. In this case, the "Public

Interest" factor isn't as important as in other cases on my watch where it's been an

enumerated factor—most obviously, when I addressed this factor in the *GM Stay

Decision*. But to the extent the public interest appropriately is considered at all, it weighs

against the requested relief. The public interest favors the expeditious administration of

bankruptcy cases,[35] and also recognizes the desirability of implementing the legitimate expectations of creditors (and by extension, when they're otherwise so entitled, equity holders) to get paid.[36]

*(5) The Balancing*

I understand Pentair's desire to avoid the very likely mootness arguments that it may well face in prosecuting its contemplated appeals, and agree that these concerns have put it on the scoreboard with respect to the irreparable injury requirement. But Pentair's other fears of injury are speculative, especially given the Disputed Claims Reserve mechanisms that already have been established, and Pentair's fears constitute little in the way of material injury of any type, much less irreparable injury. Pentair's claims are extraordinarily weak on the merits, and (putting aside the higher merits showing required for mandatory injunctive relief, discussed below) they do not in my view even rise to the level of a "substantial possibility" of success. I think the prejudice to equity security holders would be substantial, and while I don't regard the public interest as that major a factor in this case, to the extent it's applicable it likewise favors denial of the stay.

For all of these reasons, I think that consideration of Rule 8005 doctrine requires that the requested stay be denied.

---

[35]     *In re Metion, Inc.*, 318 B.R. 263 (S.D.N.Y. 2004) ("***Metion***"); *accord In re Savage & Assocs.*, 2005 WL 488643, *2 (S.D.N.Y. 2005).

[36]     *See Metion*, 318 B.R. at 272. As Judge Marrero there found:

> This Court finds that the public interest in the expeditious administration of bankruptcy cases as well as in the preservation of the bankrupt's assets for purposes of paying creditors, rather than litigation of claims lacking a substantial possibility of success, outweighs the public interest in resolving the issues presented here on appeal.

### B. Mandatory Injunction

As I've noted, Pentair's requests involve more than merely a stay. Pentair is seeking an order directing the Debtors to put more cash and stock into the Disputed Claims Reserve. The Equity Committee argues that Pentair's request amounts to the award of a mandatory injunction, and I agree with the Equity Committee in this regard.

I also agree with the Equity Committee's rather obvious point that the applicable standards for obtaining a mandatory injunction are higher than those applicable to a Rule 8005 request for a stay. As the Second Circuit has observed, the typical preliminary injunction is prohibitory and generally seeks only to maintain the status quo pending a trial on the merits.[37] A mandatory injunction, by contrast, alters the status quo by commanding some positive act. That distinction is important because the Second Circuit has held that a mandatory injunction should be issued "only upon a clear showing that the moving party is entitled to the relief requested, or where extreme or very serious damage will result from a denial of preliminary relief."[38] The "clear" or "substantial" showing requirement thus alters the traditional formula by requiring that the movant demonstrate a greater likelihood of success.[39]

As I've found that Pentair hasn't shown a substantial possibility of success, it goes without saying that Pentair hasn't made a "clear showing," or that "greater likelihood," of success that a mandatory injunction requires. I also find that Pentair's mootness concerns, while understandable, fail to rise to the level of "extreme or very

---

[37]    See *Tom Doherty Assocs. v. Saban Entertainment, Inc.*, 60 F.3d 27, 34 (2d Cir. 1995).

[38]    *Id.  See also SEC v. Unifund SAL*, 910 F.2d 1028, 1039 (2d Cir. 1990) ("***Unifund SAL***") (injunction going beyond preservation of status quo requires "a more substantial showing of likelihood of success"); *Jacobson & Co. v. Armstrong Cork Co.*, 548 F.2d 438, 441 (2d Cir. 1977).

[39]    See *Unifund SAL*, 910 F.2d at 1039.

serious damage." All of this is in the context of a notable lack of proof by Pentair of an insurance risk[40] or other likelihood of loss under the existing status quo. Thus in these respects too, I find Pentair's request deficient.

III.

Bond

Normally I would be inclined to nevertheless consider a stay if an appellant were to post a bond that could fully compensate for the damage caused by an improper stay. I turn to that now.

As I noted in the *GM Stay Decision*, a bond may sometimes be a practical alternative where the injury to the estate caused by delay is merely a matter of money, and, while serious, would not be irreparable. That was the case, for instance, in the *Adelphia* chapter 11 cases, where a number of hedge funds were appealing the confirmation order, and the estate would suffer (as it did suffer) monetary losses of $2.33 million per day during the period that the effectiveness of the confirmation order was stayed. The district court in that case ultimately required a bond, in the amount of $1.3 billion,[41] which the hedge funds (some of whom had short positions in Adelphia bonds, and would profit from delay and reduced recoveries by other Adelphia creditors), ultimately declined to post.

By contrast, in the *GM Stay Decision*, I found that the injury resulting from delay would not be merely a matter of money, and that was a major factor in my decision to deny the stay.

---

[40]    I fully understand Pentair's reluctance to give insurers a roadmap for disclaiming liability on their policies (assuming, without knowing, that any such grounds might exist), but Pentair's concerns could easily have been addressed by providing submissions under seal, or conducting an *in camera* hearing to address any uncertainties in that regard.

[41]    *See Adelphia Stay Decision,* 361 B.R. at 368.

-20-

Here we have something of a hybrid situation.  On my initial review of the papers, I thought that a bond, if sufficient in size, would protect those (principally or wholly equity holders) who would be hurt by the requested relief.  But after oral argument, I became more concerned.  Equity holders, most of whom, as I've noted, are "retail" or "mom and pop" holders of Chemtura common stock, would lose the ability to immediately sell their stock and get cash on their interests; would be subject to downward market movements if the stock lost value during the lengthy time it could take to liquidate the Stetlers' claims; and would have a cost of capital if they tried to borrow to replace the value they otherwise would have received—even assuming that in this economic environment, where so many banks aren't lending, that they could borrow at all.  Equity holders' failure to get their full distributions could reasonably be expected to present a hardship on many of them, and a later payment pursuant to a bond, especially in this economic environment, might be too little, too late.

I can't be sure that such would be the case, of course, but it causes me to doubt that a bond would be a panacea for the concerns that I have.  It also suggests that even if I could regard a bond as a proxy for the required showings that needed to be made and haven't been made (as discussed above), the bond would have to be a very sizeable one.

Here Pentair is asking $20 million in value to be diverted from equity holders, about 86% of which would be in the form of stock, which could lose a great deal of value in the period—whose duration is now unknown, but which nobody disputes could be lengthy—before any appeals from my orders are decided, or, especially, the Stetlers' claim is liquidated.  I wouldn't be inclined to agree with the Equity Committee's contention that Pentair would have to bond for a 100% reduction in the value of the

equity holders' stock, but given the events of the last two years, I would consider

protection for a 40% drop to be appropriate.  That would at least seemingly require a

bond of $6.9 million.  Additionally, stockholders would be delayed in their receipt of the

$17.2 million in stock and $2.8 million in cash, and depriving them of that would have an

opportunity cost.  The Debtors explained to me that the cost for equity holders wouldn't

be the same as the Debtors' Weighted Average Cost of Capital,[42] but nobody provided

me with a substitute—very possibly because of a sense that it would be hard to quantify

that loss.  But there obviously would be *some* cost to the equity holders that could not be

ignored.  If it were 8% per annum, that would be $1.6 million per year, and the Stetlers'

case, especially if there were appeals, could go on for several years.  That would at least

seemingly require increasing the size of any possible bond even more by another $1.6

million for every year that we anticipated that the stock and cash would be in the

Reserve.  So even assuming that I could grant the requested relief upon the posting of the

bond, the bond would have to be no less than $8.5 million, and very possibly

considerably higher.

But Pentair's counsel candidly advised me in oral argument, though his remarks

hardly surprised me, that he couldn't advise his client to procure a substantial bond.

When he said that, I hadn't yet determined the size of any bond that I'd require, and so

far as my notes reflect, he didn't discuss the specifics of the particular level over which

he'd find it inappropriate for his client to post.  But I drew the inference that he wouldn't

advise his client to post a bond of the size that I now have in mind, or anything close to

---

[42]     The evidence I heard at the Confirmation Hearing was that this was in the range of 11.6% to
11.75% at the low end, according to Lazard and UBS.

that.  Thus, even assuming that as matter of law, a bond could substitute for the

deficiencies I've now identified, I don't regard it as a practical substitute here.[43]

<u>Conclusion</u>

For the foregoing reasons, the relief Pentair seeks, in any of its variants, is denied.

The stay of effectiveness of the Confirmation Order, which I'd issued through noon today

and then continued until the issuance of this decision, will last until 6:00 p.m. tomorrow,

November 9, 2010, to provide an opportunity to seek relief in the district court.  Any

further requests for relief must be made to the district court, and not to me.

SO ORDERED.

Dated: New York, New York              ___*s/Robert E. Gerber*___
       November 8, 2010                        United States Bankruptcy Judge

---

[43]    I've also considered the creative idea that Pentair's counsel put forward to minimize prejudice to
his opponents.  I applaud that, and wish other lawyers would do more of that.  But ultimately I was
persuaded by the Debtors' remarks that the idea wouldn't be workable.