**CURTIS, MALLET-PREVOST,**
  **COLT & MOSLE LLP**
101 Park Avenue
New York, New York  10178-0061
Telephone:  (212) 696-6000
Facsimile:  (212) 697-1559
Joseph D. Pizzurro
L. P. Harrison 3rd

*Counsel for Center Point Terminal Company*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

|  |  |  |
|---|---|---|
| | : | |
| **In re:** | : | **CHAPTER 11** |
| | : | |
| **CHEMTURA CORPORATION, *et al.*,** | : | **Case No. 09-11233 (REG)** |
| | : | |
| **Debtors.** | : | **(Jointly Administered)** |
| | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**RESPONSE BY CENTER POINT TERMINAL COMPANY TO**
**DEBTORS' FORTIETH TIER I OMNIBUS OBJECTION TO**
**CERTAIN PROOFS OF CLAIM (PROOF OF CLAIM 11084)**

Center Point Terminal Company ("Center Point") files this response to the *Debtors'*

*Fortieth Tier I Omnibus Objection to Certain Proofs of Claim* (the "No Liability Objection")

[Docket No. 3684] to its proof of claim (the "Claim") [Claim No. 11084], and respectfully states

as follows:

**PRELIMINARY STATEMENT**

As its basis to disallow Center Point's Claim, Chemtura Corporation ("Chemtura")

characterizes the Claim as one for contribution under CERCLA that is barred due to Chemtura's

Stipulation (as defined below) with the Florida Department of Environmental Protection

("FDEP"), which incorporates Section 113(f)(2) of CERCLA, protecting Chemtura from

contribution claims asserted by third parties.  However, Center Point's Claim is not a

contribution claim and thus is not barred either under Section 113(f) of CERCLA or the terms of the Stipulation. Rather, Center Point's Claim fits squarely within what the Supreme Court and the Second Circuit have identified as a direct cost recovery claim under Section 107(a) of CERCLA. *See United States v. Atlantic Research Corp.*, 551 U.S. 128 (2007); *W.R. Grace & Co.-Conn. v. Zotos International, Inc.*, 559 F.3d 85 (2d. Cir. 2009). Thus, Center Point's Claim should be allowed.

### FACTUAL BACKGROUND

1.     On March 18, 2009 (the "Petition Date"), Chemtura and certain of its affiliates (collectively, the "Debtors") commenced their bankruptcy cases under chapter 11 of Title 11 of the United States Code, as amended (the "Bankruptcy Code").

2.     Chemtura's predecessor, Witco Chemical Corporation ("Witco") acquired 3101 Talleyrand Avenue, Jacksonville, Florida (the "Site") in 1984 and operated it as a terminal facility for the blending, packaging and distribution of petroleum-based lubricants, primarily motor and gear oil hydraulic fluid and transmission fluid, which resulted in contamination of the groundwater.

3.     Witco sold the site to Petroleum Packers of Jacksonville, Inc. in 1997 and Center Point ultimately acquired the Site in 2007.

4.     Chemtura was engaged in remediation activities at the Site through the Petition Date. *See* Weedman Declaration, **Exhibit A**.

5.     After the Petition Date, Chemtura sent a letter dated June 9, 2009 to Apex Oil Company, Inc.[1] which gave notice that the decommissioning and remedial activities being performed by Chemtura at the Site would cease on July 9, 2009. *See* Weedman Declaration, **Exhibit A**. As a result, Center Point stepped in and performed cleanup and remedial work at the

---

[1] Apex Oil Company, Inc. is an affiliate of Center Point Terminal Company.

8503814

Site and incurred post-petition expenses for such activities.

6.      Center Point timely filed its Claim on October 30, 2009 against Chemtura.  The Claim seeks to recover costs associated with site assessment and remedial work associated with monitoring and removing contamination at the Site.

7.      As reflected in the Claim, Center Point incurred approximately $349,825.00 in expenses in connection with previous site assessment and remedial work performed at the Site. The Claim also asserts additional expenses expected to be incurred on the Site for future assessment, remedial and monitoring costs, of which $25,427.38 was actually incurred since the filing of the Claim.  Thus, to date, the total amount of expenses Center Point has incurred is $375,252.38.[2]

8.      On August 26, 2010, the Debtors filed the No Liability Objection to disallow the Claim.[3]  The No Liability Objection states, as the sole basis for the objection, that Chemtura is not liable because it "has negotiated [an] agreement with state of Florida for future costs related to site" and "Debtor is not required to indemnify claimant for past costs."  No Liability Objection, Schedule 1 at 6.

9.      On September 8, 2010, the Bankruptcy Court entered the *Order Authorizing Certain Debtors to Enter Into a Stipulation With the Florida Department of Environmental Protection Resolving Declaratory Judgment Complaint and Certain Environmental Obligations* [Docket No. 3822].  The stipulation (the "Stipulation") with the FDEP resolved the Debtors' liability to the FDEP in connection with their obligations to remediate contamination and hazardous substances discharged at various sites in Florida that were formerly owned and operated by the Debtors, including the Site.

---

[2] However, Center Point continues to incur costs as a result of ongoing remedial work being performed at the Site.
[3] By agreement with the Debtors, the response deadline to the *Debtors' Forty-Second Tier I Omnibus Objection to Certain Proofs of Claim* [Docket No. 3686] for insufficient documentation was extended to April 26, 2011.

8503814

10.     Paragraph 21 of the Stipulation provides, in relevant part, that "the Debtors and Beneficiaries under this Agreement shall be entitled to protection from contribution actions or claims as provided under Section 113(f)(2) of CERCLA, 42 U.S.C. § 9613(f)(2) (to the extent applicable) for matters addressed in this Agreement."

## ARGUMENT

**Center Point's Claim is one for direct cost recovery under Section 107(a) of CERCLA and not a claim for contribution under Section 113(f) of CERCLA.**

11.     Prior to the Supreme Court's decision in *Atlantic Research*, some courts held that the only claim for clean up costs that a potentially responsible party ("PRP") had against another PRP[4] was one for contribution under Section 113 of CERCLA and that contribution would only lie if the costs were incurred as a result of an administrative or judicial determination or in settlement of such a proceeding. However, the settling PRP is protected against claims for contribution by other PRPs pursuant to Section 113(f)(2) of CERCLA. Thus, a PRP which incurred clean up costs voluntarily could not assert a claim in respect of these costs from any other PRP. *See Atlantic Research*, 551 U.S. at 132.

12.     In *Atlantic Research*, the Supreme Court held that under Section 107(a) of CERCLA, a PRP may recover direct costs of cleanup from other PRPs even though those costs were voluntarily incurred through its own initiative and not as a result of any administrative or

---

[4] Both Center Point and Chemtura qualify as PRPs under Section 107(a) of CERCLA. Section 107(a) lists four categories of PRPs: (1) the owner and operator of a vessel or a facility; (2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of; (3) any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances; and (4) any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities, incineration vessels or sites selected by such person, from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance. Center Point is the current owner of the Site and Chemtura was the former owner at the time of the contamination at the Site.

-4-

8503814

judicial proceeding or settlement thereof.[5]  42 U.S.C. § 9607(a); *Atlantic Research*, 551 U.S. at 139-41; *see also W.R. Grace*, 559 F.3d at 93 (permitting direct cost recovery claims under Section 107(a) of CERCLA).  The Supreme Court also held that a settling PRP's contribution protection under Section 113 does not extend to direct cost recovery liability under Section 107(a) of CERCLA.  *Atlantic Research*, 551 U.S. at 140 ("[t]he settlement bar [in Section 113(f)(2)] does not by its terms protect against cost-recovery liability under § 107(a)").

13.     In recognizing claims for direct cost recovery under Section 107(a), the Supreme Court distinguished such claims from contribution under Section 113(f) of CERCLA.  The Supreme Court explained that Section 107(a) and Section 113(f) "provide two clearly distinct remedies."  A claim under Section 107(a) permits a private party that has itself incurred cleanup costs to recover those costs from PRP "without the establishment of liability to a third party."  However, a PRP is limited to a contribution claim under Section 113(f) where it "pays money to satisfy a settlement agreement or a court judgment."  Thus, the "remedies available in §§ 107(a) and 113(f) complement each other by providing causes of action to persons in different procedural circumstances."  *Atlantic Research*, 551 U.S. at 138-39.

14.     Subsequent to *Atlantic Research*, the Second Circuit Court of Appeals in *W.R. Grace* held that a PRP which voluntarily undertakes remediation activities without waiting for a judicial or administrative order has a claim under Section 107 of CERCLA against another PRP.  *W.R. Grace*, 559 F.3d at 93.

15.     W.R. Grace was the owner of a facility that entered into an agreement with the New York State Department of Environmental Conservation to perform remedial investigation

---

[5] In *Atlantic Research*, Atlantic Research leased property at a facility operated by the Department of Defense where it retrofitted rocket motors for the United States.  Using a high-pressure water spray, Atlantic Research removed and burned pieces of propellant from the motors, which contaminated soil and groundwater at the site.  Atlantic Research cleaned the site at its own expense and then asserted a claim under Section 107(a) for cost recovery. *Atlantic Research*, 551 U.S. at 133-34.

8503814

and remediate a landfill at the facility. After expending funds to remediate the contamination at the facility, W.R. Grace brought a claim pursuant to Section 107(a) of CERCLA to recover costs against Zotos International, Inc. ("Zotos") because Zotos arranged for the disposal of certain of the waste at the facility. *W.R. Grace*, 559 F.3d at 87.

16. The Second Circuit Court of Appeals, relying on the Supreme Court's decision in *Atlantic Research*, recognized that W.R. Grace was seeking "to recover costs for remediation it performed itself; it does not seek to recoup expenses incurred in satisfying a settlement agreement or a court judgment" and therefore was entitled to a claim under Section 107(a) of CERCLA. *W.R. Grace*, 559 F.3d at 93.

17. The ruling in *Atlantic Research* was also applied by the district court in a case factually on point with the case at bar. In *Ashland Inc. v. Gar Electroforming*, 729 F.Supp.2d 526, 544 (D. R.I. 2010), the district court in *Ashland* held that a PRP may bring a cost recovery claim under Section 107(a) against a party that had already entered into settlement agreements with the United States and Rhode Island notwithstanding the contribution bar contained Section 113(f) of CERCLA. *Ashland*, 729 F.Supp.2d at 544 ("the settlement agreements [defendant] has entered with the United States and the State of Rhode Island do not serve to bar [plaintiff's] Section 107(a) cost recovery claim against [defendant]").

18. The foregoing analysis makes clear that Center Point's Claim is one for direct cost recovery under Section 107(a). Like the plaintiff-PRPs in *Atlantic Research* and *W.R. Grace*, Center Point voluntarily remediated the Site at its own expense and on its own initiative. Upon receiving notice from Chemtura that it would cease decommissioning and remediation activities at the Site, Center Point acted responsibly by stepping in to clean up the contamination without waiting for a lawsuit or a judicial or administrative order. And because Center Point is

-6-

not seeking to be reimbursed for payments made pursuant to a settlement agreement or judgment, as a matter of law its Claim cannot be characterized as one for contribution. *See Atlantic Research*, 551 U.S. at 139.

19.     Indeed, the Second Circuit Court of Appeals in *W.R. Grace* pronounced that in a situation where a PRP promptly remediates without waiting for a lawsuit or court order, the court "[could] not conclude that Congress intended to bar such a plaintiff from seeking recovery of costs from other responsible parties, and to allow those potentially liable parties to avoid financial responsibility, particularly where nothing in the statute speaks to such limitation." 559 F.3d at 95.  Likewise, Congress could not have possibly intended to bar a party like Center Point, who acted responsibly by promptly remediating without waiting for a judicial or administrative order, from seeking recovery of costs from other PRPs.  Such a result would be grossly inequitable.

20.     Accordingly, because Center Point's Claim is not a contribution claim, but a direct cost recovery claim under Section 107 of CERCLA, Chemtura is still liable notwithstanding Section 113(f) of CERCLA and the Stipulation with the FDEP.  Therefore the No Liability Objection should be overruled and the Claim should be allowed.

**RESERVATION OF RIGHTS**

21.     Center Point reserves its right to seek reimbursement of additional costs against Chemtura to the extent such costs are incurred prior to the entry of any Order entered in connection with the No Liability Objection.

8503814

## CONCLUSION

Accordingly, for all the reasons set forth above, the No Liability Objection should

be overruled to the extent they seek to disallow and expunge Center Point's Claim.

Dated: New York, New York
     March 29, 2011                           Respectfully submitted,


**CURTIS, MALLET-PREVOST,**
 **COLT & MOSLE LLP**

By: */s/ L. P. Harrison 3rd*_____
       Joseph D. Pizzurro
       L.P. Harrison 3rd
101 Park Avenue
New York, New York  10178-0061
Telephone:  (212) 696-6000
Facsimile:  (212) 697-1559

*Counsel for Center Point*
*Terminal Company*

8503814